---------------------------------------------------------x
                :

In re                 :   Case No. 09-40795
                :   (Jointly Administered)

**FORUM HEALTH, et al.,**[1]   :

                :   Chapter 11

          Debtors.   :

                :   Judge Kay Woods

---------------------------------------------------------x

## NOTICE OF FILING EXHIBIT C TO
## DISCLOSURE STATEMENT PURSUANT TO SECTION 1125
## OF THE BANKRUPTCY CODE FOR THE JOINT PLAN OF
## REORGANIZATION PROPOSED BY THE CONSENT PARTIES

---

[1]   Forum Health Services Co. ("FHS"), Forum Health ("FH"), Trumbull Memorial Hospital ("Trumbull"), Western Reserve Care System ("WRCS"), Trumbull Memorial Hospital Foundation ("TMHF"), Western Reserve Health Foundation ("WRHF"), Forum Health Rehabilitative Services Co. d/b/a Hillside Rehabilitation Hospital ("FHRS"), Beeghly Oaks ("Beeghly"), Dacas Nursing Systems, Inc. d/b/a Forum Health at Home-Private Duty ("Dacas") are collectively referred to herein as the "Obligated Group Debtors." Comprehensive Psychiatry Specialists, Inc. ("CPS"), Dacas Nursing Support Systems, Inc. ("Dacas Nursing"), Forum Health Diagnostics Co. ("FHD"), Forum Health Enterprises Co. ("FHE"), Forum Health Outreach Laboratories, Inc. ("FHOL"), Forum Health Pharmacy Services Co. ("FHPS"), Forum Health Ventures Co. ("FHV"), PrideCare, Inc. ("PCI") and Visiting Nurse Association and Hospice of Northeast Ohio ("VNA") are collectively referred to herein as the "Non-Obligated Group Debtors."

Dated: June 4, 2010                              Respectfully submitted:


                                                 /s/ Heather Lennox
                                                 Heather Lennox  (OH0059649)
                                                 JONES DAY
                                                 North Point
                                                 901 Lakeside Avenue
                                                 Cleveland, OH  44114-1190
                                                 Telephone:  (216) 586-3939
                                                 Facsimile:   (216) 579-0212

                                                 Counsel for MBIA Insurance Corporation

                                                 /s/ Michael B. Fisco
                                                 Michael B. Fisco  (MN175341)
                                                 FAEGRE & BENSON LLP
                                                 Suite 2200
                                                 90 South Seventh Street
                                                 Minneapolis, MN 55402-3901
                                                 Telephone:  (612) 766-7000
                                                 Facsimile:   (612) 766-1600

                                                 Counsel for U.S. Bank National Association,
                                                 as Master Trustee and Bond Trustees

                                                 /s/ Matthew Botica
                                                 Matthew Botica  (IL260118)
                                                 WINSTON & STRAWN LLP
                                                 35 W. Wacker Drive
                                                 Chicago, IL 60601
                                                 Telephone:  (312) 558-5600
                                                 Facsimile:   (312) 558-5700

                                                 Counsel for JP Morgan Chase Bank, National
                                                 Association

                                                 /s/ Eric A. Schaffer
                                                 Eric A. Schaffer  (PA30797)
                                                 REED SMITH LLP
                                                 Reed Smith Centre
                                                 225 Fifth Avenue
                                                 Pittsburgh, PA 15222
                                                 Telephone:  (412) 288-3131
                                                 Facsimile:   (412) 288-3063


                                                 Counsel for Fifth Third  Bank

# EXHIBIT C

## (Liquidation Analysis)

CLI-1808499v1

**Forum Health (Consolidated)**
*Exhibit C - Liquidation Analysis*
*Based on Debtors' Unaudited Consolidating Balance Sheet as of April 30, 2010*

