**IT IS SO ORDERED.**

Dated: June 25, 2010
      12:43:27 PM

                                    Kay Woods
                                    **United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 09-40795 |
| FORUM HEALTH, et. al.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) Chapter 11 |
| | ) |
| | ) Judge Kay Woods |
| | ) |

**ORDER GRANTING, IN PART, DEBTORS' MOTION PURSUANT TO SECTIONS 105(A), 363 AND 365 OF THE BANKRUPTCY CODE FOR ORDERS: (I) APPROVING SALE AND BIDDING PROCEDURES AND AUCTION DATE; (II) SCHEDULING DATE AND TIME FOR A HEARING ON THE APPROVAL OF PROPOSED SALE; (III) APPROVING FORM AND MANNER OF NOTICE OF HEARING AND AUCTION; (IV) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES <u>AND INTERESTS; AND (V) APPROVING A BREAK-UP FEE</u>**

---

[1] The Debtors include: Forum Health (31-1560189), Forum Health Diagnostics Co. (34-1773672), Forum Health Enterprises Co. (34-1368151), Forum Health Outreach Laboratories, Inc. (34-1437294), Forum Health Ventures Co. (34-1489491), Forum Health Pharmacy Services Co. (34-1754092), Forum Health Rehabilitative Services Co. (31-1581767), Forum Health Services Co. (34-1461044), Western Reserve Care System (34-1454933), Western Reserve Health Foundation (34-1461047), Dacas Nursing Support Systems, Inc. (34-1482591), Dacas Nursing Systems, Inc. (34-1456983), Beeghly Oaks (31-1196072), PrideCare, Inc. (34-1490425), Trumbull Memorial Hospital (34-1461049), Trumbull Memorial Hospital Foundation (34-1195190), Comprehensive Psychiatry Specialists, Inc. (34-1697739) and Visiting Nurse Association and Hospice of Northeast Ohio (34-0714388).

{2180435:5}

This matter came before the Court on the *Debtors' Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code for Orders: (I) Approving Sale and Bidding Procedures and Auction Date; (II) Scheduling Date and Time for a Hearing on the Approval of Proposed Sale; (III) Approving Form and Manner of Notice of Hearing and Auction; (IV) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (V) Approving a Break-Up Fee*, Docket No. 839 (the "<u>Motion</u>"), filed by the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"); the *Objection of the Official Committee of Unsecured Creditors to Debtors' Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code for Order(s) (I) Approving Sale and Bidding Procedures and Auction Date, (II) Scheduling Date and Time for a Hearing on the Approval of Proposed Sale, (III) Approving Form and Manner of Notice of Hearing and Auction, (IV) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, and (V) Approving a Break-Up Fee*, Docket No. 883 (the "<u>Committee Objection</u>"); and the *Objection of the Consent Parties to the Debtors' Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code for Orders: (I) Approving Sale and Bidding Procedures and Auction Date; (II) Scheduling Date and Time for a Hearing on the Approval of Proposed Sale; (III) Approving Form and Manner of Notice of Hearing and Auction; (IV) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (V) Approving a Break-Up Fee*, Docket No. 885, (the "<u>Consent Parties Objection</u>" and, together with the Committee Objection, the "<u>Objections</u>"), and the Court having reviewed the Motion and the Objections and having heard the statements of counsel and evidence adduced with respect to the Motion and the Objections at a hearing held on June 22, 2010, before the Court (the "<u>Hearing</u>"); the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and

reference from the District Court pursuant to 28 U.S.C. § 157; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) service and notice of the Motion and hearing was sufficient under the circumstances; and (d) the relief requested in the Motion is in the best interest of the Debtors, their estates, their creditors, and other parties in interest; and the Court having determined that the legal and factual basis set forth in the Motion establish just cause of the relief granted herein;

**IT IS HEREBY ORDERED THAT**:

1. The requests in the Motion with respect to (a) approving the Sale Procedures,[2] (b) scheduling the Sale Hearing on the approval of the sale (the "Sale"), (c) approving the Break-Up Fee, and (d) approving the form of notice with respect thereto pursuant to sections 102, 363, 365 and 503 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004 and 6006, shall be, and hereby are, GRANTED.

