# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 09-40795 |
| FORUM HEALTH, et. al.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) Chapter 11 |
| | ) |
| | ) Judge Kay Woods |
| | ) |

## DEBTORS' SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION

May 24, 2011

McDONALD HOPKINS LLC

Shawn M. Riley (0037235)
Sean D. Malloy (0073157)
Matthew A. Salerno (0070847)
Melissa S. Giberson (0082413)
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Telephone:  (216) 348-5400
E-mail:     sriley@mcdonaldhopkins.com
            smalloy@mcdonaldhopkins.com
            msalerno@mcdonaldhopkins.com
            mgiberson@mcdonaldhopkins.com

Counsel for the Debtors and Debtors in Possession

– and –

NADLER NADLER & BURDMAN CO., L.P.A.

Michael A. Gallo
20 West Federal Street, Suite 60
Youngstown, OH  44503-1423
Telephone:  (330) 744-0247
Email:      gallo@nnblaw.com

Co-Counsel to the Debtors and Debtors in Possession

---

[1]  The debtors include:  Forum Health (31-1560189), Forum Health Diagnostics Co. (34-1773672), Forum Health Enterprises Co. (34-1368151), Forum Health Outreach Laboratories, Inc. (34-1437294), Forum Health Ventures Co. (34-1489491), Forum Health Pharmacy Services Co. (34-1754092), Forum Health Rehabilitative Services Co. (31-1581767), Forum Health Services Co. (34-1461044), Western Reserve Care System (34-1454933), Western Reserve Health Foundation (34-1461047), Dacas Nursing Support Systems, Inc. (34-1482591), Dacas Nursing Systems, Inc. (34-1456983), Beeghly Oaks (31-1196072), PrideCare, Inc. (34-1490425), Trumbull Memorial Hospital (34-1461049), Trumbull Memorial Hospital Foundation (34-1195190), Comprehensive Psychiatry Specialists, Inc. (34-1697739) and Visiting Nurse Association and Hospice of Northeast Ohio (34-0714388).  The chapter 11 cases of debtors Western Reserve Health Foundation and Trumbull Memorial Hospital Foundation were dismissed prior to the filing of this second amended Plan and, accordingly, these debtors and their assets are not treated under this Plan or included in the defined term "Debtors" as used in this Plan.

**TABLE OF CONTENTS**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME .................................................................................................................................1

    **1.1**    Defined Terms ...................................................................................................1

    **1.2**    Rules of Interpretation and Computation of Time .......................................1

           **1.2.1**   Rules of Interpretation ......................................................................1

           **1.2.2**   Computation of Time.........................................................................2

ARTICLE II CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....................2

    **2.1**    Unclassified Claims..........................................................................................2

           **2.1.1**   Payment of Administrative Claims....................................................2

           **2.1.2**   Payment of Priority Tax Claims ........................................................3

    **2.2**    Classified Claims .............................................................................................3

           **2.2.1**   Other Priority Claims (Class 1 Claims) – Unimpaired. ....................3

           **2.2.2**   Secured Claims (Class 2 Claims) – Unimpaired. ..............................3

           **2.2.3**   General Unsecured Claims (Class 3 Claims) – Impaired....................4

           **2.2.4**   PBGC Claims (Class 4 Claims) – Impaired. .....................................4

           **2.2.5**   Medical Malpractice Claims (Class 5 Claims) – Impaired. ...............4

           **2.2.6**   Debtor Interests (Class 6 Claims) – Impaired. ..................................4

    **2.3**    Special Provisions Relating to the Rights of Setoff of Creditors ...................4

ARTICLE III MEANS FOR IMPLEMENTATION OF THE PLAN ...........................................5

    **3.1**    Confirmation Exhibits .....................................................................................5

    **3.2**    Winddown of Debtors ......................................................................................5

    **3.3**    Western Reserve Health Foundation and Trumbull Memorial Health Foundation..........5

    **3.4**    Restricted Charitable Funds ............................................................................5

    **3.5**    FHIL and Merger of Certain Debtors ..............................................................6

    **3.6**    Pension Plan......................................................................................................6

    **3.7**    Retiree Benefits ...............................................................................................6

    **3.8**    Termination of Collective Bargaining Agreements ........................................6

    **3.9**    Liquidating Trust..............................................................................................7

           **3.9.1**   Liquidating Trust Generally ..............................................................7

           **3.9.2**   Funding of and Transfer of Assets into the Liquidating Trust .........7

           **3.9.3**   Liquidating Trustee............................................................................8

           **3.9.4**   Liquidating Trust Agreement ............................................................8

           **3.9.5**   Reports to be Filed by the Liquidating Trustee .................................8

           **3.9.6**   Fees and Expenses of the Liquidating Trust .....................................8

           **3.9.7**   Indemnification ..................................................................................8

           **3.9.8**   Tax Treatment ...................................................................................8

           **3.9.9**   Disposition of Assets by Liquidating Trust.......................................9

           **3.9.10**  Settlement of Causes of Actions and Disputed Claims.....................9

    **3.10**   Special Provisions ..........................................................................................10

           **3.10.1**  Limitations on Amounts to Be Distributed to Holders of Allowed Insured Claims .................................................................................................10

**3.10.2** Liquidation of Tort Claims and Medical Malpractice Claims ......................... 10
**3.10.3** Preservation of Causes of Action; Avoidance Actions ..................................... 10
**3.10.4** Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes ................................................................................................ 10
**3.10.5** Comprehensive Settlement of Claims and Controversies ................................ 10

ARTICLE IV EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................................... 11

**4.1** Assumption and Assignment ........................................................................... 11
**4.2** Cure of Defaults .............................................................................................. 11
**4.3** Bar Date for Rejection Damage Claims ........................................................... 11
**4.4** Approval of Rejection ...................................................................................... 11

ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS ....................................................... 11

**5.1** Distributions for Claims Allowed as of the Effective Date ............................... 11
**5.2** Method of Distributions to Holders of Claims ................................................. 12
**5.3** Delivery of Distributions and Undeliverable or Unclaimed Distributions ......... 12
    **5.3.1** Delivery of Distributions ................................................................... 12
    **5.3.2** Undeliverable Distributions Held by Disbursing Agents..................... 12
**5.4** Timing and Calculation of Amounts to be Distributed ..................................... 13
    **5.4.1** Distributions on Account of Allowed Claims in Class 1 and Class 2............... 13
    **5.4.2** Distributions on Account of Allowed Claims in Class 3 ..................... 13
    **5.4.3** Distributions on Account of Allowed Claims in Class 4 ..................... 15
    **5.4.4** Distributions on Account of Allowed Claims in Class 5 ..................... 15
**5.5** Other Provisions Applicable to Distributions in All Classes ............................. 15
    **5.5.1** Postpetition Interest .......................................................................... 15
    **5.5.2** Allocation of Distributions ................................................................ 15
**5.6** Holders of Record ........................................................................................... 15
**5.7** Means of Cash Payments ................................................................................. 15
**5.8** Withholding Requirements .............................................................................. 15
    **5.8.1** Withholding....................................................................................... 15
    **5.8.2** Distributions ..................................................................................... 16
    **5.8.3** Allocations ........................................................................................ 16
**5.9** Setoffs ............................................................................................................ 16

ARTICLE VI PROCEDURES FOR RESOLVING DISPUTED CLAIMS ....................................... 16

**6.1** Treatment of Certain Disputed Claims ............................................................ 16
    **6.1.1** Tort Claims ....................................................................................... 16
    **6.1.2** Disputed Insured Claims ................................................................... 16
    **6.1.3** No Distributions Pending Allowance ................................................. 16
**6.2** Prosecution of Objections to Claims ............................................................... 17
    **6.2.1** Objections to Claims.......................................................................... 17
    **6.2.2** Authority to Prosecute Objections..................................................... 17
    **6.2.3** Authority to Amend Schedules .......................................................... 17
    **6.2.4** Request for Extension of Claims Objection Bar Date ......................... 17
**6.3** Distributions on Account of Disputed Claims Once Allowed ........................... 17

ARTICLE VII CONSOLIDATION OF CERTAIN DEBTORS ........................................................ 17

| | | | |
|---|---|---|---|
| **7.1** | Limited Consolidation for Certain Purposes | ................................................. | 17 |
| **7.2** | Order Granting Consolidation for Certain Purposes | ............................... | 18 |