| $ 000s | Notes | Book Value | Estimated Recovery Percentage | | Estimated Liquidation | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| Cash and Short-Term Investments | 1 | $16,384 | 100% | 100% | $16,384 | $16,384 |
| Third Party Accounts Receivable, Net | 2 | 37,980 | 30% | 45% | 11,394 | 17,091 |
| Inventory | 3 | 5,033 | 15% | 30% | 755 | 1,510 |
| Prepaid Expenses & Other Current Assets: | | | | | | |
| Other Accounts Receivable | | 4,458 | 0% | 0% | 0 | 0 |
| Prepaid Insurance | | 1,916 | 10% | 20% | 192 | 383 |
| Prepaid Operating Expenses | | 685 | 10% | 20% | 69 | 137 |
| Prepaid Maintenance and Service Agreements | | 230 | 10% | 20% | 23 | 46 |
| Deposits | | 219 | 0% | 10% | 0 | 22 |
| Prepaid Memberships | | 100 | 0% | 10% | 0 | 10 |
| Prepaid A&E Architectural Project Fees | | 94 | 0% | 10% | 0 | 9 |
| Neoucom Receivable and Other Miscellaneous Receivables | | 91 | 100% | 100% | 91 | 91 |
| Prepaid Rent, Deferred Taxes, and Physician Prepaids | | 33 | 10% | 20% | 3 | 7 |
| Prepaid Expenses & Other Current Assets | 4 | 7,826 | 5% | 9% | 377 | 705 |
| Board Designated Assets | 5 | 5,298 | 100% | 100% | 5,298 | 5,298 |
| Held for Insurance | 6 | 31,280 | 16% | 24% | 5,000 | 7,500 |
| Other Investments | 7 | 12,777 | 40% | 50% | 5,111 | 6,389 |
| Temporarily Restricted Assets | 8 | 9,721 | 0% | 0% | 0 | 0 |
| Permanently Restricted Assets | 9 | 417 | 0% | 0% | 0 | 0 |
| Net Fixed Assets: | | | | | | |
| Buildings | | 51,008 | 10% | 20% | 5,101 | 10,202 |
| Equipment | | 21,023 | 25% | 40% | 5,256 | 8,409 |
| Land | | 3,115 | 0% | 0% | 0 | 0 |
| Land Improvements | | 1,094 | 0% | 0% | 0 | 0 |
| Construction In Progress | | 250 | 0% | 0% | 0 | 0 |
| Leasehold Improvements | | 108 | 0% | 0% | 0 | 0 |
| Net Fixed Assets | 10 | 76,598 | 14% | 24% | 10,357 | 18,611 |
| Other Assets: | | | | | | |
| Workers Compensation Line of Credit Deposit | | 4,114 | 0% | 0% | 0 | 0 |
| Unamortized Bond Discount and Financing Fees | | 3,620 | 0% | 0% | 0 | 0 |
| First Energy Escrow | | 382 | 0% | 0% | 0 | 0 |
| Other Long Term Investments | | 351 | 0% | 0% | 0 | 0 |
| Cash Value of Life Insurance Policy | | 66 | 0% | 0% | 0 | 0 |
| Deferred Compensation | | 58 | 0% | 0% | 0 | 0 |
| Other Assets | 11 | 8,591 | 0% | 0% | 0 | 0 |
| Charitable Perpetual Trust | 12 | 13,446 | 0% | 0% | 0 | 0 |
| Gross Proceeds Available for Distribution | | $225,351 | 24% | 33% | $54,676 | $73,487 |
| Less: | | | | | | |
| Trustee Legal Fees | 13 | | 100% | 100% | $1,000 | $750 |
| Trustee Statutory Commission | 14 | | 100% | 100% | 1,013 | 1,577 |
| Other Trustee Professional Fees | 15 | | 100% | 100% | 1,000 | 750 |
| Net Wind-down Costs | 16 | | 100% | 100% | 6,000 | 5,000 |
| Total Chapter 7 Administrative Claims | | | 100% | 100% | $9,013 | $8,077 |
| | | | | | | |
| Net Proceeds Available for Distribution | | | | | $45,663 | $65,410 |
| Debt Service Funds Available for Secured Bond Debt | 17 | 44,279 | 100% | 100% | 44,279 | 44,279 |
| Carve-out for UCC Professional Fees | 18 | | 100% | 100% | -500 | -500 |
| Proceeds Available for Secured Claims | | $44,279 | | | $89,442 | $109,189 |
| | | | | | | |
| Secured Claims | | | | | | |
| Secured Bond Debt | 19 | $128,918 | 69% | 85% | $89,442 | $109,189 |
| Other Secured Claims | 20 | 603 | 100% | 100% | 603 | 603 |
| Net Secured Claims | | $129,521 | 70% | 85% | $90,045 | $109,792 |
| | | | | | | |
| Proceeds Available for Chapter 11 Administrative and Priority Claims | | | | | $0 | $0 |
| | | | | | | |
| Administrative and Priority Claims | | | | | | |
| Chapter 11 Administrative Claims | 21 | $29,873 | 2% | 2% | $500 | $500 |
| | | | | | | |
| Proceeds Available for Unsecured Claims | | | | | $0 | $0 |
| | | | | | | |
| Unsecured Claims | | | | | | |
| PBGC | 22 | $207,300 | 0% | 0% | $0 | $0 |
| General Unsecured Claims | 23 | 25,259 | 0% | 0% | 0 | 0 |
| Total Unsecured Claims | | $232,559 | 0% | 0% | $0 | $0 |
| | | | | | | |
| Proceeds Available for Distribution | | | 0% | 0% | $0 | $0 |