2. The Objections are resolved by this Order.

3. The Sale Procedures attached as Exhibit 1 to this Order shall be, and hereby are, APPROVED.

4. The Break-Up Fee shall be Approved subject to the following modifications:

    a. AHS shall be, and hereby is, entitled to a break-up fee of $750,000; and

    b. AHS shall be, and hereby is, entitled to an expense reimbursement in an amount not to exceed $1,750,000, for costs and expenses actually incurred and paid by AHS or any affiliate of AHS, subject to allowance by the Court.

5. The Break-Up Fee, as modified herein, and return of Deposit provisions in Article 8 of the Proposed Purchaser's APA shall be, and hereby are, APPROVED.

---

[2] Unless otherwise defined herein, capitalized terms used herein have the meanings given to them in the Motion and exhibits attached thereto.

6. AHS shall be entitled to credit bid the $750,000 Break-Up Fee at the Auction.

7. The Sale Hearing on (a) the approval of the Sale, and (b) the assumption and assignment of the Acquired Contracts, if necessary, shall be held before the Honorable Kay Woods, United States Bankruptcy Judge, at the United States Bankruptcy Court, for the Northern District of Ohio, Eastern Division, Nathanial R. Jones Federal Building and U.S. Courthouse, 10 East Commerce Street, Youngstown, Ohio 44503, on August 10, 2010 at 9:30 a.m., prevailing Eastern Time, or as soon thereafter as counsel can be heard.

8. Objections to the Sale shall be filed with this Court no later than 8:00 a.m., prevailing Eastern Time on August 9, 2010.

9. Objections to the Assumption and Assignment Motions, including Cure Costs identified therein, shall be filed with this Court no later than 4:00 p.m., prevailing Eastern Time on July 21, 2010.

10. The notice (the "Notice") attached to the Motion as Exhibit C shall be served by first class mail deposited as soon as practicable after the date of this Order to: (a) the United States Trustee; (b) counsel for the Consent Parties; (c) counsel for the Committee; (d) any party that has expressed an interest in the purchase of the Sale Assets; (e) any party that has filed a notice of appearance in the Debtors' chapter 11 cases; (f) the District Director of Internal Revenue; (g) the Ohio State Department of Health; (h) the office of the Attorney General for the State of Ohio[3]; (i) U.S. Department of Health and Human Services; (j) Ohio Department of Job and Family Services; (k) all entities which are party to the Assigned Contracts; (l) the U.S. Attorney; (m) Mahoning County Treasurer; (n) Trumbull County Treasurer; (o) Centers for Medicare and Medicaid Services; (p) Ohio State Board of Pharmacy; (q) Federal Trade

---

[3] A separate notice will be sent to the Charitable Law Section of the Ohio Attorney General's Office by certified mail.

{2180435:5} 4

Commission; (r) U.S. Department of Justice; (s) American Dental Association; (t) American Podiatric Medical Association; (u) Accreditation Counsel for Graduate Medical Education; and (v) The Joint Commission.

11. The Notice to be served upon all known creditors of the Debtors (including without limitation all known personal injury and/or tort claimants) shall be served without a copy of the Bid Procedures.[4]

12. The Notice shall be served as set forth in paragraphs 10 and 11 of this Order, at least 35 days before the Auction.

13. The Debtors shall publish a notice of the Sale Hearing in the <u>Youngstown Vindicator</u> and the <u>Warren Tribune Chronicle</u>.

14. This Court shall retain jurisdiction to modify or extend any amount, time period, date or other terms or provisions of this Order and to resolve any dispute relating to this Order, including, without limitation, the Sale Procedures. To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control. All matters identified in the Motion not expressly determined or decided herein are reserved for the Sale Hearing.

# # #

Prepared By:

Shawn M. Riley (0037235)
Matthew A. Salerno (0070847)
McDonald Hopkins LLC
600 Superior Avenue, E., Suite 2100
Cleveland, OH 44114
Facsimile: (216) 348-5474
E-mail: sriley@mcdonaldhopkins.com
        msalerno@mcdonaldhopkins.com

COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

---

[4] The Notice served will provide that exhibits are available upon request of the Debtors' counsel.