ARTICLE VIII CONFIRMATION OF THE PLAN ...................................................... 18

| | | | |
|---|---|---|---|
| **8.1** | Conditions Precedent to Confirmation | ....................................... | 18 |
| **8.2** | Conditions Precedent to the Effective Date | ................................. | 18 |
| **8.3** | Waiver of Conditions to Confirmation or Effective Date | .................. | 19 |
| **8.4** | Cramdown | ...................................................................... | 19 |
| **8.5** | Effect of Nonoccurrence of Conditions to the Effective Date | ........... | 19 |
| **8.6** | Effect of Confirmation of the Plan | ........................................ | 19 |
| | **8.6.1** Limitation of Rights of Holders of Claims | ..................... | 19 |
| | **8.6.2** Releases | ............................................................. | 19 |
| | **8.6.3** Injunction | .......................................................... | 20 |
| | **8.6.4** Exculpation | ........................................................ | 20 |
| **8.7** | Request for Waiver of Stay of Confirmation Order | ...................... | 21 |

ARTICLE IX RETENTION OF JURISDICTION ....................................................... 21

ARTICLE X MISCELLANEOUS PROVISIONS ....................................................... 22

| | | | |
|---|---|---|---|
| **10.1** | Modification of the Plan | .................................................... | 22 |
| **10.2** | Revocation of the Plan | ..................................................... | 22 |
| **10.3** | Severability of Plan Provisions | ........................................... | 22 |
| **10.4** | Dissolution of Creditors' Committee | ..................................... | 23 |
| **10.5** | Successors and Assigns | ..................................................... | 23 |

09-40795-jpg    Doc 1642    FILED 05/24/11    ENTERED 05/24/11 16:36:54    Page 4 of 30

## TABLE OF EXHIBITS

Exhibit A — Defined Terms

Exhibit B — Medical Malpractice Election Form

Exhibit C — Notice Parties

{2381249:15}

## TABLE OF CONFIRMATION EXHIBITS

| | | |
|---|---|---|
| Exhibit 3.5(a) | — | Not For Profit Debtor Mergers |
| Exhibit 3.5(b) | — | For Profit Debtor Mergers |
| Exhibit 3.10.3 | — | Causes of Action |
| Exhibit 4.1 | — | Assumed Executory Contracts and Unexpired Leases |
| Exhibit A.63 | — | Insurance |
| Exhibit A.70 | — | Liquidating Trust Agreement |
| Exhibit A.94 | — | List of Relief From Stay Orders |

{2381249:15}

# INTRODUCTION

Forum Health and its affiliated Debtors, Forum Health Diagnostics Co., Forum Health Enterprises Co., Forum Health Outreach Laboratories, Inc., Forum Health Ventures Co., Forum Health Pharmacy Services Co., Forum Health Rehabilitative Services Co., Forum Health Services Co., Western Reserve Care System, Dacas Nursing Support Systems, Inc., Dacas Nursing Systems, Inc., Beeghly Oaks, PrideCare, Inc., Trumbull Memorial Hospital, Comprehensive Psychiatry Specialists, Inc. and Visiting Nurse Association and Hospice of Northeast Ohio, propose the following plan of liquidation for the resolution of the outstanding claims against and interests in their respective bankruptcy estates. Reference is made to the Disclosure Statement for the Debtors' Second Amended Chapter 11 Plan of Liquidation for a discussion of the history, business, properties and operations of the Debtors, a summary and analysis of this Plan, risk factors related to this Plan and certain related matters including, among other things, the proposed substantive consolidation of the Chapter 11 Cases. This Plan follows the closing of a sale of most of the Debtors' operating assets to Youngstown Ohio Hospital Company, LLC and contemplates the liquidation of the unsold assets and distribution of the proceeds of such sale and liquidation pursuant to this Plan. Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

### 1.1     Defined Terms

As used in this Plan, capitalized terms have the meanings set forth in Exhibit A. Any term that is not otherwise defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as each term is defined in Exhibit A), will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

### 1.2     Rules of Interpretation and Computation of Time

#### 1.2.1     Rules of Interpretation

For purposes of this Plan, unless otherwise provided in this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (f) the words "in this Plan," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of formation, limited liability operating agreement, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

{2381249:15}

### 1.2.2 Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Claims, statutory fees payable pursuant to 28 U.S.C. § 1930 and Priority Tax Claims, are placed in the following Classes. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, statutory fees and Priority Tax Claims, as described in Section 2.1, have not been classified and thus are excluded from the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim qualifies within the description of such other Classes.

### 2.1 Unclassified Claims

### 2.1.1 Payment of Administrative Claims

a. Administrative Claims in General

Except as otherwise specified in this Section 2.1, and subject to the Bar Date provisions in this Plan, unless an order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Claim will receive, in full satisfaction of its Administrative Claim, Cash equal to the amount of such Allowed Administrative Claim on the later of (i) the Effective Date or (ii) the date on which such Administrative Claim becomes an Allowed Administrative Claim.

b. Statutory Fees

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 will be paid in Cash equal to the amount of such Allowed Administrative Claims. With respect to any Chapter 11 Case not converted, closed or dismissed in accordance with the provisions of Sections 2.2.6 and 3.4 of this Plan, all fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date will be paid by the Liquidating Trustee until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

c. Bar Dates for Administrative Claims

(i) General Administrative Claim Bar Date Provisions

Except as otherwise provided in this Plan or an order of the Bankruptcy Court, requests for payment of Administrative Claims must have been Filed pursuant to the procedures specified in the Administrative Bar Date Order. Holders of Administrative Claims that did not File and serve such a request by the Administrative Bar Date are forever barred from asserting such Administrative Claims against the Debtors, the Liquidating Trust or their respective property, and any such alleged Administrative Claims will be deemed discharged as of the Effective Date. Objections to such requests must be Filed by the Claims Objection Bar Date.

(ii) Bar Dates for Professional Compensation

All unpaid Fee Claims incurred by Professionals prior to the Effective Date shall be subject to final allowance or disallowance upon application to the Bankruptcy Court pursuant to

09-40795-jpg    Doc 1642    FILED 05/24/11    ENTERED 05/24/11 16:36:54    Page 8 of 30

sections 328, 330 or 503(b)(4) of the Bankruptcy Code. Final applications for allowance of Fee Claims for services rendered in connection with the Chapter 11 Cases shall be Filed with the Bankruptcy Court no later than 30 days after the Effective Date, provided, however, that any professional receiving compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further review or approval of the Bankruptcy Court (except as provided in the Ordinary Course Professionals Order). Objections to any Fee Claims must be filed and served on the Notice Parties and the requesting party by the later of: (a) 60 days after the Effective Date; (b) 30 days after the filing of the applicable request for payment of the Fee Claim; and (c) such other period of limitation as may be specifically fixed by a Final Order for objecting to such Fee Claim. To the extent necessary, the Confirmation Order will amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.

### 2.1.2   Payment of Priority Tax Claims

a.       Priority Tax Claims

Each holder of an Allowed Priority Tax Claim will receive, in full satisfaction of its Priority Tax Claim, Cash equal to the amount of such Allowed Priority Tax Claim, on the later of (a) the Effective Date or (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim. With respect to any Allowed Priority Tax Claim held by the Ohio Bureau of Workers' Compensation, the Ohio Bureau of Workers' Compensation shall be entitled to draw on the Workers' Compensation Fund, which shall be deemed to constitute the Debtors' timely Cash payment pursuant to this Section 2.1.2.a.

b.       Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding the provisions of Section 2.1.2.a, the holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty will be subject to treatment in Class 3 (General Unsecured Claims), as applicable, if not subordinated to Class 3 Claims pursuant to an order of the Bankruptcy Court. The holder of an Allowed Priority Tax Claim will not assess or attempt to collect such penalty from the Debtors, the Liquidating Trust or their respective property (other than as a holder of a Class 3 Claim).

## 2.2       Classified Claims

### 2.2.1   Other Priority Claims (Class 1 Claims) – Unimpaired.

Each Holder of an Allowed Other Priority Claim will receive, in full satisfaction of its Other Priority Claim, Cash equal to the amount of such Allowed Other Priority Claim on the later of (a) the Effective Date or (b) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim.

### 2.2.2   Secured Claims (Class 2 Claims) – Unimpaired.

Unless the Holder of such Claim and the applicable Debtor agree to a different treatment, 30 days after the later of (a) the Effective Date and (b) the date on which the Claim is Allowed, in full satisfaction of its Allowed Claim, each Holder of an Allowed Secured Claim shall receive, at the option of the Debtors: (a) the net proceeds of the sale of the property securing such claim, up to the Allowed amount of such claim; (b) the return of property securing such claim; or (c) Cash equal to the value of the property securing such claim, up to the value of the Allowed Secured Claim.