1

<u>**Liquidation Analysis**</u>

**A.   Introduction**

In connection with the Plan and Disclosure Statement, the attached hypothetical liquidation analysis and these related notes and assumptions (collectively, the "**Liquidation Analysis**") were prepared by the Consent Parties with the assistance of their financial advisors.

This Liquidation Analysis should be read in conjunction with the Plan and the Disclosure Statement.

The Consent Parties, with the assistance of their financial advisors, have prepared this Liquidation Analysis for the purpose of evaluating whether the Plan meets the "best interests" test under section 1129(a)(7) of the Bankruptcy Code.  The Liquidation Analysis was prepared to reflect a hypothetical scenario in which the Debtors' current chapter 11 cases convert to chapter 7 proceedings under the Bankruptcy Code and their assets are liquidated on a forced, expedited but orderly basis.  Under this scenario, a chapter 7 trustee ("**Trustee**") would be appointed to commence the liquidation of all of the Debtors' assets.  The liquidation is assumed to occur over a 12 month period (the "**Wind Down Period**") in order to maximize recoveries.  The Liquidation Analysis is based on unaudited, consolidated book values as of April 30, 2010.  These amounts, however, are subject to changes in management estimates, audit adjustments and results of operations occurring subsequent to April 30, 2010.  Values associated with non-Debtor affiliates are included within such asset categories.  However, the Liquidation Analysis does not include recoveries resulting from any potential preference claims or other avoidance actions.

The Liquidation Analysis indicates the estimated values that would be obtained upon disposition of assets in accordance with a hypothetical chapter 7 liquidation.  The gross proceeds available for distribution would be the sum of the proceeds from the disposition of the Debtors' assets, including cash held by the Debtors at the time of the chapter 7 conversion date.  The gross proceeds are reduced by the costs and expenses of the chapter 7 liquidation, including additional administrative expenses that will result from the termination of the Debtors' businesses through the use of chapter 7 for liquidation purposes.  The remaining net proceeds are allocated to the creditors in strict priority in accordance with section 726 of the Bankruptcy Code.

The Liquidation Analysis was prepared on a consolidated basis.  The Consent Parties have determined that preparation of a liquidation analysis for each individual Debtor is impractical and costly due to complicated intercompany claims relationships and agreements amongst the Debtors.

Subject to the limitations, assumptions and qualifications herein, the Consent Parties estimate that the range of gross proceeds, net of trustee fees and wind-down costs will not be adequate to satisfy the holders of Secured Bond Claims in full.  The assumptions supporting these results are set forth herein.

Based on the Liquidation Analysis, the Consent Parties believe that holders of claims in **Classes** 3A, 3B, 3C, 3D, 4 and 5 will recover greater value through the confirmation of the proposed Plan than through a hypothetical chapter 7 liquidation.

**B.   Limitations**

Estimating recoveries in any hypothetical chapter 7 case is an uncertain process due to the number of unknown factors, such as business, economic and competitive contingencies beyond the control of the Debtors or the Trustee.  The Liquidation Analysis relies upon estimates and assumptions, that, although

considered reasonable by the Consent Parties' advisors, are subject to change. The Consent Parties make no representations or warranties that values reflected in the Liquidation Analysis would be realized if the Debtors were to undergo such a liquidation. Actual results may vary materially from the estimates and assumptions set forth in the Liquidation Analysis.