# EXHIBIT 1

{2180435:5}

# FORUM HEALTH, et al.[1]

## SALE AND BIDDING PROCEDURES

These Sale and Bidding Procedures (the "Sale Procedures") set forth the process by which Forum Health and its affiliated debtor entities (individually or collectively, as the context may require, the "Seller" or "Sellers"), will conduct the sale process and auction of some or substantially all of their assets (the "Purchased Assets"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Asset Purchase Agreement dated June 9, 2010 (the "Stalking Horse APA"), between the Sellers and AHS Newco 9, LLC (the "Stalking Horse"), attached to Debtors' Motion Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code for Orders: (I) Approving Sale and Bidding Procedures and Auction Date; (II) Scheduling Date and Time for a Hearing on the Approval of Proposed Sale; (III) Approving Form and Manner of Notice of Hearing and Auction; (IV) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (V) Approving a Break-Up Fee.

The sale of the Purchased Assets, assignment of certain executory contracts (the "Assigned Contracts"), and the assumption of specific liabilities (the "Assumed Liabilities") (collectively referred to as the "Sale") pursuant to the Stalking Horse APA are subject to competitive bidding as set forth herein and approval of the Sale pursuant to Section 363 of the United States Bankruptcy Code and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure. Any party desiring to obtain a copy of Stalking Horse APA may do so by contacting the Sellers' representatives at:

McDONALD HOPKINS LLC
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
Shawn M. Riley (sriley@mcdonaldhopkins.com)
Matthew A. Salerno (msalerno@mcdonaldhopkins.com)
Melissa Asbrock (masbrock@mcdonaldhopkins.com)

- and –

---

[1] The Debtors include: Forum Health (31-1560189), Forum Health Diagnostics Co. (34-1773672), Forum Health Enterprises Co. (34-1368151), Forum Health Outreach Laboratories, Inc. (34-1437294), Forum Health Ventures Co. (34-1489491), Forum Health Pharmacy Services Co. (34-1754092), Forum Health Rehabilitative Services Co. (31-1581767), Forum Health Services Co. (34-1461044), Western Reserve Care System (34-1454933), Western Reserve Health Foundation (34-1461047), Dacas Nursing Support Systems, Inc. (34-1482591), Dacas Nursing Systems, Inc. (34-1456983), Beeghly Oaks (31-1196072), PrideCare, Inc. (34-1490425), Trumbull Memorial Hospital (34-1461049), Trumbull Memorial Hospital Foundation (34-1195190), Comprehensive Psychiatry Specialists, Inc. (34-1697739) and Visiting Nurse Association and Hospice of Northeast Ohio (34-0714388).

{2180433:8}

1

HOULIHAN, LOKEY, HOWARD & ZUKIN CAPITAL, INC.
123 N. Wacker Dr., 4th Floor
Chicago, IL 60606
Telephone: (312) 456-4700
Facsimile: (312) 346-0951
Andrew Turnbull (aturnbull@hl.com)
Geoff Ligibel (gligibel@hl.com)
Scott Jackson (sjackson@hl.com)

1.  **Notice of Cure Amounts and Objection Procedures.**

Pursuant to the Stalking Horse APA, the Stalking Horse has designated the Assigned Contracts for assumption by the Sellers and assignment to the Stalking Horse. On or before June 30, 2010, the Sellers shall serve on all non-Debtor parties to the Assigned Contracts a motion or motions (each an "Assumption and Assignment Motion") requesting authority to assume and assign Assigned Contracts and establish cure costs related thereto (in each case, the "Cure Amount"), which, among other things, will specify the Cure Amount necessary to assume and assign the Assigned Contracts, if any. The non-Debtor party to each applicable Assigned Contract shall have until July 21, 2010 (the "Objection Deadline") to object in writing to the Assumption and Assignment Motion, including respective Cure Amount, which objection shall (a) state with specificity why the applicable Cure Amount is allegedly inaccurate and (b) provide appropriate documentation in support of its position. If no objection to the Cure Amount is timely received, the Cure Amount set forth in the order(s) approving the Assumption and Assignment Motions shall be controlling, notwithstanding anything to the contrary in any of the Assigned Contracts or any other document, and the non-Debtor party to the applicable Assigned Contract shall be deemed to consent to the assumption and assignment of their Assigned Contract(s) and forever barred from asserting any additional Cure Amount or any other rights or claims against the Sellers, the Stalking Horse or any other purchaser or assignee.