### 2.2.3 General Unsecured Claims (Class 3 Claims) – Impaired.

On one or more Distribution Dates, each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata share of the net proceeds of the Liquidating Trust Assets after the payment of all Allowed Fee Claims, Administrative Claims, Priority Tax Claims, Other Priority Claims, and Secured Claims, and the payment of all costs and expenses of the Liquidating Trust.

The obligations to holders of Allowed General Unsecured Claims shall be governed by the Liquidating Trust Agreement.

### 2.2.4 PBGC Claims (Class 4 Claims) – Impaired.

In full satisfaction of the PBGC Claims, the PBGC shall receive: (i) the PBGC Administrative Claim, to be treated in accordance with Section 2.1.1 of this Plan; (ii) the Beneficial Interests in FHIL, which will be delivered to the PBGC in accordance with the agreement between the PBGC and the Debtors; and (iii) the PBGC Remaining Claim, to be treated in accordance with Section 2.2.3 of this Plan. The PBGC shall be entitled to vote the PBGC Remaining Claim as a part of Class 3 (General Unsecured Claims).

### 2.2.5 Medical Malpractice Claims (Class 5 Claims) – Impaired.

On the Effective Date, each holder of a Medical Malpractice Claim shall (i) affirmatively elect, by submission of an executed copy of the Election Form attached to this Plan as Plan Exhibit B to counsel for the Debtors, to be granted relief from the automatic stay to liquidate the amount of such holder's Medical Malpractice Claim in an appropriate legal forum or (ii) in the absence of an affirmative election of the type specified in subsection (i) have such Medical Malpractice Claim estimated by the Bankruptcy Court. If the holder of a Medical Malpractice Claim elects relief from the stay to liquidate the amount of its Claim, and the Claim has not been liquidated within one year of the Effective Date, the Liquidating Trustee may seek estimation of the Claim by the Bankruptcy Court for purposes of determining the amount of any Class 3 deficiency Claim. In each instance, any recovery by such holder on account of an Estimated Medical Malpractice Claim or an Adjudicated Medical Malpractice Claim shall be limited to Insurance. To the extent Insurance is insufficient to pay any Estimated Medical Malpractice Claims and/or any Adjudicated Medical Malpractice Claims, the holder of such claim shall be entitled to a Class 3 Allowed General Unsecured Claim for any deficiency. Nothing in this Section 2.2.5. shall alter, modify, void, limit or impair the provisions of any Relief From Stay Order previously entered in these Chapter 11 Cases.

### 2.2.6 Debtor Interests (Class 6 Claims) – Impaired.

On the Effective Date, except as provided in Section 3.4 with respect to Interests in Forum Health and Forum Health Ventures Co., all Interests will be cancelled. All Interests are not entitled to any distributions under the Plan.

### 2.3 Special Provisions Relating to the Rights of Setoff of Creditors

Nothing in this Plan shall expand or enhance a creditor's right of setoff, which shall be determined as of the Petition Date. Nothing in this Plan is intended to, or shall be interpreted to, approve any creditor's effectuation of a postpetition setoff without the consent of the Debtors unless prior Bankruptcy Court approval has been obtained.

09-40795-jpg    Doc 1642    FILED 05/24/11    ENTERED 05/24/11 16:36:54    Page 10 of 30

# ARTICLE III
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 3.1     Confirmation Exhibits

All Confirmation Exhibits to this Plan will be filed with the Bankruptcy Court no later than 10 days before the Confirmation Hearing.

### 3.2     Winddown of Debtors

As soon as practicable subsequent to the Effective Date and except as provided in Sections 3.4 and 3.5, each of the Debtors shall take all necessary steps to effect their winddown and dissolution.

### 3.3     Western Reserve Health Foundation and Trumbull Memorial Health Foundation

On March 17, 2011, the chapter 11 cases pending with respect to Western Reserve Health Foundation and Trumbull Memorial Hospital Foundation (together, the "Foundations") were dismissed. The Committee had objected to dismissal of the Foundations, seeking access to the Foundations' unrestricted charitable funds to pay the creditors of all Debtors. The Bankruptcy Court overruled the Committee's objection and dismissed the Foundations' cases. The Committee appealed the Bankruptcy Court's order and moved the Bankruptcy Court for a stay of the effectiveness of the dismissal orders pending appeal, which stay motion was denied. During the hearing on the Foundations' motions to dismiss, the Foundations had noted that they were solvent and intended to pay their own creditors in full. In addition, the Foundations agreed to pay their own bankruptcy expenses, such as the costs of litigating the motions to dismiss, the motion of the Committee for stay pending appeal, and other similar matters.

The Foundations consulted with the Committee regarding the appropriate share of bankruptcy expenses that should be paid by the Foundations. After discussion, the Foundations agreed to pay $1 million (the "Foundations Payment") in the aggregate into the Debtors' estates for distribution to creditors. The Debtors believe that this is an appropriate resolution of the Foundations' obligations, and this Plan constitutes a motion under Bankruptcy Rule 9019 to resolve all obligations of the Foundations for expenses related to their chapter 11 cases and any other claims or causes of action of the Debtors against the Foundations. In addition, the Foundations Payment shall be considered additional consideration for the releases granted to the Foundations pursuant to Section 8.6.2 hereof.

As of the date of filing of this Plan, the PBGC (the Debtors' largest unsecured creditor) has voiced its support for the resolution of the claims and causes of actions of the Debtors' estates against the Foundations as resolved by this Plan. The Committee, however, has not. Accordingly, there is a possibility that there will be continued litigation over approval of this provision of the Plan, the Committee's appeal of the dismissal orders, and other issues impacting the Foundations. The Foundations' agreement to make the Foundations Payment is explicitly conditioned upon entry of a Final Order fully and finally resolving all claims against the Foundations and releasing them in full without any further risk of litigation. As a result, the Debtors have agreed to indemnify the Foundations for the costs of further litigation related to these matters. The practical effect of this agreement (which is a critical term of the Foundations' agreement to make the Foundations Payment) is that the value of the $1 million to the Debtors' creditors will be reduced dollar for dollar with any further costs of litigation to the Foundations.

### 3.4     Restricted Charitable Funds

No later than 10 days before the Confirmation Hearing, the Debtors shall affirmatively indicate their intentions with respect to disposition of Restricted Charitable Funds. The Debtors shall affirmatively elect to dispose of the Restricted Charitable Funds by either:

09-40795-jpg     Doc 1642     FILED 05/24/11     ENTERED 05/24/11 16:36:54     Page 11 of 30

A.       continuing the corporate existence of each of Debtor Trumbull Memorial Hospital and Debtor Western Reserve Care System, for the sole purpose of holding the Restricted Charitable Funds so that such funds may be directed to the fulfillment of an Appropriate Purpose pursuant to applicable laws;

B.       delivering all Restricted Charitable Funds held by Debtor Trumbull Memorial Hospital to non-debtor Trumbull Memorial Hospital Foundation and all Restricted Charitable Funds held by Debtor Western Reserve Care System to non-debtor Western Reserve Health Foundation so that such funds may be directed to the fulfillment of an Appropriate Purpose pursuant to applicable laws; or

C.       delivering the Restricted Charitable Funds to a local or community foundation capable of utilizing the Restricted Charitable Funds in accordance with an Appropriate Purpose.

In no event shall the Restricted Charitable Funds be disposed of in such a way as to violate any charitable or other restriction placed on the use or disposition of such Restricted Charitable Funds or any applicable state law.

### 3.5       FHIL and Merger of Certain Debtors

On the Effective Date, the Board of Trustees of Forum Health shall be replaced by the Liquidating Trust.  To complete the winddown of FHIL, disburse the Beneficial Interests of FHIL as described in Section 2.2.4 and ensure continued insurance coverage, (a) all not-for-profit Debtors necessary for continued insurance coverage as identified on Confirmation Exhibit 3.5(a) shall be merged into Debtor Forum Health; (b) all for-profit Debtors necessary for continued insurance coverage as identified on Confirmation Exhibit 3.5(b) shall be merged into Debtor Forum Health Ventures Co.; (c) Debtor Forum Health shall retain the Interests of Debtor Forum Health Ventures Co. and non-debtor FHIL; and (d) non-debtor Forum Health Holding Company shall retain the Interests of Debtor Forum Health.