## C.    General Assumptions

The Liquidation Analysis assumes that the Trustee is appointed to manage the consolidated Debtors' affairs and oversee the liquidation of the Debtors' estates. The Liquidation Analysis assumes a forced liquidation on an expedited but orderly basis under the supervision of the Trustee. The Liquidation Analysis assumes that the Debtors would cease substantially all operations shortly after the conversion and use their cash position to liquidate their assets and pay priority claims. The Liquidation Analysis assumptions upon a conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code include the following:

- The Liquidation Analysis assumes that the holders of Secured Bond Claims have perfected security interests in substantially all of the assets of the Debtors' estates, other than certain unencumbered real estate, that must be satisfied in accordance with the priorities set forth in the Bankruptcy Code.

- The Liquidation Analysis assumes an immediate shut down of the Debtors' operations (e.g. 3 – 5 business days from the date of conversion).

- The Liquidation Analysis assumes an expedited but orderly liquidation of the Debtors' assets to maximize recovery values. The Liquidation Analysis assumes the majority of the liquidation would be completed in approximately 180 days; however, the entire liquidation would be expected to take twelve months or more (indeed, much longer for "funds held for insurance").

- The Debtors' workforce consists of specialized medical professional staff and employees who are crucial to the operation of the businesses. The Liquidation Analysis assumes that certain of these employees would be retained by the Trustee for a short period of time to shut down operations and secure key assets.

- The Debtors' revenues are primarily derived from government entities and commercial managed care insurers. The Liquidation Analysis assumes that a chapter 7 liquidation would erode the value of the Debtors' accounts receivable and "unbilled revenue", making it likely that many of these entities would move to freeze payments pending resolution of all potential set-offs, recoupments and disputes.

- The Liquidation Analysis assumes the Debtors' patient base has been disproportionately affected by the economic downturn and has a difficult time paying outstanding bills. As a result, the Liquidation Analysis assumes that the Debtors may experience high levels of uncollectible self-pay accounts receivable.

- The Debtors' physical plant and real property are aged and difficult to maintain. The Liquidation Analysis assumes significant efforts will be required by the Trustee and its retained staff to secure all affected property during a shut-down of operations.

3

Additional assumptions with respect to the Liquidation Analysis are provided below.

**D.    Specific Assumptions and Notes**

The Liquidation Analysis refers to certain categories of assets, liquidation costs and claims. The following notes describe specific assumptions associated within each category.

<u>Assets</u>

1.  **Cash and Short-Term Investments.**  The Debtors' actual cash balance as of April 30, 2010 was $16.4 million.  Cash and short-term investments consist of all liquid investments that are readily convertible to cash, in bank accounts.  The estimated recovery for this asset class is 100%.

2.  **Third Party Accounts Receivable, Net.**  Estimated proceeds realized from third party accounts receivable under a chapter 7 liquidation are based on estimates of collectability after a shut-down.  An estimated recovery percentage has been applied to net book values as of April 30, 2010.  The estimated recovery percentages assume that in a chapter 7 liquidation the accounts receivable due from government entities and managed care insurers would be subject to set-off, recoupment and a variety of billing disputes, thus further reducing net recoveries available to the Trustee.  Further, the recovery percentages reflect the cost of retaining Debtors' personnel or an outside accounts receivable recovery firm to collect the receivables.  The estimated recovery range for this asset class is 30% to 45%.

3.  **Inventory.**  Inventory assets include sterile medical supplies, pharmaceuticals, office supplies and other miscellaneous consumables.  The liquidation of inventory assets will occur through the sale of specific products to specialized liquidators on the secondary market.  Healthcare industry standards regarding the use of previously-deployed medical and pharmaceutical supplies will adversely impact the recovery of inventory assets.  The recovery percentages also reflect, and are reduced by, the costs of retaining brokers or other outside sources to inspect and sell the inventory on the secondary market.  The estimated recovery range for this asset class is 15% to 30%.

4.  **Prepaid Expenses & Other Current Assets.**  Prepaid expenses and other current assets consist primarily of prepaid insurance, rents, deposits and non-trade accounts receivable.  The Liquidation Analysis assumes that the vast majority of prepaid insurance and deposits will not be refunded.  The Liquidation Analysis further assumes that a high percentage of the outstanding non-trade receivables balance will not be collected.  The estimated recovery range for this asset class is 5% to 9%.