2.  **Determination of "Qualifying Bidder" Status.**

Any person desiring to participate in the bidding process (each a "Potential Bidder"), must be deemed a "Qualifying Bidder." To be deemed a Qualifying Bidder, a Potential Bidder, other than the Stalking Horse, must deliver to the Sellers, if it has not already done so:

(a) an executed confidentiality agreement in form and substance satisfactory to the Sellers, and

(b) the most current audited (if available) and the latest unaudited financial statements as well as financial information evidencing the Potential Bidder's ability to close the transaction that meets the Debtors' satisfaction or such other information as reasonably determined by the Sellers to support the Potential Bidder's ability to close the transaction.

Upon the Sellers' determination, in consultation with MBIA Insurance Corporation, U.S. Bank National Association and Fifth Third Bank (collectively, the "Consent Parties") and the Official Committee of Unsecured Creditors (the "Committee"), that a party is a Qualifying

Bidder, the Sellers shall provide each Qualifying Bidder with access to all relevant business and financial information necessary to enable such Qualifying Bidder to evaluate the Purchased Assets, for the sole purpose of submitting an offer to acquire same. The Stalking Horse is deemed a Qualifying Bidder and to have submitted a Qualifying Bid for all purposes.

**3. Requirements of a "Qualifying Bid".**

To be deemed a "Qualifying Bid" to be considered at the Auction (as defined in Section 6 below), a bid must:

(a) Be submitted by a Qualifying Bidder;

(b) Be submitted to the Sellers' counsel and to their investment banker, each identified above, so as to be received by such parties not later than 5:00 p.m. prevailing Eastern Time, August 3, 2010 (the "Bid Deadline"). The Sellers shall immediately submit any bids received to the respective professionals of the Consent Parties and the Committee;

(c) Include an executed, legally binding, asset purchase agreement (the "Bidder's APA") in substantially the same form as the Stalking Horse APA, together with an electronic version thereof, marked to show any changes from the Stalking Horse APA;[2]

(d) Be accompanied by a copy of a board resolution or similar document demonstrating the authority of the bidder to make a binding and irrevocable bid on the terms proposed in the Bidder's APA;

(e) Not contain any financing contingencies;

(f) Not entitle a bidder (other than the Stalking Horse) to any break up fee, termination fee, expense reimbursement or any other similar type of fee, payment or reimbursement;

(g) Be accompanied by an adequate assurance package that shall contain information necessary to provide non-Debtor contract parties with adequate assurance of such bidder's future performance under executory contracts and/or unexpired leases that may potentially be assumed by the Debtors and assigned to the Qualified Bidder in the event that such bidder is the Prevailing Bidder;

(h) Confirm the bidder's completion of all due diligence required by the bidder in connection with the proposed transaction and contain no material additions to the conditions to closing contained in the Stalking Horse APA;

---

[2] For the avoidance of doubt, an APA submitted by a Qualified Bidder may contain a bid for less than substantially all of the assets and still constitute a Qualifying Bid if (i) such bid otherwise complies with the requirements of Section 3 other than Section 3(l), and (ii) the Sellers either (A) receive more than one Bidder APA for less than substantially all of the Purchased Assets such that, taken together, such individual Bidder APAs would satisfy the requirements of Section 3 or (B) have an alternative reorganization or liquidation solution for the unsold portion of the business that is reasonably expected to yield a value equal to or greater than the applicable Overbid Amount.

{2180433:8}

3

(i) State a projected closing date no later than 10 business days after the entry of the Sale Order, subject only to receipt of Attorney General and other consents, which shall be conditions precedent to closing;

(j) Provide for a deposit equal to at least 1% of the Qualifying Bid's Purchase Price (as defined in the Stalking Horse APA) (the "Performance Deposit") in addition to the commitment or guarantee of a creditworthy buyer entity that shall be obligated under all terms of the APA. In the absence of such commitment or guarantee, the deposit shall be equal to at least 7% of the Qualified Bid's Purchase Price. The Performance Deposit must be submitted at the same time as the Qualifying Bid and must be in the form of a wire transfer or a cashier's check from a major U.S. bank, or other good funds deemed acceptable by the Sellers in their reasonable judgment. The Performance Deposit shall be held in an escrow account established pursuant to and otherwise in accordance with the Performance Escrow Agreement, with interest in respect of each Performance Deposit to accrue to the benefit of the respective Qualifying Bidder;