### 3.6       Pension Plan

On January 26, 2011, the PBGC and the Debtors executed a Trusteeship Agreement by which the Pension Plan was terminated, the PBGC became statutory trustee of the Pension Plan, and September 30, 2009, was established as the Pension Plan termination date.

### 3.7       Retiree Benefits

Certain consensual modifications to various retiree benefits reached with the authorized representatives of such retirees have been approved by the Bankruptcy Court, which modifications have resulted in the termination of any continuing liability or obligation of the Debtors for retiree benefits (as such term is used and defined in section 1114 of the Bankruptcy Code) under any of the Debtors' Collective Bargaining Agreements.

### 3.8       Termination of Collective Bargaining Agreements

Prior to the Effective Date, the Debtors will have entered into consensual terminations of the Debtors' Collective Bargaining Agreements with each applicable Union, and such consensual terminations will have been approved by the Bankruptcy Court.  In the absence of such Union consent or in the absence of Bankruptcy Court approval, the applicable Debtors shall seek termination in accordance with section 1113 of the Bankruptcy Code.

09-40795-jpg     Doc 1642     FILED 05/24/11     ENTERED 05/24/11 16:36:54     Page 12 of 30

### 3.9 Liquidating Trust

#### 3.9.1 Liquidating Trust Generally

On or prior to the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of liquidating remaining Assets (other than FHIL) and distributing the proceeds thereof to creditors in accordance with the terms of the Plan. Subject to and to the extent set forth in the Plan, the Confirmation Order, the Liquidating Trust Agreement or other agreement (or any other order of the Bankruptcy Court entered pursuant to or in furtherance hereof), the Liquidating Trust (and the Liquidating Trustee) shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the Liquidating Trust provisions of the Plan; (b) accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the Liquidating Trust Assets (directly or through its professionals, in accordance with the Plan); (c) sell, liquidate, transfer, distribute or otherwise dispose of the Liquidating Trust Assets (directly or through its professionals) or any part thereof or any interest in this Plan upon such terms as the Liquidating Trustee determines to be necessary, appropriate or desirable; (d) calculate and make distributions to holders of Allowed Claims pursuant to the procedures for allowing Claims and making distributions prescribed in the Plan; (e) comply with the Plan and exercise the Liquidating Trustee's rights and fulfill its obligations thereunder; (f) review, reconcile or object to Claims and resolve such objections as set forth in the Plan; (g) pursue Avoidance Actions that may be transferred to the Liquidating Trust, if any, to the extent that their pursuit would likely result in an economic benefit to holders of Claims; (h) retain and compensate professionals to represent the Liquidating Trustee with respect to his responsibilities; (i) establish and maintain a Disputed Claims Reserve; (j) file appropriate Tax returns and other reports on behalf of the Liquidating Trust and pay Taxes or other obligations owed by the Liquidating Trust; (k) exercise such other powers as may be vested in the Liquidating Trustee under the Liquidating Trust Agreement or the Plan, or as deemed by the Liquidating Trustee to be necessary and proper to implement the provisions of the Plan and the Liquidating Trust Agreement; (l) object to the amount of any Claim on any Schedule if the Liquidating Trustee determines in good faith that the Claim is invalid or has previously been paid or satisfied; (m) pay any and all residual statutory fees of any Debtors as provided in Section 2.1.1.b of this Plan; and (n) dissolve the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement. Notwithstanding anything to the contrary in this Section, the Liquidating Trust's primary purpose is liquidating the assets transferred to it by the Debtors and making distributions of the assets of the Liquidating Trust to holders of Allowed Claims.

#### 3.9.2 Funding of and Transfer of Assets into the Liquidating Trust

a. On the Effective Date, the Debtors shall transfer the Liquidating Trust Assets to the Liquidating Trust. The Liquidating Trust Assets will be transferred to and vest in the Liquidating Trust on the Effective Date, free and clear of all liens, claims and other encumbrances.

b. The Liquidating Trustee shall have the authority to create sub-accounts or sub-trusts within the Liquidating Trust, and into which the Liquidating Trustee may deposit any non-Cash property, including real or personal property pending its liquidation. The Liquidating Trustee, as trustee of such sub-accounts or sub-trusts may hold legal title to such property. Once liquidated, any Cash proceeds of such sub-accounts or sub-trusts shall be deposited directly into the primary trust account.

c. The act of transferring assets and rights to the Liquidating Trustee of the Liquidating Trust, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of

09-40795-jpg    Doc 1642    FILED 05/24/11    ENTERED 05/24/11 16:36:54    Page 13 of 30

any right, and such rights may be asserted by the Liquidating Trust as if the asset or right was still held by the applicable Debtor.

### 3.9.3 Liquidating Trustee

    a.    The initial Liquidating Trustee shall be Dalton T. Edgecomb.

    b.    The powers, rights and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to fulfill the items identified in this Plan. Other rights and duties of the Liquidating Trustee and the beneficiaries of the Liquidating Trust shall be as set forth in the Liquidating Trust Agreement.

### 3.9.4 Liquidating Trust Agreement

The Liquidating Trust Agreement generally will provide for, among other things: (a) the payment of reasonable compensation to the Liquidating Trustee; (b) the payment of other expenses of the Liquidating Trust, including the cost of pursuing the claims, rights and causes of action assigned to the Liquidating Trust; (c) the retention of counsel, accountants, financial advisors or other professionals and the payment of their compensation; (d) the investment of Cash by the Liquidating Trustee within certain limitations; (e) the preparation and filing of appropriate Tax returns and other reports on behalf of the Liquidating Trust and the payment of Taxes or other obligations owed by the Liquidating Trust; (f) the orderly liquidation of the Liquidating Trust's assets; and (g) the litigation, settlement, abandonment or dismissal of any claims, rights or causes of action assigned to the Liquidating Trust.

### 3.9.5 Reports to be Filed by the Liquidating Trustee

The Liquidating Trustee, on behalf of the Liquidating Trust, shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Liquidating Trust Agreement), no later than 31 days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it, and other matters relating to the implementation of the Plan.

### 3.9.6 Fees and Expenses of the Liquidating Trust

Except as otherwise ordered by the Bankruptcy Court, the reasonable and necessary fees and expenses of the Liquidating Trust (including the reasonable and necessary fees and expenses of any professionals assisting the Liquidating Trustee in carrying out its duties under the Plan) will be funded by the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement without further order from the Bankruptcy Court.

### 3.9.7 Indemnification

The Liquidating Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Liquidating Trustee and/or other parties. Any such indemnification shall be the sole responsibility of the Liquidating Trust and payable solely from the Liquidating Trust Assets.

### 3.9.8 Tax Treatment

The Liquidating Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation § 301.7701-4(d) and in part as one or more Disputed Claims reserves treated either as discrete trusts taxed pursuant to Section 641 et seq. of the Internal Revenue Code or as disputed ownership funds described in Treasury Regulation § 1.468B-9. For federal

09-40795-jpg   Doc 1642   FILED 05/24/11   ENTERED 05/24/11 16:36:54   Page 14 of 30

income tax purposes, the transfer of assets by the Debtors to the Liquidating Trust will be treated in part as the transfer of assets by the Debtors to the holders of Allowed Claims, subject to any liabilities of the Debtors or the Liquidating Trust payable from the proceeds of such assets, followed by the transfer of such assets (subject to such liabilities) by such holders to the Liquidating Trust in exchange for interests in the trust, and in part as the transfer of assets by the Debtors to one or more Disputed Claims reserves. The holders of Allowed Claims will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the assets in the Liquidating Trust (subject to such liabilities), depending on their rights to distributions under the Plan. As grantors and deemed owners of such assets, the holders of Allowed Claims will be required to include in income their respective shares of the income, deductions, gains, losses and credits attributable to such assets. The holders of Allowed Claims will be required to use the values assigned to such assets by the Liquidating Trustee for all federal tax purposes, including the recognition of income, deduction, gain or loss with respect to their Allowed Claims and any gain or loss recognized on the subsequent disposition of an asset in which the holder holds an interest. The Liquidating Trust Agreement will contain certain provisions to comply with IRS guidance for trusts treated as liquidating trusts. Among other things, the agreement will (a) require that the Liquidating Trust terminate no later than five years after the Effective Date, subject to extension with Bankruptcy Court approval, (b) limit the Liquidating Trustee's investment powers, (c) limit the business operations carried on by the Liquidating Trust to activities reasonably necessary to and consistent with the trust's liquidating purpose, (d) prohibit the Liquidating Trust from receiving or retaining Cash or Cash equivalents in excess of an amount reasonably necessary to meet Claims and contingent liabilities or to maintain the value of the trust assets during liquidation and (e) distribute at least annually to the holders of Allowed General Unsecured Claims the Liquidating Trust's net income and the net proceeds from the sale of Liquidating Trust Assets in excess of an amount reasonably necessary to meet senior Claims and contingent liabilities (including Disputed Claims) and to maintain the value of the Liquidating Trust assets. Liquidating Trust Assets reserved for holders of Disputed Claims will be treated as one or more Disputed Claims reserves for tax purposes, which will be subject to an entity-level Tax on some or all of their net income or gain. No holder of a Claim will be treated as the grantor or deemed owner of an asset reserved for Disputed Claims until such holder receives or is allocated an interest in such asset. The Liquidating Trustee will file all Tax returns on a basis consistent with the treatment of the Liquidating Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation § 1.671-1(a)) and in part as one or more Disputed Claims reserves taxed as discrete trusts or disputed ownership funds, and will pay all Taxes owed from Liquidating Trust assets, provided that income taxes of the Disputed Claims reserves shall only be paid from the Liquidating Trust assets allocable to the Disputed Claims reserves.