5.  **Board Designated Assets.**  Board designated assets consist of cash balances that have been voluntarily set aside by the Debtors' Board of Trustees for designated purposes.  There are no charitable donor restrictions existing on these balances.  The cash is held in bank accounts.  The estimated recovery range for this asset class is 100%.

6.  **Held for Insurance.**  Held for insurance assets include cash held by the Debtors' insurance captive, non-Debtor Forum Health Insurance Limited, for malpractice and certain other

4

insurance claims. The Liquidation Analysis assumes that any recovery of funds held for insurance will be subject to frequent actuarial reviews and will likely occur over an extended, multi-year timeframe. The estimated recovery range for this asset class is 16% to 24%.

7. **Other Investments.** Other investments assets include cash balances which are subject to specific donor restrictions and unrestricted funds held by the philanthropic foundations established at Trumbull and WRCS. The Liquidation Analysis assumes that any recovery of these investments will be reduced due to certain donor restrictions. The estimated recovery range for this asset class is 40% to 50%.

8. **Temporarily Restricted Assets.** Temporarily restricted assets consist of cash balances derived from charitable donations which are subject to donor restrictions. The Liquidation Analysis assumes no recovery of temporarily restricted assets due to certain donor restrictions. No recovery is assumed for this asset class.

9. **Permanently Restricted Assets.** Permanently restricted assets consist of cash balances derived from charitable donations which are subject to permanent donor restrictions. The Liquidation Analysis assumes no recovery of permanently restricted assets due to the nature of restrictions imposed thereon. No recovery is assumed for this asset class.

10. **Net Fixed Assets.** Net fixed assets consist of buildings, land, land improvements, furniture, fixtures and office and medical equipment. A large portion of these items have significantly depreciated and may not result in significant liquidation value. The Liquidation Analysis assumes an estimated recovery percentage by asset categorization as outlined below. Recovery percentages assume no cash recovery on any assets held under capital leases as the related assets would revert to the lessor. The direct out-of-pocket costs incurred to liquidate these assets are factored into the estimated recovery ranges. Total proceeds are estimated at 14% to 24% on a net basis.

**Forum Health (Consolidated)**
**Net Fixed Assets Analysis**

| $ 000s | Notes | Book Value | Estimated Recovery Percentage | | Estimated Liquidation | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| Net Fixed Assets: | | | | | | |
| Buildings | A | $51,008 | 10% | 20% | $5,101 | $10,202 |
| Equipment | B | 21,023 | 25% | 40% | 5,256 | 8,409 |
| Land | C | 3,115 | 0% | 0% | 0 | 0 |
| Land Improvements | D | 1,094 | 0% | 0% | 0 | 0 |
| Construction In Progress | E | 250 | 0% | 0% | 0 | 0 |
| Leasehold Improvements | F | 108 | 0% | 0% | 0 | 0 |
| Net Fixed Assets | | $76,598 | 14% | 24% | $10,357 | $18,611 |

A. Buildings consist of real property owned by the Debtors. Because these assets are located in a highly depressed real estate market, the Liquidation Analysis assumes they are not expected to yield high recovery values.

B. Medical equipment and fixtures, office furniture and equipment, computers and software assets are expected to bring modest recoveries. The Liquidation Analysis assumes these assets are more marketable than real property, but suffer from obsolescence and limited demand for used medical equipment.

5

C. Land consists of real property owned by the Debtors. Net recovery values for this asset category are included in the estimated recoveries for Buildings set forth above.

D. There is no recovery assumed for land improvements.

E. The Liquidation Analysis assumes that construction-in-progress assets are of little value to a third-party and are estimated to provide no recovery proceeds in a liquidation.

F. The Liquidation Analysis assumes there is no recovery for leasehold improvements since such improvements will revert to the lessor upon discontinuation of the leases.

11. **Other Assets.** Other non-current assets consist primarily of deposits, debt issuance costs and long-term investments. The Liquidation Analysis assumes: (a) deposits will likely be offset by the holders of such deposits; (b) deferred bond issuance cost is an accounting convention and has no value in liquidation; and (c) finally, the holder of the $4.1 million workers' compensation cash deposit will retain such deposit and set-off against unreimbursed workers' compensation claims. No recovery is assumed for this asset class.