(k) Be determined by the Sellers, after consultation with the Consent Parties and the Committee, likely to result in a value to the Sellers and their estates that is equal to or more than the aggregate of the value of the sum of:

    (i) The Purchase Price; plus

    (ii) The sum of (A) the break-up fee for the Stalking Horse of $750,000 (the "Break-Up Fee") and (B) $1,750,000 (representing the maximum amount of costs and expenses actually incurred and paid by AHS or any affiliate of AHS, subject to allowance by the Court); plus

    (iii) $500,000 (the sum of (i), (ii) and (iii) being the "Overbid Amount"); and

(l) The Sellers, in consultation with the Consent Parties and the Committee, may consider a combination of multiple bids, each of which is for less than all of the Purchased Assets, so long as (x) such combination of bids plus the Debtors' reasonable estimate of the reorganization or liquidation value of any excluded assets collectively offers an aggregate amount equal to, or greater than, the Overbid Amount and (y) each bid comprising such combination otherwise meets the requirements of a Qualifying Bid (such combination of bids, a "Combination Bid").

The foregoing determination by the Sellers, after consultation with the Consent Parties and the Committee, shall take into account, among other things the amount and nature of the proposed consideration; the proposed assumption of any liabilities; the ability of the Qualifying Bidder to close the proposed transaction; the proposed closing date; the likelihood, extent and impact of any potential delays in closing; any purchase price adjustments; the net economic effect of any changes from the Stalking Horse APA, if any, contemplated by the Potential Bidder's APA; and the net benefit to the Sellers' estates. The Sellers reserve the right, in

{2180433:8}

4

consultation with the Consent Parties and the Committee, to reject any bid for the Purchased Assets if such bid:

- (a) is on terms that are materially more burdensome or conditional than the terms of the Stalking Horse APA;

- (b) requires any indemnification of such bidder on terms that are materially more burdensome than the terms of the Stalking Horse APA; or

- (c) does not provide sufficient cash consideration to pay transfer taxes, cure costs or other cash costs of the transaction (including professionals' fees).

**4. Procedures Regarding Bids.**

- (a) By submitting a Qualifying Bid, each Qualifying Bidder agrees that its Qualifying Bid shall remain open and binding until the Sellers become obligated to return the Qualifying Bidder's Performance Deposit to such Qualifying Bidder pursuant to the provisions described herein.

- (b) In the event that the Sellers, after consultation with the Consent Parties and the Committee, determine that a Qualifying Bidder's bid does not constitute a Qualifying Bid, the Sellers shall promptly return the Qualifying Bidder's Performance Deposit, plus accrued interest thereon (if any), to such Qualifying Bidder.

- (c) In the event that the Sellers, after consultation with the Consent Parties and the Committee, determine that a Qualifying Bid does not become the Prevailing Bid (as defined in Section 6(i) below) or the Backup Bid (as defined in Section 6(j) below), the Sellers shall return the Qualifying Bidder's Performance Deposit plus accrued interest thereon to such Qualifying Bidder within two days following such determination.

- (d) In the event that a Qualifying Bid (including the Qualifying Bid submitted by the Stalking Horse) becomes the Backup Bid (as defined in Section 6(j) below) at the Auction (as defined in Section 6 below), but does not become the Prevailing Bid, or the Sellers, after consultation with the Consent Parties and the Committee, determine, not to proceed with the Sale, the Sellers shall return the Qualifying Bidder's Performance Deposit and accrued interest thereon to such Qualifying Bidder promptly following either the close of the Sale, or the decision by the Sellers, after consultation with the Consent Parties and the Committee, not to proceed with the Sale.

- (e) The Debtors' presentation to the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division (the "Bankruptcy Court") for approval of any Qualified Bid, including the Qualified Bid of the Stalking Horse, does not constitute the Debtors' acceptance of any such Qualified Bid; the Debtors shall not be deemed to have accepted any Qualified Bid unless and until such bid is approved in an order entered by the Bankruptcy Court (the "Sale Order"). In the

event that a Qualifying Bid is approved by the Bankruptcy Court at the Sale Hearing (as defined in Section 7 below), and is thereafter designated by the Sellers, after consultation with the Consent Parties and the Committee, as the Prevailing Bid, the Sellers shall execute the Bidder's APA underlying such Qualifying Bid promptly following such approval and designation, and the provisions of such Qualifying Bidder's APA shall thereupon become binding on both the Sellers and on the Qualifying Bidder, as the Prevailing Bidder (as defined in Section 6(i) below).