### 3.9.9    Disposition of Assets by Liquidating Trust

The Liquidating Trustee may conduct any sales or liquidations of non-Cash Liquidating Trust Assets from the Liquidating Trust on any terms he deems reasonable, without further order of the Bankruptcy Court, unless either the book value or proposed sale price of the relevant Liquidating Trust Asset(s) is greater than $100,000, in which case approval of the Bankruptcy Court will be required. Notwithstanding anything herein to the contrary, the Restricted Charitable Funds are not Liquidating Trust Assets and there will be no "net proceeds" from the Restricted Charitable Funds available for distribution to creditors under Section 2.2.3 hereof or otherwise.

### 3.9.10    Settlement of Causes of Actions and Disputed Claims

The Liquidating Trustee may settle, compromise, abandon or withdraw any Cause of Action, including any Avoidance Action, on any grounds or terms he deems reasonable, without further order of the Bankruptcy Court, unless the face value of such Cause of Action is greater than $50,000, in which case approval of the Bankruptcy Court will be required.  The Liquidating Trustee may settle or compromise any Disputed Claims on any terms he deems reasonable, without further order of the Bankruptcy Court, unless the face value of such Disputed Claim is greater than: (a) $50,000 for an

09-40795-jpg    Doc 1642    FILED 05/24/11    ENTERED 05/24/11 16:36:54    Page 15 of 30

Administrative Claim, Priority Tax Claim, Other Priority Claim, or Secured Claim; or (b) $250,000 for a General Unsecured Claim.

### 3.10    Special Provisions

#### 3.10.1    Limitations on Amounts to Be Distributed to Holders of Allowed Insured Claims

Distributions under the Plan to each holder of an Allowed Insured Claim will be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from proceeds payable to the holder thereof under any pertinent insurance policies and applicable law. Nothing in this Section 3.9.1 constitutes a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that any entity may hold against any other entity, including the Debtors' insurance carriers.

#### 3.10.2    Liquidation of Tort Claims and Medical Malpractice Claims

All Tort Claims (other than Adjudicated Medical Malpractice Claims) including all Estimated Medical Malpractice Claims will be liquidated, determined or otherwise resolved in accordance with the provisions of section 502(c) of the Bankruptcy Code and will be subject to the Claims allowance process set forth in the Plan. To the extent any Holder of a Medical Malpractice Claim has affirmatively elected to have such Claim adjudicated by a court other than the Bankruptcy Court in accordance with the provisions of Section 2.2.5 or such Medical Malpractice Claim is the subject of a Relief From Stay Order, to the extent such Medical Malpractice Claim has not been the subject of final adjudication on or before the date that is 12 months after the Effective Date, the Liquidating Trustee shall have the authority to seek estimation of the Claim by the Bankruptcy Court for purposes of determining the amount of any Class 3 Claim as a result of an estimated Insurance deficiency.

#### 3.10.3    Preservation of Causes of Action; Avoidance Actions

On the Effective Date, the Debtors will transfer to the Liquidating Trustee, as the representative of the Estates under section 1123(b) of the Bankruptcy Code, all Causes of Action, including Avoidance Actions, and the Liquidating Trustee may enforce any Causes of Action that the Debtors or the Estates may hold against any entity to the extent not expressly released under the Plan or by any Final Order of the Bankruptcy Court, including but not limited to those items identified at Confirmation Exhibit 3.10.3. The Liquidating Trust shall also control any privilege rights of the Debtors, including but not limited to the attorney/client privilege, related to the Causes of Action.

#### 3.10.4    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes

The Chief Restructuring Officer of each Debtor and the Liquidating Trustee will be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan. Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp Tax, real estate transfer Tax, mortgage recording Tax, sales or use Tax or similar Tax: (a) the creation of any mortgage, deed of trust, lien or other security interest; (b) the making or assignment of any lease or sublease; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing or pursuant to the Plan.

#### 3.10.5    Comprehensive Settlement of Claims and Controversies

09-40795-jpg     Doc 1642     FILED 05/24/11     ENTERED 05/24/11 16:36:54     Page 16 of 30

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases set forth in Article VIII, will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and their respective property and Claim and Interest holders and is fair, equitable and reasonable.

## ARTICLE IV
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 4.1     Assumption and Assignment

Each Executory Contract, Unexpired Lease or other agreement listed on Confirmation Exhibit 4.1 will be or has been assumed and assigned to the Purchaser as of the Effective Date.  All other Executory Contracts, Unexpired Leases or other agreements will be deemed rejected as of the Closing Date.

### 4.2     Cure of Defaults

Upon information and belief, all Cure Amount Claims have been satisfied by the Purchaser in accordance with the terms and procedures of the Sale and related process.

### 4.3     Bar Date for Rejection Damage Claims

To the extent not previously rejected in accordance with an Order of the Bankruptcy Court, claims arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to Section 4.1 must be Filed with the Bankruptcy Court and served on the Debtors or, on and after the Effective Date, the Liquidating Trustee, by no later than 30 days after the later of (a) notice of entry of an order approving the rejection of such Executory Contract or Unexpired Lease, (b) notice of the entry of Confirmation Order or (c) notice of an amendment to Confirmation Exhibit 4.1, and upon allowance, shall be an Allowed General Unsecured Claim.  Any Claims not Filed within such applicable time periods will be forever barred from receiving a distribution from the Debtors, the Estates, the Liquidating Trust, or the Purchaser.

### 4.4     Approval of Rejection

Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all Executory Contracts and Unexpired Leases pursuant to Section 4.1 to the extent not previously assumed or rejected by order of the Bankruptcy Court.

## ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS

### 5.1     Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in this Article V, distributions of Cash to be made on the Effective Date to holders of Claims as provided by Article II that are Allowed as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than 30 days after the Effective Date; or, with respect to undeliverable distributions, when the provisions of Section 5.4.2 are satisfied. Distributions on account of Claims that become Allowed after the Effective Date will be made pursuant to Section 6.3.

## 5.2 Method of Distributions to Holders of Claims

The Liquidating Trustee, or such Third Party Disbursing Agent as the Liquidating Trustee may employ in his sole discretion, will make all distributions of Cash and other instruments or documents required under the Plan. Each Disbursing Agent will serve without bond.

## 5.3 Delivery of Distributions and Undeliverable or Unclaimed Distributions

### 5.3.1 Delivery of Distributions

Distributions to holders of Allowed Claims will be made: (i) at the addresses set forth on the respective proofs of Claim or request for payment of Administrative Claim Filed by holders of such Claims, as applicable; (ii) at the address for a Claim transferee set forth in a valid and timely notice of transfer of Claim Filed with the Bankruptcy Court; (iii) at the addresses set forth in any written notice of address change Filed with the Bankruptcy Court or delivered to the Claims and Noticing Agent after the date of Filing of any related proof of Claim; (iv) at the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and the Claims and Noticing Agent has not received a written notice of a change of address; or (v) if clauses (i) through (iv) are not applicable, at the last address known or directed by such holder after such Claim becomes an Allowed Claim.