12. **Charitable Perpetual Trust.** The Liquidation Analysis assumes the charitable perpetual trust assets are fully restricted by donor-intent. No recovery is assumed for this asset class.

## Chapter 7 Administrative Claims

13. **Trustee Legal Fees.** The costs and expenses incurred by the Trustee's legal counsel associated with the wind-down of the Debtor's estates are estimated to range from $750,000 to $1.0 million.

14. **Trustee Statutory Commission.** Fees to the Trustee are estimated at 3% of the total asset recovery value, excluding Cash and Short-Term Investments and Board Designated Assets.

15. **Other Trustee Professional Fees.** The costs and expenses incurred by the Trustee's professional advisor(s) associated with the wind-down of the Debtor's estates are estimated to range from $750,000 to $1.0 million.

16. **Net Wind-Down Costs.** Wind-down costs consist of estimated expenses that would be incurred during the Wind-Down Period and include, among other things, wages and benefits for employed personnel, insurance costs, operating expenses, security services, hazardous waste removal and storage of medical and business records. The Liquidation Analysis assumes that sufficient WARN notice is given. Unencumbered assets are fully consumed by the wind-down costs. Wind-down costs are estimated to range from $5.0 million to $6.0 million.

## Claims

17. **Debt Service Funds Available for Secured Bond Debt.** Debt service funds available for secured bond debt consist of cash amounts paid by the Debtors under the terms of the Bonds. These funds are held by the Bond Trustees and can only be applied to the secured bond debt obligations. Application of the funds to each individual series of bonds is

6

determined by the Bond Indentures and subject to approval of the respective Bond Trustees.

18. **Carve-out for UCC Professional Fees.** An allowance of $500,000 has been provided for in the final cash collateral order related to professional fees incurred by the various Estate-retained professionals in the chapter 11 cases. This carve-out reduces the amount of net proceeds available for the secured bond debt claims.

19. **Secured Bond Debt.** As of the Petition Date, the Debtors had four outstanding secured debt obligations consisting of the following amounts: (1) $68.6 million in principal under the indenture for the Series 1997A Bonds; (2) $26.3 million in principal under the indenture for the Series 1997B Bonds; (3) $26.2 million in principal under the indenture for the Series 2002A Bonds; and (4) $7.8 million in principal under the indenture for the Series 2002B Bonds. The allowed claim amount is equal to the book value according the Debtors' records. Proceeds available for distribution to the secured bond debt claims are reduced by the total amount of chapter 7 wind-down costs associated with liquidation of the Debtors' estates. Note, the lenders' 507(b) claim set forth in paragraph 4(c) of the Cash Collateral Order survives, among other things, the entry of any order that may be entered converting any of these cases to a case under chapter 7 of the Bankruptcy Code. See Cash Collateral Order, ¶¶ 4(c), 13(b) and 26.

20. **Other Secured Claims.** Other secured claims are capital leases which are estimated to have no cash recovery, as the related assets that serve as collateral would be surrendered to the lessor.

21. **Chapter 11 Administrative Claims.** Chapter 11 administrative claims include administrative costs, tax claims, professional fees, 503(b)(9) claims and reclamation claims. Other pre-conversion, postpetition claims include wage claims and accounts payable for trade vendors based on the Debtors' balance sheet as of April 30, 2010. Wage claims reflect two weeks of postpetition, pre-chapter 7 conversion unpaid wages. These claims have chapter 11 administrative priority. The recovery shown of $500,000 reflects the carve-out provided for professional fees. No further recovery is assumed.

22. **PBGC.** PBGC claims include $207.3 million of unfunded pension obligations related to the Debtors' defined benefit pension plans. No recovery is assumed for these claims.

23. **General Unsecured Claims.** General unsecured claims include prepetition non-priority unsecured claims estimated at $23.3 million as of the Petition Date based on the Debtors' April 30, 2010 balance sheet and severance costs of $1.9 million related to collective bargaining agreements. No assumption has been made with respect to contract rejection damages claims as they are unknown. No recovery is assumed for these claims.

7