(f) The Sellers shall distribute copies of all APAs of Qualifying Bids to each Qualifying Bidder who has timely submitted a Qualifying Bid promptly following the Sellers' determination of such status, but in no event later than 12:00 p.m. prevailing Eastern Time one business day prior to the Auction.

**5. No Qualifying Bids.**

If the Sellers, after consultation with the Consent Parties and the Committee, determine that no Qualifying Bid, other than that of the Stalking Horse, has been submitted by the Bid Deadline, the Auction (as defined in Section 6 below) will not be conducted, and the Sellers shall request at the Sale Hearing (as defined in Section 7 below) that the Bankruptcy Court approve the Sale to the Stalking Horse pursuant to the terms of the Stalking Horse APA. If no Auction takes place, then the Stalking Horse Bid shall become the Prevailing Bid.

**6. Auction.**

In the event that at, or prior to, the Bid Deadline, the Sellers receive one or more Qualifying Bids, other than the bid from the Stalking Horse, the Sellers shall conduct an auction with respect to the Purchased Assets (the "Auction"). **The Auction shall take place starting at 10:00 a.m. prevailing Eastern Time on August 5, 2010, at the offices of McDonald Hopkins LLC, 600 Superior Avenue, East, Suite 2100, Cleveland, Ohio 44114**, or at such other place, date and time as may be designated in writing by the Sellers in a notice to be given to all Qualifying Bidders not later than two business days prior to the Auction. The Auction shall be governed by the following procedures:

(a) Only the Sellers, the Consent Parties, the Committee, the Stalking Horse and any other Qualifying Bidder who has submitted a Qualifying Bid (and the professionals for each of the foregoing) shall be entitled to attend and be heard at the Auction;

(b) The Stalking Horse and any other Qualifying Bidder who has submitted a Qualifying Bid shall appear at the Auction either in person, or through a representative who presents at, or prior to, the Auction documentation of authorization, acceptable to the Sellers, after consultation with the Consent Parties and the Committee, and their respective counsel, in their reasonable judgment, of such representative to participate in the Auction on behalf of such Qualifying Bidder, and to execute all documents related thereto;

(c) Only the Stalking Horse and the other Qualifying Bidders who have timely submitted Qualifying Bids shall be entitled to make bids at the Auction;

(d) The Stalking Horse and each other Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

(e) The Auction shall be conducted such that all bids will be made and received in one room, on an open basis, and the Stalking Horse and all other Qualifying Bidders will be entitled to be present for all bidding with the understanding that the true identity of each bidder will be fully disclosed to the Stalking Horse and all other Qualifying Bidders and that all material terms of each subsequent Qualified Bid will be fully disclosed to all other bidders throughout the entire Auction;

(f) Bidding shall commence with the highest and best Qualifying Bid (the "Initial Bid"), as determined by the Sellers, after consultation with the Consent Parties and the Committee;

(g) Bidding shall begin with the Initial Bid, and then continue in minimum additional increments of at least $500,000 higher than the previous bid;

(h) The Stalking Horse shall be permitted to credit bid the full amount of the Break-Up Fee, limited to $750,000, at the Auction;

(i) The Sellers, after consultation with the Consent Parties and the Committee, reserve the exclusive right, in their business judgment, to make one or more adjournments in the Auction to, among other things (i) facilitate discussions between the Sellers, the Consent Parties and the Committee, on the one hand, and the Stalking Horse and/or other individual Qualifying Bidders, on the other hand; (ii) allow the Stalking Horse and/or other individual Qualifying Bidders to consider how they wish to proceed; and (iii) give the Stalking Horse and/or other Qualifying Bidders the opportunity to provide the Sellers with such additional evidence as the Sellers, after consultation with the Consent Parties and the Committee, in their business judgment may require, that the bidder either has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing bid level. The Auction shall continue until there is a Qualifying Bid and all other Qualifying Bidders (including the Stalking Horse if it is not the then-highest Qualifying Bidder) have declined to bid further, and the Sellers, after consultation with the Consent Parties and with the Committee, have determined, in their business judgment, that such Qualifying Bid is the highest and best Qualifying Bid (the "Prevailing Bid"). The Qualifying Bidder submitting the Prevailing Bid shall become the prevailing bidder (the "Prevailing Bidder"), and shall have the rights and obligations of the purchaser, as set forth in the APA of such Prevailing Bidder (or the Stalking Horse APA if no Qualifying Bid other than that of the Stalking Horse is received);