### 5.3.2 Undeliverable Distributions Held by Disbursing Agents

#### a. Holding of Undeliverable Distributions

Subject to Section 5.3.2.c, distributions returned to a Disbursing Agent, or otherwise undeliverable will remain in the possession of the Disbursing Agent, pursuant to this Section 5.3.2.a, until such time as a distribution becomes deliverable. The Liquidating Trustee, or such Third Party Disbursing Agent as may be employed by the Liquidating Trustee, holding undeliverable Cash will invest such Cash in a manner consistent with the Liquidating Trust Agreement.

#### b. After Distributions Become Deliverable

On each Distribution Date, the applicable Disbursing Agent will make all distributions that became deliverable to holders of Allowed Claims at the next Distribution Date; *provided, however*, that the applicable Disbursing Agent may, in its sole discretion, establish a record date prior to each periodic Distribution Date, such that only Allowed Claims as of the record date will participate in such periodic distribution. Notwithstanding the foregoing, the applicable Disbursing Agent reserves the right, to the extent it determines a distribution on any periodic Distribution Date is uneconomical or unfeasible, or is otherwise unadvisable, to postpone a Distribution Date.

#### c. Failure to Claim Undeliverable Distributions

Any holder of an Allowed Claim that does not assert its right to an undeliverable distribution within the earlier of one year of such distribution and the date that is 90 days prior to the Final Distribution Date will be forever barred from asserting any such Claim against the Debtors, a Disbursing Agent and their respective property or accounts. In such cases, unclaimed distributions held by a Disbursing Agent will be returned to the Liquidating Trust for distribution to other creditors, and the Liquidating Trustee shall have no responsibility to make further distributions to such creditor. Any unclaimed distributions or any distributions that are returned as undeliverable and unclaimed under this Section 5.3.2.c, will become property of the Liquidating Trust free of any restrictions thereon. Any distributions that are made on the Final Distribution Date and that are undeliverable or (in the event of a distribution made by check ) remain uncashed for 180 days after the Final Distribution Date shall be remitted to the Bankruptcy Court as unclaimed funds. Upon such remittance, the Liquidating Trustee shall be deemed to have satisfied his obligations to make distributions under the Plan and shall not be

required to make additional distributions. Nothing contained in the Plan will require a Debtor, the Liquidating Trustee or a Disbursing Agent to attempt to locate any holder of an Allowed Claim.

### 5.4 Timing and Calculation of Amounts to be Distributed

#### 5.4.1 Distributions on Account of Allowed Claims in Class 1 and Class 2

Distributions to be made to holders of Allowed Claims classified in Class 1 or Class 2 under the Plan shall be made within 30 days of such Claim becoming an Allowed Claim or the Effective Date, whichever is later.

#### 5.4.2 Distributions on Account of Allowed Claims in Class 3

a.      Selection of Distribution Dates for Class 3 Claims

Except where this Plan requires the making of a distribution on account of a particular Allowed Claim within a particular time, the Liquidating Trustee shall have the authority to select Distribution Dates that, in the judgment of the Liquidating Trustee, provide holders of Allowed Claims with payments as quickly as reasonably practicable while limiting the costs incurred by the distribution process; *provided, however*, that the first Distribution Date after the Effective Date must occur prior to 180 days after the Effective Date and a Distribution Date must occur at least once every twelve months thereafter, if any amounts are available for distribution on such date.

b.      Calculation of Amounts to Be Distributed to Holders of Class 3 Claims

Prior to any distribution to holders of Allowed General Unsecured Claims, the Liquidating Trustee shall estimate the amount of Cash on hand that will remain after payment of all senior Claims and all Liquidating Trust Expenses. Such estimations shall utilize assumptions that litigation with claimants with respect to any issue that is being reasonably contested will be unsuccessful. Such estimations shall also assume that any unresolved Causes of Action shall result in no recovery for the Liquidating Trust and that remaining non-Cash assets shall produce no recovery for the Liquidating Trust. Only if, after applying such assumptions, the estimated Cash is greater than zero shall the Liquidating Trustee be permitted to make any distributions to holders of Allowed General Unsecured Claims.

c.      Distributions to Holders of Allowed Claims in Class 3

On each Distribution Date, each holder of an Allowed General Unsecured Claim will receive a distribution of any Cash that has been determined to be available for distribution in accordance with Section 5.5.4 such that each holder of an Allowed General Unsecured Claim has received, in the aggregate, its Pro Rata share of the amounts of Cash that are made available for distribution to such Claim holders. All distributions shall be made pursuant to the terms and conditions of the Plan and the Liquidating Trust Agreement, and shall be subject to the Debtors' or the Liquidating Trustee's rights of setoff or deduction.

d.      De Minimis Distributions

On each Distribution Date prior to the Final Distribution Date, the Liquidating Trustee shall not distribute Cash to the holder of an Allowed General Unsecured Claim if the amount of Cash to be distributed on account of such Claim is less than $25 in the aggregate. Any Cash not distributed pursuant to this Section 5.4.2.d will be retained in the Liquidating Trust until the next Distribution Date. On the Final Distribution Date, if the aggregate amount of distributions to be made to such claimant is $25 or greater, such distribution shall be made. Otherwise, the amount shall be redistributed to other holders of Allowed Claims in such Class and such holder of an Allowed Claim will be forever barred from asserting its Claim for such distribution against the Liquidating Trust or its property.

09-40795-jpg    Doc 1642    FILED 05/24/11    ENTERED 05/24/11 16:36:54    Page 19 of 30

e.    Provisions for Excess Funds

After the Final Distribution Date and the remittance to the Bankruptcy Court of unclaimed funds, if the Liquidating Trust receives any funds and, in good faith, does not believe that an additional distribution will be cost effective or materially beneficial to creditors, the Liquidating Trustee may donate such excess funds half to WRHF and half to TMHF.

f.    Provisions Governing Disputed Claims Reserve

(i)    Funding

On the Effective Date or otherwise prior to the initial distributions under Section 5.4.2, the Disputed Claims Reserve will be established by the Liquidating Trustee for the benefit of holders of Disputed Claims that become Allowed Claims. For the purpose of calculating the Assets to be contributed to the Disputed Claims Reserve, all Disputed Claims will be treated (solely for purposes of establishing the Disputed Claims Reserve) as Allowed Claims in the Face Amount of such Claims as of the Effective Date. In addition, Disputed Claims rendered duplicative as a result of the limited consolidation of the Debtors pursuant to Article VII will only be counted once for purposes of establishing the Disputed Claims Reserve. In making and establishing the Disputed Claims Reserve, the Liquidating Trustee may rely on the Debtors' estimates as to Disputed Claims and will have no liability therefore in the absence of bad faith or gross negligence, and the Debtors shall have no liability for their estimation of Disputed Claims in the absence of bad faith or gross negligence. As Disputed Claims are resolved, the Liquidating Trustee or Third Party Disbursing Agent shall make adjustments to the reserves for Disputed Claims, but neither the Debtors nor the Liquidating Trustee shall be required to increase such reserves from and after the Effective Date. The Liquidating Trustee may File a motion seeking an order of the Bankruptcy Court approving additional procedures for the establishment of the Disputed Claims Reserve.

(ii)    Distributions

The distributions received by the Liquidating Trustee or Third Party Disbursing Agent on account of the Disputed Claims Reserve from the Liquidating Trust, along with any Cash Investment Yield held in the Disputed Claims Reserve, will (a) be deposited in a segregated bank account in the name of the Disbursing Agent for the benefit of holders of Allowed Claims and Disputed Claims that become Allowed Claims, (b) be accounted for separately and (c) not constitute property of the Debtors. The Disbursing Agent will invest any Cash held in the Disputed Claims Reserve in a manner consistent with the Liquidating Trust Agreement.

(iii)    Recourse

Each holder of an Allowed Claim and each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only against the Disputed Claims Reserve and not to any other assets held by the Liquidating Trust, its property or any assets previously distributed on account of any Allowed Claim.

(iv)    No Transfer of Rights

The rights of holders of Allowed Claims to receive distributions from the Disputed Claims Reserve in accordance with the Plan will be non-transferable, except with respect to a transfer by will, the laws of descent and distribution or operation of law.

### 5.4.3    Distributions on Account of Allowed Claims in Class 4

Distributions to be made to the PBGC shall be made as soon as reasonably practical in accordance with the provisions of Section 3.5 and the winddown of FHIL, except as may otherwise be provided in accordance with Sections 2.1.1 and 5.4.2 of this Plan and any subsequent order of the Bankruptcy Court.