(j) Upon naming the Prevailing Bid, the Sellers, the Consent Parties and the Committee shall select and announce which Qualifying Bid shall be the next highest or best bid and shall thereafter be deemed the "Backup Bidder", and to have submitted the "Backup Bid". The Backup Bidder shall remain obligated to close the Sale on the terms set forth in its last bid in the event that the Sale to the Prevailing Bidder does not close. The Backup Bidder shall remain obligated until such time as requisite statutory approval(s) can be obtained and the Backup Bidder's Performance Deposit shall be treated in accordance with Section 4(d) above;

(k) Prior to or shortly after the conclusion of the Auction, the Sellers may require the Prevailing Bidder and the Backup Bidder, to execute a modification, amendment or other such document with respect to their respective Bidder's APA to reflect the terms of the Prevailing Bid or the Backup Bid, as appropriate. In any event, within one business day after conclusion of the Auction, the Prevailing Bidder shall complete and execute any and all additional agreements, contracts, instruments or other documents, evidencing and containing the terms and conditions upon which the Prevailing Bid was made, and which are necessary to consummate the proposed transaction. The results at the conclusion of the Auction will be final and no additional bids will be accepted after the conclusion of the Auction;

(l) The Sellers may announce at the Auction, after consultation with the Consent Parties and the Committee, additional procedural rules that are reasonable under the circumstances (_e.g._, the amount of time to make subsequent overbids, bidding order, appointment of Qualifying Bidder designee, etc.) for conducting the Auction so long as such rules are not inconsistent with these Sale Procedures; and

(m) All bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction and the Sale.

**7. Sale Hearing.**

The Prevailing Bid will be subject to approval by the Bankruptcy Court. The Sale Hearing with respect to such approval (the "Sale Hearing") shall take place before the Honorable Judge Kay Woods, in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, Nathaniel R. Jones Federal Building and U.S. Courthouse, 10 East Commerce Street, Youngstown, Ohio 44503-1621, on August 10, 2010 at 9:30 a.m. prevailing Eastern Time. The Sale Hearing may be adjourned from time to time, without further notice to creditors or parties in interest, other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing. Objections to the Sale shall be due on or before 8:00 a.m. prevailing Eastern Time on August 9, 2010.

**8.     As Is Where Is.**

The sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Sellers, their agents or the Debtors' chapter 11 estates, except to the extent expressly set forth in the Stalking Horse APA or any marked agreement from a Qualified Bidder, as the case may be.

**9.     Failure to Consummate Purchase; Backup Bids.**

Following approval of the Prevailing Bid at the Sale Hearing, if the Prevailing Bidder fails to consummate the approved transaction pursuant to the terms of the Prevailing Bid for any reason, after consultation with the Consent Parties and the Committee, in the exercise of their business judgment, and without further order of the Bankruptcy Court, the Backup Bid shall be designated by the Sellers as the new Prevailing Bid, and the Backup Bidder shall become, upon such designation, the new Prevailing Bidder. The Sellers shall thereupon be authorized, but not required, without further order of the Bankruptcy Court, to consummate the transaction contemplated by the new Prevailing Bid with the new Prevailing Bidder. In the event that a Prevailing Bidder fails to consummate the approved transaction because of a material breach or failure to perform on the part of such Prevailing Bidder, the defaulting Prevailing Bidder's Performance Deposit shall be forfeited to the Sellers and their estates, and the Sellers and their estates in accordance with the terms of the Prevailing Bid, specifically reserve the right to seek all available damages from the defaulting Prevailing Bidder.

**10.    Reservation of Rights, Deadline Extension.**

The Sellers, after consultation with the Consent Parties and the Committee, reserve their rights to modify or impose, at or prior to the Auction, additional customary terms and conditions on the Sale consistent with these Sale Procedures and not inconsistent with the Stalking Horse APA, including, without limitation, extending the deadlines set forth herein, and adjourning the Sale Hearing in open court without further notice.