### 5.4.4    Distributions on Account of Allowed Claims in Class 5

Holders of Class 5 Claims shall be entitled to distributions in accordance with the terms of any applicable Insurance on account of any Estimated Medical Malpractice Claim or any Adjudicated Medical Malpractice Claim.  Any such holder with a deficiency claim as described in Section 2.2.5 of this Plan shall be entitled to distributions in accordance with Section 5.4.2 of this Plan.

## 5.5    Other Provisions Applicable to Distributions in All Classes

### 5.5.1    Postpetition Interest

No interest shall have accrued on any Claim that is not an Allowed Secured Claim that is oversecured on and after the Petition Date.

### 5.5.2    Allocation of Distributions

All distributions to a holder of an Allowed Claim that has components of principal and interest will be deemed to apply first to the principal amount of such Claim until such principal amount is paid in full, and then the remaining portion of such distributions, if any, will be deemed to apply to any applicable accrued interest included in such Claim to the extent interest is payable under this Plan.

## 5.6    Holders of Record

Transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 for which a notice of transfer has been Filed on or prior to the close of business on the Confirmation Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Confirmation Date. No transfers Filed with the Bankruptcy Court after the Confirmation Date shall be recognized by the Liquidating Trustee.

## 5.7    Means of Cash Payments

Except as otherwise specified in this Plan, Cash payments made pursuant to the Plan will be in U.S. currency by checks drawn on a domestic bank selected by the Debtors, the Liquidating Trustee or any Disbursing Agent, as applicable, by wire transfer, electronic funds or ACH from a domestic bank; *provided, however*, that Cash payments to foreign holders of Allowed Claims may be made, at the option of the Liquidating Trustee or any Disbursing Agent in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## 5.8    Withholding Requirements

### 5.8.1    Withholding

In connection with the Plan, to the extent applicable, each Disbursing Agent will comply with all applicable Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to applicable withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, each Disbursing Agent will be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting

09-40795-jpg    Doc 1642    FILED 05/24/11    ENTERED 05/24/11 16:36:54    Page 21 of 30

requirements, including, without limitation, liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding Taxes or establishing any other mechanisms the Disbursing Agent believes are reasonable and appropriate, including requiring Claim holders to submit appropriate Tax and withholding certifications. To the extent any Claim holder fails to submit appropriate Tax and withholding certifications as required by the Disbursing Agent, such Claim holder's distribution will be deemed undeliverable and subject to Section 5.4.2.

### 5.8.2 Distributions

Notwithstanding any other provision of the Plan, each entity receiving a distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of the distribution, including income, withholding and other Tax obligations.

### 5.8.3 Allocations

The Debtors reserve the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and similar encumbrances.

### 5.9 Setoffs

Except with respect to claims of a Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, each Debtor or the Liquidating Trustee on behalf of a Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights and causes of action of any nature that the applicable Debtor or Liquidating Trust may hold against the holder of such Allowed Claim; *provided, however*, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the applicable Debtor or the Liquidating Trustee of any claims, rights and causes of action that the Debtors or Liquidating Trustee may possess against a Claim holder, which are expressly preserved under Section 3.9.3.

## ARTICLE VI
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### 6.1 Treatment of Certain Disputed Claims

#### 6.1.1 Tort Claims

Each Tort Claim, including Medical Malpractice Claims, will be resolved in accordance with Section 3.10.2 of this Plan.

#### 6.1.2 Disputed Insured Claims

The resolution of Disputed Insured Claims, including Tort Claims shall be subject to the provisions of Sections 3.10.1 and 3.10.2 of the Plan.

#### 6.1.3 No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim, if ever.

### 6.2 Prosecution of Objections to Claims

#### 6.2.1 Objections to Claims

All objections to Claims must be Filed and served on the holders of such Claims, and any amendment to the Schedules to reduce the scheduled Claim of such holder, must be made by the Debtors or the Liquidating Trustee by the Claims Objection Bar Date. If an objection has not been Filed to a Claim or an amendment has not been made to the Schedules with respect to a scheduled Claim by the Claims Objection Bar Date, the particular Claim will be treated as an Allowed Claim if such Claim has not been allowed earlier.

#### 6.2.2 Authority to Prosecute Objections

On or after the Effective Date, the Liquidating Trustee will have the sole authority, to File, settle, compromise, withdraw or litigate to judgment objections to Claims, subject to the requirements to obtain Bankruptcy Court authority for certain actions in accordance with Section 3.9 of this Plan.

#### 6.2.3 Authority to Amend Schedules

The Debtors or the Liquidating Trustee, as applicable, will have the authority to amend the Schedules with respect to any Claim, and to make distributions based on such amended Schedules without approval of the Bankruptcy Court, *provided, however*, that the Liquidating Trustee will seek prior approval from the Bankruptcy Court prior to increasing by more than $50,000 the proposed Allowed amount of any Claim on the Schedules. In addition, if any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtors or the Liquidating Trustee, as applicable, will provide the holder of such Claim with notice of such amendment and such holder will have 30 days to File an objection to such amendment with the Bankruptcy Court. The notice will contain the same specificity to affected creditors that would be required if the Schedules amendment was a Claim objection. If no such objection is Filed, the Liquidating Trustee may proceed with distributions based on such amended Schedules without approval of the Bankruptcy Court. Notwithstanding anything contained in this Section 6.2.3 or this Plan to the contrary, the Liquidating Trustee shall have the authority to object to the amount of any Claim indicated on the Schedules if the Liquidating Trustee determines in good faith that the Claim is invalid or has previously been paid or satisfied.

#### 6.2.4 Request for Extension of Claims Objection Bar Date

Upon motion to the Bankruptcy Court, the Liquidating Trustee may request, and the Bankruptcy Court may grant, an extension to the Claims Objection Bar Date generally or with respect to a specific list of Claims. Any extension granted by the Bankruptcy Court shall not be considered to be a Plan modification under section 1127 of the Bankruptcy Code.

### 6.3 Distributions on Account of Disputed Claims Once Allowed

Distributions on account of Disputed Claims that become Allowed Claims after the Effective Date shall be made in accordance with Article V of the Plan.

### ARTICLE VII
### CONSOLIDATION OF CERTAIN DEBTORS

### 7.1 Limited Consolidation for Certain Purposes

09-40795-jpg    Doc 1642    FILED 05/24/11    ENTERED 05/24/11 16:36:54    Page 23 of 30

Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the Debtors' election to treat the Estates (who do not include WRHF and TMHF, whose cases have been dismissed) as if they were consolidated. Accordingly, for purposes of implementing the Plan, pursuant to such order: (a) all Assets and Liabilities of the Debtors shall be treated as if they are pooled; and (b) with respect to any guarantees by one Debtor of the obligations of any Debtor, and with respect to any joint or several liability of any Debtor, the holder of any Claims for such obligations will receive a single recovery on account of any such joint obligations of the Debtors, in each case except to the extent otherwise provided in the Plan.

Such election to treat the Estates as if they were consolidated solely for the purpose of implementing the Plan shall not affect: (a) the legal and corporate structures of the Debtors; and (b) distributions from any insurance policies or proceeds of such policies. In addition, such election to treat the Estates as consolidated for the purpose of implementing the Plan will not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code, except to the extent otherwise expressly waived by the Debtors.

### 7.2    Order Granting Consolidation for Certain Purposes

This Plan serves as a motion seeking entry of an order consolidating the Debtors (who do not include WRHF and TMHF, whose cases have been dismissed) as described and to the limited extent set forth in Section 7.1 above. Unless an objection to such consolidation is made in writing by any creditor affected by the Plan, Filed with the Bankruptcy Court and served on the parties listed on Plan Exhibit C on or before the date fixed by the Bankruptcy Court for objecting to Confirmation of this Plan, the consolidation order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at or before the Confirmation Hearing.

In the event that the Bankruptcy Court does not approve the Debtors' election to treat the Estates as if they are consolidated, (a) the Plan shall be treated as a separate plan of liquidation for each Debtor, and (b) the Debtors shall not be required to re-solicit votes with respect to the Plan.

### ARTICLE VIII
### CONFIRMATION OF THE PLAN

### 8.1    Conditions Precedent to Confirmation

The following conditions are conditions to the entry of the Confirmation Order unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section 8.3:

A.      The Confirmation Order will be reasonably acceptable in form and substance to the Debtors.

B.      The Plan shall not have been materially amended, altered or modified from the Second Amended Plan as Filed on May 24, 2011, unless such material amendment, alteration or modification has been made in accordance with Section 10.1 of the Plan.

C.      All Confirmation Exhibits to the Plan are in form and substance reasonably satisfactory to the Debtors.

D.      The dismissal of the chapter 11 cases of TMHF and WRHF shall not have been overturned on appeal.

### 8.2    Conditions Precedent to the Effective Date

09-40795-jpg    Doc 1642    FILED 05/24/11    ENTERED 05/24/11 16:36:54    Page 24 of 30

The Effective Date will not occur, and the Plan will not be consummated, unless and until each of the following conditions have been satisfied or duly waived pursuant to Section 8.3:

A.     The Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall be a Final Order.

B.     No stay of the Confirmation Order shall then be in effect.

C.     The Liquidating Trust Agreement shall be executed, the Liquidating Trust shall be created and the Liquidating Trustee shall have been appointed and accepted such appointment.

D.     The Plan and all Confirmation Exhibits to the Plan shall not have been materially amended, altered or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Section 10.1 of the Plan.

E.     The Collective Bargaining Agreements shall have been terminated.

**8.3     Waiver of Conditions to Confirmation or Effective Date**

The conditions to Confirmation and the conditions to the Effective Date may be waived in whole or in part at any time by the Debtors without an order of the Bankruptcy Court.

**8.4     Cramdown**

The Debtors request Confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that has not accepted or is deemed not to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

**8.5     Effect of Nonoccurrence of Conditions to the Effective Date**

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section 8.3, then upon motion by the Debtors made before the time that each of such conditions has been satisfied and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; *provided, however,* that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is satisfied or waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this Section 8.5: (1) the Plan will be null and void in all respects, including with respect to the releases described in Section 8.6.2; (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against any Debtor or (b) prejudice in any manner the rights of the Debtors or any other party in interest; and (3) the Liquidating Trust, if already created, shall be promptly dissolved.

**8.6     Effect of Confirmation of the Plan**

**8.6.1     Limitation of Rights of Holders of Claims**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtors; provided, however, that no holder of a Claim against the Debtors may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Debtors, the Liquidating Trustee, or property of the Estates, except as expressly provided in the Plan.

**8.6.2     Releases**

09-40795-jpg     Doc 1642     FILED 05/24/11     ENTERED 05/24/11 16:36:54     Page 25 of 30

Each and every entity receiving a distribution pursuant to the Plan on account of its Allowed Claim or Interest will be deemed to forever release and waive all claims, demands, debts, rights, causes of action, and liabilities in connection with or related to any of the Debtors, the Chapter 11 Cases, or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, that are based in whole or in part on any act, omission, or other occurrence taking place on or prior to the Effective Date, against the Released Parties to the fullest extent permitted under applicable law. In addition, the Debtors will be deemed to release any and all such claims, demands, debts, rights, causes of action, and liabilities against the Released Parties other than themselves. Notwithstanding anything in the Plan or in the releases set forth above to the contrary, nothing herein shall be construed to release, and the Debtors do not hereby release, any rights of the respective Debtors: (a) to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder; (b) to litigate Disputed Claims, including without limitation to make any claim, or demand or allege and prosecute any cause of action against any holder of any Disputed Claims; and (c) to litigate claims and causes of action not specifically released herein, including claims and Causes of Action contained in any adversary complaint filed during the pendency of the Chapter 11 Cases that have not been withdrawn or dismissed prior to the Confirmation Date.

Except as set forth in the last sentence of this paragraph, no provision contained in this Plan, the Confirmation Order, or section 1141 of the Bankruptcy Code shall be construed as discharging, releasing or relieving any party other than the Debtors in any capacity, from any liability with respect to the Pension Plan under any law, government policy or regulatory provision. Except as set forth in the last sentence of this paragraph, the PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability against any such party as a result of this Plan's provisions for satisfaction, release and discharge of claims. Nothing herein, however, shall in any way limit or modify the release or discharge of any party as set forth in the agreement dated January 31, 2011, between the PBGC, the Debtors, and certain other parties, attached as Exhibit A to the Debtors' Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 9019(A) Approving the Terms of the Settlement with the Pension Benefit Guaranty Corporation, Docket No. 1344, and approved by an Order of the Bankruptcy Court dated April 27, 2011, Docket No. 1593.

### 8.6.3    Injunction

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability against the Debtors or an Interest or other right of an equity security holder are permanently enjoined from taking any of the following actions on account of any such Claims, debts, liabilities, Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Released Parties or their property; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Released Parties or their property; (c) creating, perfecting, or enforcing any lien or encumbrance against the Released Parties or their property; (d) asserting a right of subordination of any kind against any debt, liability, or obligation due to the Released Parties or their property; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

### 8.6.4    Exculpation

Subject to the occurrence of the Effective Date, none of the Exculpated Parties shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases and the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, that the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall

be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan.

**8.7    Request for Waiver of Stay of Confirmation Order**

This Plan will serve as a motion seeking a waiver of the stay of the Confirmation Order imposed by Bankruptcy Rule 3020(e). Any objection to this request for waiver shall be Filed with the Bankruptcy Court and served on the parties listed in Section 10.6 on or before the Voting Deadline, or such other date as may be fixed by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto will occur at the Confirmation Hearing.

**ARTICLE IX**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible, including jurisdiction to:

A.      Allow, disallow, determine, liquidate, reduce, classify, re-classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the amount, allowance, priority or classification of Claims;

B.      Resolve any issues arising under the Asset Purchase Agreement or the Sale Order;

C.      Either grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

D.      Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

E.      Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

F.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and either grant or deny any applications involving any Debtor that may be pending on the Effective Date or brought thereafter;

G.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Liquidating Trust Agreement, the Disclosure Statement or the Confirmation Order;

H.      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Liquidating Trust Agreement or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan, the Liquidating Trust Agreement or any entity's rights arising from or obligations incurred in connection with the Plan, the Liquidating Trust Agreement or such documents;

I.      Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument,

09-40795-jpg     Doc 1642     FILED 05/24/11     ENTERED 05/24/11 16:36:54     Page 27 of 30

release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

J.      Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

K.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

L.      Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

M.      Enforce or clarify any orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

N.      Enter a final decree or decrees closing the Chapter 11 Cases;

O.      Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes;

P.      Hear all matters arising out of the consummation of the Sale;

Q.      Recover all assets of the Debtors and their Estates, wherever located; and

R.      Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

### 10.1    Modification of the Plan

Subject to the restrictions on alteration, amendment and modification set forth in section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify the Plan before the Effective Date.

### 10.2    Revocation of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will: (a) constitute a waiver or release of any Claims by or against any Debtor; (b) prejudice in any manner the rights of the Debtors (or any of them), any Debtor or any other party in interest; or (c) constitute an admission of any sort by the Debtors (or any of them), any Debtor or any other party in interest.

### 10.3    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.4     Dissolution of Creditors' Committee

On the Effective Date, the Creditors' Committee and any other official committees appointed in the Chapter 11 Cases will dissolve, and the members of the Creditors' Committee and their respective Professionals will cease to have any duty, obligation or role arising from or related to the Chapter 11 Cases. The Professionals retained by the Creditors' Committee and the respective members thereof will not be entitled to assert any Fee Claim whatsoever for any services rendered or expenses incurred after the Effective Date in their capacity as professionals for the Creditors' Committee, except to the extent necessary to File, prepare and defend any fee application.

### 10.5     Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

Dated:  May 24, 2011

Respectfully Submitted,

Forum Health (for itself and on behalf of its Affiliated Debtors)

By:      /s/    Dalton Edgecomb
Name:      Dalton Edgecomb
Title:      Chief Restructuring Officer

McDONALD HOPKINS LLC

Shawn M. Riley (0037235)
Sean D. Malloy (0073157)
Matthew A. Salerno (0070847)
Melissa S. Giberson (0082413)
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114-2653
Telephone:  (216) 348-5400
Facsimile:   (216) 348-5474
E-mail:     sriley@mcdonaldhopkins.com
           smalloy@mcdonaldhopkins.com
           msalerno@mcdonaldhopkins.com
           mgiberson@mcdonaldhopkins.com

Counsel to the Debtors and Debtors in Possession

- and -

NADLER NADLER & BURDMAN CO., L.P.A.

Michael A. Gallo

{2381249:15}

20 West Federal Street, Suite 60
Youngstown, OH 44503-1423
Telephone: (330) 744-0247
Facsimile: (330) 744-8690
Email: gallo@nnblaw.com

Co-Counsel to the Debtors and Debtors in Possession