**IT IS SO ORDERED.**

Dated: July 21, 2011
    09:33:50 AM

_Kay Woods_
**Kay Woods**
**United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | )    Case No. 09-40795 |
| FORUM HEALTH, et. al.,[1] | )    Jointly Administered |
| | ) |
| Debtors. | )    Chapter 11 |
| | ) |
| | )    Judge Kay Woods |
| | ) |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING DEBTORS' SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION

WHEREAS, the Debtors, as debtors and debtors in possession, and as "proponents of the

plan" within the meaning of section 1129 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code"), filed the Debtors' Second Amended Chapter 11 Plan of Liquidation, dated

---

[1] The Debtors include: Forum Health (31-1560189), Forum Health Diagnostics Co. (34-1773672), Forum Health Enterprises Co. (34-1368151), Forum Health Outreach Laboratories, Inc. (34-1437294), Forum Health Ventures Co. (34-1489491), Forum Health Pharmacy Services Co. (34-1754092), Forum Health Rehabilitative Services Co. (31-1581767), Forum Health Services Co. (34-1461044), Western Reserve Care System (34-1454933), Dacas Nursing Support Systems, Inc. (34-1482591), Dacas Nursing Systems, Inc. (34-1456983), Beeghly Oaks (31-1196072), PrideCare, Inc. (34-1490425), Trumbull Memorial Hospital (34-1461049), Comprehensive Psychiatry Specialists, Inc. (34-1697739) and Visiting Nurse Association and Hospice of Northeast Ohio (34-0714388). The chapter 11 cases of debtors Western Reserve Health Foundation and Trumbull Memorial Hospital Foundation were dismissed prior to the filing of the Second Amended Plan and, accordingly, these debtors and their assets are not treated under the Plan (defined herein) or included in the defined term "Debtors" as used in the Plan.

{2753025:3}

May 24, 2011, Docket No. 1642 (the "Plan")[2] and the Second Amended Disclosure Statement for the Debtors' Second Amended Chapter 11 Plan of Liquidation, dated May 24, 2011, Docket No. 1643 (the "Disclosure Statement"); and

WHEREAS, on May 25, 2011, the Court[3] entered an order, Docket No. 1649 (the "Disclosure Statement Order") which, among other things: (i) approved the Disclosure Statement under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (ii) established July 19, 2011, as the date of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"); (iii) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"); and (iv) established certain procedures for soliciting and tabulating votes with respect to the Plan (the "Solicitation Procedures"); and

WHEREAS, the Debtors filed the Affidavit of Karen M. Wagner of Kurtzman Carson Consultants LLC Regarding the Methodology For the Tabulation of and Results of Voting With Respect to the Debtors' Second Amended Chapter 11 Plan of Liquidation, sworn to on July 11, 2011, Docket No. 1704 (the "KCC Affidavit"), attesting to and certifying the method and results of the ballot tabulation for the Classes of Claims (Classes 3, 4, and 5) entitled to vote to accept or reject the Plan; and

WHEREAS, the Debtors filed the Notice of Publication of Notice of Hearing to Consider Confirmation of Debtors' Second Amended Chapter 11 Plan of Liquidation and Deadline for Casting Votes to Accept or Reject Plan, Docket No. 1665 (the "Publication Notice"), which contains affidavits of publication on behalf of representatives of *The Wall Street Journal*

---

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is attached hereto as Exhibit A. Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

[3] The term "Court" shall mean this United States Bankruptcy Court for the Northern District of Ohio, Eastern Division.

(national edition), and *The Vindicator* (Youngstown, Ohio), and the proof of publication on behalf of a representative of *The Tribune Chronicle* (Warren, Ohio), each attesting to the fact that the Confirmation Hearing Notice was published; and

WHEREAS, the Debtors have received the following objections to the confirmation of the Plan: (i) the objection of the Official Committee of Unsecured Creditors (the "Committee"), Docket No. 1686 (the "Committee Objection"); (ii) the Limited Objection to Debtors' Second Amended Plan of [Liquidation] of the State of Ohio Bureau of Workers' Compensation ("OBWC"), Docket No. 1682 (the "OBWC Objection"); (iii) the Amended Limited Objection of Internal Medicine Development Funds, Inc. ("IMDF") to the Debtors' Second Amended Chapter 11 Plan of Liquidation, Docket No. 1695 (the "IMDF Objection"); and, (iv) the informal objection of U.S. Bank National Association ("U.S. Bank") regarding comments to the Plan (the "U.S. Bank Objection" and, together with the Committee Objection, the OBWC Objection, and the IMDF Objection, the "Objections"); and

WHEREAS, on July 5, 2011, the Pension Benefit Guaranty Corporation (the "PBGC") filed its Statement in Support of Confirmation of Debtors' Second Amended Chapter 11 Plan of Liquidation and Settlement of Debtors' Claim Against the Charitable Foundations, Docket No. 1692; and

WHEREAS, on July 12, 2011, the Debtors filed their Combined Memorandum of Law in Support of Confirmation of Debtors' Second Amended Chapter 11 Plan of Liquidation and Response to Objections Thereto, Docket No. 1695 (the "Confirmation Memorandum"); and

WHEREAS, the Confirmation Hearing was held on July 19, 2011;

WHEREAS, the Objections are either: (i) resolved through the settlement embodied in the Plan or this Confirmation Order; or (ii) overruled on the merits on the record and pursuant to this Confirmation Order;

NOW, THEREFORE, based upon: (i) the Plan, the Disclosure Statement, the Confirmation Memorandum, and the KCC Affidavit; (ii) all of the evidence admitted at, documents filed in connection with, and arguments of counsel made at, the Confirmation Hearing; and (iii) the entire record of these Chapter 11 Cases; and after due deliberation thereon and good cause appearing therefore:

I.      **FINDINGS OF FACT AND CONCLUSIONS OF LAW**[4]

THE COURT HEREBY FINDS AND DETERMINES THAT:

A.      <u>Exclusive Jurisdiction; Venue; Core Proceeding</u>.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.      <u>Chapter 11 Cases' Docket</u>.  The Court takes notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at hearings held before the Court during the Chapter 11 Cases.

C.      <u>Burden of Proof</u>.  The Debtors have met the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence.

D.      <u>Transmittal and Mailing of Materials; Notice</u>.  The Confirmation Hearing Notice, the Disclosure Statement, the Plan, the Disclosure Statement Order, and, for those parties entitled to vote on the Plan, a ballot and return envelope, were transmitted in accordance with the Bankruptcy Rules, the Disclosure Statement Order, and the Solicitation Procedures as set forth in the KCC Affidavit, and such service is adequate as provided by Bankruptcy Rule 3017(d).

---

[4]   Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

E.     Voting.  Votes for the acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement Order, and all other applicable provisions of the Bankruptcy Code.

F.     Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan satisfies section 1129(a)(1) of the Bankruptcy Code.  Specifically, the Plan complies with the following sections of the Bankruptcy Code: (i) section 1122; (ii) section 1123(a)(1); (iii) section 1123(a)(2); (iv) section 1123(a)(3); (v) section 1123(a)(4); (vi) section 1123(a)(5); (vii) section 1123(a)(6); (viii) section 1123(a)(7); (ix) section 1123(b)(1); (x) section 1123(b)(2); (xi) section 1123(b)(3); (xii) section 1123(b)(4); (xiii) section 1123(b)(5); and (xiv) section 1123(b)(6).  The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code and satisfaction of these sections of the Bankruptcy Code is uncontested.

G.     Bankruptcy Rule 3016(a).  The Plan is dated and identifies the entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

H.     Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtors have complied with applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code, including sections 1125 and 1126, and satisfaction of these sections of the Bankruptcy Code is uncontested.  Specifically, the Debtors: (i) are proper debtors under section 109 of the Bankruptcy Code; (ii) have complied with applicable provisions of the Bankruptcy Code; and (iii) have complied with the applicable provisions of the Bankruptcy Rules and the Disclosure Statement Order.  In addition, there were two unimpaired and three voting Classes under the Plan.  Claims in Classes 1 and 2 are unimpaired and are deemed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Classes 3, 4, and 5 have voted to accept the Plan in accordance with section 1126(c) of the

Bankruptcy Code. The percentages (by dollar amount and number of claims) of Holders of Claims in Classes 3, 4, and 5 entitled to vote that voted to accept the Plan are as follows:

| Class Entitled to Vote | Percentage Accepting (Number of Claims) | Percentage Accepting (Dollar Amount) |
|---|---|---|
| Class 3 | 97.18 % | 99.78 % |
| Class 4 | 100 % | 100 % |
| Class 5 | 87.50 % | N/A |

I.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith and not by any means forbidden by law, and with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate an orderly liquidation of the Debtors, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In making this finding, the Court has considered the Committee Objection, the Confirmation Memorandum, the evidence admitted at the Confirmation Hearing, and the arguments of counsel related thereto.

J.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases or in connection with the Plan, has been approved by, or is subject to the approval of, the Court, thereby satisfying section 1129(a)(4) of the Bankruptcy Code. Satisfaction of this section of the Bankruptcy Code is uncontested.

K.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Plan satisfies the requirement of section 1129(a)(5) of the Bankruptcy Code as it discloses the identity and affiliation of Dalton T. Edgecomb as the proposed Liquidating Trustee. Mr. Edgecomb will also become the sole officer and director of Debtor entities remaining in place for particular liquidation purposes. The appointment of Mr. Edgecomb is consistent with the interests of creditors and with public policy, and satisfaction of this section of the Bankruptcy Code is uncontested.

09-40795-kw    Doc 1730    FILED 07/21/11    ENTERED 07/21/11 10:28:05    Page 6 of 72

L.     No Rate Changes (11 U.S.C. § 1129(a)(6)).  After confirmation of the Plan, the Debtors' businesses will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission.  Section 1129(a)(6) of the Bankruptcy Code, governing regulation of rates, is not applicable in the Debtors' Chapter 11 Cases.

M.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The Disclosure Statement, the KCC Affidavit, and other evidence admitted at the Confirmation Hearing:  (i) are persuasive and credible; (ii) have not been controverted by other evidence; and (iii) establish that each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  In making this finding, the Court has considered the Committee Objection, the Confirmation Memorandum, the evidence admitted at the Confirmation Hearing, and the arguments of counsel related thereto.

N.     Acceptance by Certain Classes (11 U.S.C. § 1129 (a)(8)).  The Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code, because the holders in Class 6 are receiving no recovery on account of their interests and are deemed to have rejected the Plan.  The Debtors have requested confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code, discussed below.

O.     Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims and Priority Tax Claims pursuant to Article II, Sections 2.1.1 and 2.1.2 of the Plan, respectively, satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code.  The treatment of Priority Tax Claims pursuant to Article II, Section 2.1.2

of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code, and satisfaction of this section of the Bankruptcy Code is uncontested.

P.  Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  Three non-insider Classes of Claims against the Debtors that are impaired under the Plan have accepted the Plan (Classes 3, 4, and 5). The requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied, and satisfaction of this section of the Bankruptcy Code is uncontested.

Q.  Feasibility (11 U.S.C. § 1129(a)(11)).  The evidence proffered or adduced at the Confirmation Hearing:  (i) is persuasive and credible; (ii) has not been controverted by other evidence; and (iii) establishes that the Plan is workable and has a reasonable likelihood of success, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code. Specifically, the Plan provides for the liquidation of the Debtors' remaining assets and the distribution of proceeds consistent with the priority scheme of the Bankruptcy Code. Satisfaction of this section of the Bankruptcy Code is uncontested.

R.  Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees payable under section 1930 of title 29, United States Code, have been paid or will be paid pursuant to Article II, Section 2.1.1.b of the Plan.  Thus, Article II, Section 2.1.1.b of the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code, and satisfaction of this section of the Bankruptcy Code is uncontested.

S.  Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtors do not have any remaining obligations with respect to retiree benefits.  Therefore, the requirements of section 1129(a)(13) of the Bankruptcy Code are inapplicable.

T.  Cram-Down (11 U.S.C. § 1129(b)).  The Debtors have established that the Plan does not discriminate unfairly and is fair and equitable with respect to Class 6, thereby satisfying section 1129(b) of the Bankruptcy Code.  No holder of any interest that is junior to the Class 6

Interests will receive or retain under the Plan on account of such junior interest any property. Satisfaction of this section of the Bankruptcy Code is uncontested.

U.     <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, as amended. Satisfaction of this section of the Bankruptcy Code is uncontested.

V.     <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in the Chapter 11 Cases, the Debtors and their directors, officers, employees, members, agents, advisors, and professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII, Section 8.6.4 of the Plan. Satisfaction of this section of the Bankruptcy Code is uncontested.

W.     <u>Releases, Injunction and Exculpation</u>. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, injunction, and exculpation described in Article VIII of the Plan, as modified by the Debtors at the Confirmation Hearing and in Section III, Paragraph 20 below, represent an appropriate exercise of the Debtors' business judgment and are appropriate under the circumstances of the Debtors' Chapter 11 Cases. The failure to effect the release, injunction, and exculpation provisions of the Plan, as modified herein, would seriously impair the Debtors' ability to confirm the Plan. In making this finding, the Court has considered the Committee Objection, the Confirmation Memorandum, the evidence admitted at the Confirmation Hearing, and the arguments of counsel related thereto.

X.  <u>Foundation Resolution</u>.  The Foundation Resolution (as described in Section 3.3 of the Plan and as defined in the Confirmation Memorandum) constitutes a good faith compromise and settlement of matters covered thereby under Rule 9019 of the Bankruptcy Rules.  Such compromise and settlement properly takes into account:  (i) the probability of success in litigation; (ii) the difficulty in collection related to litigation; (iii) the complexity, expense, delay, and inconvenience of any such litigation; and (iv) the reasonable views of creditors and gives proper deference thereto.  The Foundation Resolution is:  (i) made in exchange for consideration, (ii) in the best interest of the Debtors' estates; (iii) within the range of reasonable litigation outcomes; and (iv) fair, equitable, reasonable, and an integral element of the resolution of the Chapter 11 Cases in accordance with the Plan.  At the Confirmation Hearing, the Debtors clarified a provision of the Foundation Resolution.  Specifically, the Debtors clarified that the indemnification of the Foundations by the Debtors for further costs of litigation is simply a mechanism to ensure that the Foundations do not pay more than $1 million, including their costs, and that in no event shall the indemnification be construed so that the Debtors owe a net amount to the Foundations.  In making these findings, the Court has considered the Committee Objection, the Confirmation Memorandum, the evidence admitted at the Confirmation Hearing, and the arguments of counsel related thereto.

Y.  <u>Assumption and Rejection</u>.  Article IV of the Plan governing the assumption and rejection of executory contracts and unexpired leases satisfies the requirements of section 365(b) of the Bankruptcy Code, and satisfaction of this section of the Bankruptcy Code is uncontested.

Z.  <u>Substantive Consolidation</u>.  The inclusion of substantive consolidation solely for voting, confirmation, and distribution purposes under the Plan is in the best interest of the Debtors, their estates and creditors, and such consolidation is uncontested.

09-40795-kw    Doc 1730    FILED 07/21/11    ENTERED 07/21/11 10:28:05    Page 10 of 72

## II.    CONCLUSIONS OF LAW

1.      _Exemption From Securities Law_.  Pursuant to section 1125(e) of the Bankruptcy Code, the Debtors' transmittal of the Plan solicitation packages and their solicitation of acceptances of the Plan are not governed by, or subject to, any otherwise applicable law, rule, or regulation governing the offer, issuance, sale, or purchase of securities.

2.      _Exemption From Taxation_.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer pursuant to the Plan, including, without limitation, merger agreements; agreements of consolidation, restructuring, disposition, liquidation, or dissolution; deeds; bills of sale; and transfers of tangible property, will not be subject to any stamp tax or other similar tax, and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

3.      _Compliance With Section 1129 of the Bankruptcy Code_.  As set forth in Section I of this Confirmation Order, the Plan and the Debtors comply in all respects with the applicable requirements of section 1129 of the Bankruptcy Code.

4.      _Satisfaction of Rule 9019 of the Bankruptcy Rules_.  The settlements, compromises, resolutions, releases, exculpations, and injunctions set forth in the Plan (as modified pursuant to this Order) satisfy in all respects the applicable requirements of Rule 9019 of the Bankruptcy Rules.

5.      _Executory Contracts and Unexpired Leases_.  Each pre- or post-Confirmation assumption or rejection of an executory contract or unexpired lease pursuant to Article IV of the Plan shall be legal, valid, and binding upon the Debtors and all non-Debtor parties to such

09-40795-kw    Doc 1730    FILED 07/21/11    ENTERED 07/21/11 10:28:05    Page 11 of 72

executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an appropriate authorizing order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

6.    Retention of Jurisdiction.  The Court may properly retain jurisdiction over the matters set forth in Article IX of the Plan and section 1142 of the Bankruptcy Code.

## III.  ORDER

1.    Confirmation.  The Plan, and each of its provisions, shall be, and hereby are, approved and confirmed under section 1129 of the Bankruptcy Code; *provided, however*, that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  The failure to specifically include any particular provisions of the Plan in this Confirmation Order shall not diminish or impair the efficacy of such provisions, it being understood that it is the intent of the Court that the Plan be confirmed and approved in its entirety, as modified pursuant to this Order.

2.    Resolution of the Objections.  The Committee Objection is hereby overruled on the merits for the reasons set forth on the record of the Confirmation Hearing.  The Objections that have been resolved are resolved as follows:

a.    The U.S. Bank Objection is resolved as follows:

Notwithstanding any other provision of the Plan, on or before the Effective Date, (subject to completion by the Debtors of the obligations set forth herein) the Debtors' obligations with respect to the Bonds (as defined in the Cash Collateral Order) and the bonds that have been defeased under the Escrow Agreements (as defined herein) (such bonds, the "Defeased Bonds") shall be released and discharged, solely in accordance with this provision of this Confirmation Order. The Debtors' obligations with respect to the Defeased Bonds shall not be otherwise modified by the Plan, except as provided herein.

U.S. Bank shall continue to pay the Defeased Bonds and otherwise perform those services prescribed under and pursuant to the terms of the Escrow Agreement between Western Reserve Care System and U.S. Bank, as successor trustee to National City Bank dated as of December 1, 1997, and the Escrow Agreement among Forum Health Services Co., Beeghly Oaks, Trumbull Memorial Hospital

and Western Reserve Care System and U.S. Bank, as trustee dated as of January 29, 2008 (collectively, the "Escrow Agreements") on behalf of the Debtors. The Debtors shall prepay U.S. Bank for any and all such services performed by it under the Escrow Agreements, which prepayment shall be made from funds currently on deposit with U.S. Bank in the trust accounts held by it as Master Trustee and Bond Trustees (both as defined in the Cash Collateral Order). The prepaid fee shall be equal to $30,000 on account of the Series 1995 Defeased Bonds and $7,500 on account of the Series 2002A Defeased Bonds. Upon allocation of such prepayment, but in no event later than: (i) the occurrence of the Effective Date; or (ii) completion by the Debtors of the obligations set forth in Section 5.06 of the Bond Indentures (as defined in the Cash Collateral Order), whichever occurs later, the Debtors shall have no further rights, duties or obligations to U.S. Bank under the Escrow Agreements and shall have no further duties or obligations with respect to the Bonds or the Defeased Bonds.

After allocation of such prepayment as set forth in the preceding paragraph, and after all other fees and expenses of U.S. Bank, as the Bond Trustees and Master Trustee, have been, pursuant to the Stipulation Regarding Distribution of Proceeds of Sale, approved and paid, in full, but in no event later than ten (10) days after the allocation of the prepayment, U.S. Bank shall promptly return to the Debtors or the Liquidating Trustee, as the case may be, any and all remaining funds held by it in the Indemnity Account (as defined in the Cash Collateral Order), the Segregated Proceeds Account (as defined in the Cash Collateral Order) and all other trust accounts established under the indentures governing the Defeased Bonds, the Bonds, and the Cash Collateral Orders.

To the extent that the Debtors and/or the Liquidating Trustee request U.S. Bank to take any further action, whether in its capacity as the Bond Trustees, Master Trustee or Escrow Trustee, under the Plan or under any agreements or indentures governing the Bonds, including the Series 1995 Bonds, such party shall pay U.S. Bank its reasonable fees (including attorneys' fees) and expenses in taking any such action.

Subsequent to the performance by U.S. Bank, as Bond Trustee, Master Trustee or Escrow Trustee, of any duties that are required under the Plan, including, without limitation, its duties as Escrow Trustee under the Escrow Agreements, U.S. Bank and its agents on one hand, and the Debtors on the other hand, shall be relieved of, and released from, all obligations arising under any agreements or indentures governing the Defeased Bonds, the Bonds or the law and such agreements and the indentures shall be deemed to be discharged.

b.   The OBWC Objection is resolved as follows:

OBWC shall receive an Allowed Priority Tax Claim in the amount of $500,000 and an Allowed General Unsecured Claim of $7,526,674.79. OBWC's Priority Tax Claim will be treated like all other Priority Tax Claims under the Plan.

The second sentence of Section 2.1.2(a) of the Plan is moot and shall be, and hereby is, deemed withdrawn.

c.   The IMDF Objection is resolved as follows:

Certain funds that were donated by IMDF or its predecessors shall be disposed of only in accordance with the relevant charitable purposes, and in accordance with Ohio law and as authorized by an appropriate probate court order.

3.      Plan Classification Controlling.   The classifications of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.

4.      Binding Effect.  The Plan shall be binding upon the Debtors, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Interest in the Debtors, including all governmental entities, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, and all Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

5.      Vesting of Assets.  Pursuant to Article III, Section 3.9 of the Plan, and except as otherwise provided in the Plan, on the Effective Date, any and all Liquidating Trust Assets shall be transferred to the Liquidating Trust.

6.      Transfers of Property.   The transfers of property by the Debtors: (a) to the Liquidating Trust (i) are and will be legal, valid and effective transfers of property, (ii) vest and will vest the Liquidating Trust with good title to such property free and clear of all liens, charges, Claims, encumbrances or Interests, except as expressly provided in the Plan or Confirmation Order, (iii) do not and will not constitute avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law, and (iv) do not and will not subject the Liquidating Trust to any liability by reason of such transfer under the Bankruptcy Code or under

applicable non-bankruptcy law, including, without limitation, any laws affecting successor, transferee or stamp or recording tax liability; and (b) to Holders of Claims or Interests under the Plan are for good consideration and value.

7. <u>Corporate Action</u>.  On the Effective Date, all matters provided in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection with the Plan, including, but not limited to, those actions set forth in Confirmation Exhibits 3.5(a) and 3.5(b), shall be deemed to have occurred and shall be in effect without any requirement of further action by the officers, trustees or management of the Debtors. Pursuant to the corporate structure set forth in Exhibits 3.5(a) and 3.5(b), Debtor Forum Health Services Co. shall be merged into Debtor Forum Health, and all other Debtors shall be dissolved except for Debtor Forum Health, Debtor Western Reserve Care System, and Debtor Trumbull Memorial Hospital, which shall continue in existence for the limited purposes set forth in Plan Sections 3.4 and 3.5.  The ownership interest of non-debtor Forum Health Insurance Ltd. shall vest in Forum Health upon the merger of Forum Health Services Co. and Forum Health.  The corporate structure set forth in Confirmation Exhibits 3.5(a) and 3.5(b) shall control any conflict with Plan Sections 2.2.6 and 3.5.

8. <u>Plan Documents</u>.  There being no objections to any of the documents contained in the Plan, or any amendments, modifications and supplements thereto, and all documents and agreements introduced therein or contemplated by the Plan (including all exhibits, appendices, and attachments thereto and documents referred to therein), including, but not limited to, the Liquidating Trust Agreement, the execution, delivery and performance thereof is authorized and approved, without need for further corporate action or further order or authorization of the Court. The Debtors are authorized and empowered to make any and all modifications to any and all

09-40795-kw    Doc 1730    FILED 07/21/11    ENTERED 07/21/11 10:28:05    Page 15 of 72

documents included as part of the Plan that may be agreed to by the parties thereto and are consistent with the Plan.

9. <u>Assumption or Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>. Pursuant to Article IV of the Plan, as of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors is a party are rejected, except for any executory contract or unexpired lease that (a) has been assumed or rejected pursuant to a Final Order of the Court entered prior to the Effective Date, or (b) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.

10. <u>Bar Date for Rejection Damage Claims</u>. Pursuant to Article IV, Section 4.3 of the Plan, if the rejection of an Executory Contract or Unexpired Lease results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, the Liquidating Trust, the Liquidating Trustee, or any property to be distributed under the Plan unless a proof of claim is filed with the Court and served upon the Liquidating Trustee on or before the date that is 30 days after the later of: (a) notice of entry of an order approving the rejection of such Executory Contract or Unexpired Lease; (b) notice of the entry of Confirmation Order;  or (c) notice of an amendment to Confirmation Exhibit 4.1, with respect only to the party or parties to the contract or lease subject to such amendment.

11. <u>General Authorizations</u>. Each of the Debtors is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan. The Debtors and their directors, officers, agents, and attorneys are authorized and empowered to issue, execute, deliver, file, or record any agreement,

09-40795-kw    Doc 1730    FILED 07/21/11    ENTERED 07/21/11 10:28:05    Page 16 of 72

document, or security, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, including merger of any of the Debtors and the dissolution of each of the Debtors, and any release, amendment, or restatement of any organization documents of the Debtors, whether or not specifically referred to in the Plan, without further order of the Court, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law. In accordance with Article III, Sections 3.2 and 3.5 of the Plan, the Debtors are authorized, but not directed, to file certificates of cancellation, dissolution, or merger without further action under applicable law, regulation, order, or rule, including, without express or implied limitation, any action by the stockholders, members, or directors (or other governing body) of the Debtors.

12.     Securities Laws Exemption. The beneficial interests in the Liquidating Trust (i.e., the rights of holders of Allowed Claims to receive distributions under the Plan) are exempt from the provisions of section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer, issuance, distribution, or sale of a security by reason of section 1145(a) of the Bankruptcy Code. The beneficial interests in the Liquidating Trust shall not be certificated and are not transferable.

13.     Substantive Consolidation. Subject to the occurrence of the Effective Date, on the Effective Date, the Debtors' estates shall be substantively consolidated to the extent provided in the Plan.

14.     Governmental Approvals Not Required. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan

09-40795-kw    Doc 1730    FILED 07/21/11    ENTERED 07/21/11 10:28:05    Page 17 of 72

and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

15.     The Liquidating Trust.  The Liquidating Trust Agreement, as it may be executed on or before the Effective Date, is approved in all respects

16.     Role of the Liquidating Trustee.  Dalton T. Edgecomb shall be, and hereby is, appointed Liquidating Trustee.  The Liquidating Trustee shall be, and hereby is, authorized to take all acts in accordance with the Plan, the Liquidating Trust Agreement, and this Confirmation Order.

17.     Causes of Action.  Pursuant to Article III, Section 3.9 of the Plan, on and after the Effective Date, the Liquidating Trustee may settle, compromise, abandon or withdraw any Cause of Action, including any Avoidance Action, on any grounds or terms he deems reasonable, without further order of the Court, unless the face value of such Cause of Action is greater than $50,000, in which case approval of the Court will be required.  The Liquidating Trustee may settle or compromise any Disputed Claims on any terms he deems reasonable, without further order of the Court, unless the face value of such Disputed Claim is greater than: (a) $50,000 for an Administrative Claim, Priority Tax Claim, Other Priority Claim, or Secured Claim; or (b) $250,000 for a General Unsecured Claim.

18.     Final Fee Applications.  Pursuant to Article II, Section 2.1.1 of the Plan, all unpaid Fee Claims incurred by Professionals prior to the Effective Date shall be subject to final allowance or disallowance upon application to the Court pursuant to sections 328, 330 or 503(b)(4) of the Bankruptcy Code ("Final Fee Applications").  Final Fee Applications shall be Filed with the Court no later than 30 days after the Effective Date.  Objections to any Fee Claims must be filed and served on the Notice Parties and the requesting party by the later of: (a) 60

09-40795-kw    Doc 1730    FILED 07/21/11    ENTERED 07/21/11 10:28:05    Page 18 of 72

days after the Effective Date; (b) 30 days after the filing of the applicable request for payment of the Fee Claim; and (c) such other period of limitation as may be specifically fixed by a Final Order for objecting to such Fee Claim.  To the extent necessary, this Confirmation Order amends and supersedes any prior order regarding the payment of Fee Claims.

19.  <u>Ordinary Course Payment of Professionals</u>.  Any professional receiving compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further review or approval of the Court, except as provided in the Ordinary Course Professionals Order.  After the Effective Date, as provided in the Plan, the Liquidating Trustee shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the professional persons employed by the Liquidating Trust or the Liquidating Trustee in connection with the implementation and consummation of the Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged.

20.  <u>Releases, Injunction, and Exculpations</u>.  The releases, injunction, and exculpation provisions set forth in Article VIII of the Plan, as modified herein, are approved.  The Debtors shall be, and hereby are, deemed to release the Released Parties under the terms set forth in the Plan.  Parties that voted to accept the Plan, shall be, and hereby are deemed to release the Released Parties under the terms set forth in the Plan.  The provision of the Plan that provides for involuntary third party releases (i.e., the release of any direct claims of individual creditors against the Released Parties) and any injunction against such claims other than against the Debtors themselves, shall be, and hereby is, deemed withdrawn.  Except as otherwise modified

09-40795-kw    Doc 1730    FILED 07/21/11    ENTERED 07/21/11 10:28:05    Page 19 of 72

by this paragraph, the release, injunction and exculpation provisions of the Plan shall be, and hereby are, approved.

21. Notwithstanding anything in the Plan or set forth herein to the contrary, nothing in this Confirmation Order shall be construed to release, and the Debtors do not hereby release, any rights of the respective Debtors: (a) to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder; (b) to litigate Disputed Claims, including without limitation to make any claim, or demand or allege and prosecute any Cause of Action against any holder of any Disputed Claims; and (c) to litigate Claims and Causes of Action not specifically released, including claims and Causes of Action contained in any adversary complaint filed during the pendency of the Chapter 11 Cases that have not been withdrawn or dismissed prior to the Confirmation Date.

22. <u>PBGC and the Pension Plan</u>. Except as set forth in the last sentence of this paragraph, the PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability against any such party as a result of the Plan's provisions for satisfaction, release and discharge of claims. Nothing in the Plan or in this Confirmation Order shall in any way limit or modify the release or discharge of any party as set forth in the agreement dated January 31, 2011, between the PBGC, the Debtors, and certain other parties, attached as Exhibit A to the Debtors' Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 9019(A) Approving the Terms of the Settlement with the Pension Benefit Guaranty Corporation, Docket No. 1344, and approved by an Order of the Court dated April 27, 2011, Docket No. 1593.

23. <u>The Foundation Resolution</u>. The Foundation Resolution (as defined in the Confirmation Memorandum), including, but not limited to, the Foundation Payment, as set forth in Article III, Section 3.3 of the Plan shall be, and hereby is, approved in its entirety.

24. <u>Nonoccurrence of Effective Date</u>. Pursuant to Article VIII, Section 8.5 of the Plan, if each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section 8.3 of the Plan, then upon motion by the Debtors made before the time that each of such conditions has been satisfied and upon notice to such parties in interest as the Court may direct, this Confirmation Order will be vacated; *provided*, *however*, that, notwithstanding the Filing of such motion by the Debtors, this Confirmation Order may not be vacated if each of the conditions to the Effective Date is satisfied or waived before the Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to Section 8.5 of the Plan then: (a) the Plan will be null and void in all respects, including with respect to the releases described in Section 8.6.2 of the Plan; (b) nothing contained in the Plan will (i) constitute a waiver or release of any Claims by or against any Debtor, or (ii) prejudice in any manner the rights of the Debtors or any other party in interest; and (c) the Liquidating Trust, if already created, shall be promptly dissolved.

25. <u>Binding Effect</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order and the Plan shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

26. <u>Severability</u>. Each term and provision of the Plan, as it may have been altered or interpreted by the Court in accordance with Article X, Section 10.3 of the Plan, is valid and enforceable pursuant to its terms.

27. <u>Notice of Entry of Confirmation Order</u>. On or before the third Business Day following the date of entry of this Confirmation Order, the Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and record interest holders, the United States trustee, and all other parties in interest, by causing notice of entry of the Confirmation Order (the "Notice of Confirmation"), to be delivered

to such parties by first-class mail, postage prepaid. The Notice of Confirmation, attached hereto as Exhibit B, is adequate under the particular circumstances and no other or further notice is necessary.

28. <u>Notice of Effective Date</u>. Within three Business Days following the occurrence of the Effective Date, the Debtors shall file the notice of the occurrence of the Effective Date and shall serve a copy of the same on all creditors and record interest holders, the United States trustee, and all other parties in interest.

29. <u>Plan Exhibit 3.10.3</u>. The Debtors are hereby authorized to amend Plan Exhibit 3.10.3 at any time prior to the Effective Date. The Debtors have used their best efforts to identify Causes of Action, which are set forth on Plan Exhibit 3.10.3. Nothing herein or in the Plan, however, shall operate as *res judicata* against the Debtors or the Liquidating Trustee in prosecuting Causes of Action. Nothing herein shall prohibit the Debtors or the Liquidating Trustee from pursuing claims for matters that arose, or arise, in the ordinary course of business (i.e., accounts receivable).

30. <u>Existence of the Committee</u>. Notwithstanding any provisions in the Plan providing for the Committee's dissolution, the Committee shall remain in existence after the Effective Date to the extent necessary for the purposes of: (a) filing and prosecuting any remaining fee applications; and (b) continuing the prosecution of any pending appeal or appeal of this Order. Nothing herein or in the Plan, however, shall obligate the Debtors (including those Debtors remaining in existence after the Effective Date), the Liquidating Trust, the Liquidating Trustee or any other party in interest to fund any legal or other professional fees or expenses incurred by the Committee in connection with such efforts, following the Effective Date (other than for the limited purpose of filing and prosecuting Committee fee applications).

09-40795-kw    Doc 1730    FILED 07/21/11    ENTERED 07/21/11 10:28:05    Page 22 of 72

31.    <u>Waiver of 14-Day Stay</u>.  The 14-day stays contained in Fed. R. Bankr. P. 3020(e),

6004(h) and 6006(d) are hereby waived, and confirmation of the Plan shall be effective

immediately upon entry of this Confirmation Order.

# # #

Submitted by:

Shawn M. Riley (0037235)
Sean D. Malloy (0073157)
Matthew A. Salerno (0070847)
McDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114-2653
Telephone:  (216) 348-5400
Facsimile:   (216) 348-5474
E-mail:  sriley@mcdonaldhopkins.com
          smalloy@mcdonaldhopkins.com
          msalerno@mcdonaldhopkins.com

COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

# **EXHIBIT A**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 09-40795 |
| FORUM HEALTH, et. al.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) Chapter 11 |
| | ) |
| | ) Judge Kay Woods |
| | ) |

## DEBTORS' SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION

May 24, 2011

McDONALD HOPKINS LLC

Shawn M. Riley (0037235)
Sean D. Malloy (0073157)
Matthew A. Salerno (0070847)
Melissa S. Giberson (0082413)
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Telephone: (216) 348-5400
E-mail:    sriley@mcdonaldhopkins.com
           smalloy@mcdonaldhopkins.com
           msalerno@mcdonaldhopkins.com
           mgiberson@mcdonaldhopkins.com

Counsel for the Debtors and Debtors in Possession

– and –

NADLER NADLER & BURDMAN CO., L.P.A.

Michael A. Gallo
20 West Federal Street, Suite 60
Youngstown, OH  44503-1423
Telephone: (330) 744-0247
Email:    gallo@nnblaw.com

Co-Counsel to the Debtors and Debtors in Possession

---

[1]  The debtors include:  Forum Health (31-1560189), Forum Health Diagnostics Co. (34-1773672), Forum Health Enterprises Co. (34-1368151), Forum Health Outreach Laboratories, Inc. (34-1437294), Forum Health Ventures Co. (34-1489491), Forum Health Pharmacy Services Co. (34-1754092), Forum Health Rehabilitative Services Co. (31-1581767), Forum Health Services Co. (34-1461044), Western Reserve Care System (34-1454933), Western Reserve Health Foundation (34-1461047), Dacas Nursing Support Systems, Inc. (34-1482591), Dacas Nursing Systems, Inc. (34-1456983), Beeghly Oaks (31-1196072), PrideCare, Inc. (34-1490425), Trumbull Memorial Hospital (34-1461049), Trumbull Memorial Hospital Foundation (34-1195190), Comprehensive Psychiatry Specialists, Inc. (34-1697739) and Visiting Nurse Association and Hospice of Northeast Ohio (34-0714388).  The chapter 11 cases of debtors Western Reserve Health Foundation and Trumbull Memorial Hospital Foundation were dismissed prior to the filing of this second amended Plan and, accordingly, these debtors and their assets are not treated under this Plan or included in the defined term "Debtors" as used in this Plan.

{2381249:15}

# TABLE OF CONTENTS

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME ........................................................................................................... 1

| 1.1 | Defined Terms ................................................................................................. 1 |
| 1.2 | Rules of Interpretation and Computation of Time ........................................ 1 |
| | 1.2.1 Rules of Interpretation ......................................................................... 1 |
| | 1.2.2 Computation of Time ............................................................................ 2 |

ARTICLE II CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................... 2

| 2.1 | Unclassified Claims ........................................................................................ 2 |
| | 2.1.1 Payment of Administrative Claims ........................................................ 2 |
| | 2.1.2 Payment of Priority Tax Claims ............................................................ 3 |
| 2.2 | Classified Claims ............................................................................................ 3 |
| | 2.2.1 Other Priority Claims (Class 1 Claims) – Unimpaired. ......................... 3 |
| | 2.2.2 Secured Claims (Class 2 Claims) – Unimpaired. .................................. 3 |
| | 2.2.3 General Unsecured Claims (Class 3 Claims) – Impaired. ...................... 4 |
| | 2.2.4 PBGC Claims (Class 4 Claims) – Impaired. ......................................... 4 |
| | 2.2.5 Medical Malpractice Claims (Class 5 Claims) – Impaired. ................... 4 |
| | 2.2.6 Debtor Interests (Class 6 Claims) – Impaired. ..................................... 4 |
| 2.3 | Special Provisions Relating to the Rights of Setoff of Creditors .................. 4 |

ARTICLE III MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 5

| 3.1 | Confirmation Exhibits ..................................................................................... 5 |
| 3.2 | Winddown of Debtors ..................................................................................... 5 |
| 3.3 | Western Reserve Health Foundation and Trumbull Memorial Health Foundation ........ 5 |
| 3.4 | Restricted Charitable Funds ............................................................................ 5 |
| 3.5 | FHIL and Merger of Certain Debtors .............................................................. 6 |
| 3.6 | Pension Plan ................................................................................................... 6 |
| 3.7 | Retiree Benefits .............................................................................................. 6 |
| 3.8 | Termination of Collective Bargaining Agreements ........................................ 6 |
| 3.9 | Liquidating Trust ............................................................................................ 7 |
| | 3.9.1 Liquidating Trust Generally ................................................................. 7 |
| | 3.9.2 Funding of and Transfer of Assets into the Liquidating Trust .............. 7 |
| | 3.9.3 Liquidating Trustee .............................................................................. 8 |
| | 3.9.4 Liquidating Trust Agreement ................................................................ 8 |
| | 3.9.5 Reports to be Filed by the Liquidating Trustee .................................... 8 |
| | 3.9.6 Fees and Expenses of the Liquidating Trust ......................................... 8 |
| | 3.9.7 Indemnification .................................................................................... 8 |
| | 3.9.8 Tax Treatment ...................................................................................... 8 |
| | 3.9.9 Disposition of Assets by Liquidating Trust ........................................... 9 |
| | 3.9.10 Settlement of Causes of Actions and Disputed Claims ......................... 9 |
| 3.10 | Special Provisions ........................................................................................ 10 |
| | 3.10.1 Limitations on Amounts to Be Distributed to Holders of Allowed Insured Claims ............................................................................................ 10 |

09-44079-kw    Doc 1734    FILED 05/24/11    ENTERED 05/24/11 16:38:54    Page 26 of 72

**3.10.2** Liquidation of Tort Claims and Medical Malpractice Claims ......................... 10

**3.10.3** Preservation of Causes of Action; Avoidance Actions ................................... 10

**3.10.4** Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes ......................................................................................... 10

**3.10.5** Comprehensive Settlement of Claims and Controversies ........................... 10

ARTICLE IV EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................................... 11

**4.1** Assumption and Assignment ................................................................................ 11

**4.2** Cure of Defaults .................................................................................................. 11

**4.3** Bar Date for Rejection Damage Claims ............................................................... 11

**4.4** Approval of Rejection .......................................................................................... 11

ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS ................................................... 11

**5.1** Distributions for Claims Allowed as of the Effective Date ................................... 11

**5.2** Method of Distributions to Holders of Claims ..................................................... 12

**5.3** Delivery of Distributions and Undeliverable or Unclaimed Distributions ............. 12

**5.3.1** Delivery of Distributions ............................................................................. 12

**5.3.2** Undeliverable Distributions Held by Disbursing Agents .............................. 12

**5.4** Timing and Calculation of Amounts to be Distributed .......................................... 13

**5.4.1** Distributions on Account of Allowed Claims in Class 1 and Class 2 ............... 13

**5.4.2** Distributions on Account of Allowed Claims in Class 3 ................................ 13

**5.4.3** Distributions on Account of Allowed Claims in Class 4 ................................ 15

**5.4.4** Distributions on Account of Allowed Claims in Class 5 ................................ 15

**5.5** Other Provisions Applicable to Distributions in All Classes .................................... 15

**5.5.1** Postpetition Interest .................................................................................... 15

**5.5.2** Allocation of Distributions .......................................................................... 15

**5.6** Holders of Record ................................................................................................ 15

**5.7** Means of Cash Payments ....................................................................................... 15

**5.8** Withholding Requirements .................................................................................... 15

**5.8.1** Withholding ................................................................................................. 15

**5.8.2** Distributions ............................................................................................... 16

**5.8.3** Allocations .................................................................................................. 16

**5.9** Setoffs .................................................................................................................. 16

ARTICLE VI PROCEDURES FOR RESOLVING DISPUTED CLAIMS ..................................... 16

**6.1** Treatment of Certain Disputed Claims ................................................................. 16

**6.1.1** Tort Claims .................................................................................................. 16

**6.1.2** Disputed Insured Claims ............................................................................. 16

**6.1.3** No Distributions Pending Allowance ........................................................... 16

**6.2** Prosecution of Objections to Claims .................................................................... 17

**6.2.1** Objections to Claims ................................................................................... 17

**6.2.2** Authority to Prosecute Objections .............................................................. 17

**6.2.3** Authority to Amend Schedules ..................................................................... 17

**6.2.4** Request for Extension of Claims Objection Bar Date .................................... 17

**6.3** Distributions on Account of Disputed Claims Once Allowed ................................. 17

ARTICLE VII CONSOLIDATION OF CERTAIN DEBTORS ...................................................... 17

09-40079-kw  Doc 1173-2  FILED 05/24/11  ENTERED 05/24/11 16:28:05  Page 27 of 72

| | | |
|---|---|---|
| **7.1** | Limited Consolidation for Certain Purposes | 17 |
| **7.2** | Order Granting Consolidation for Certain Purposes | 18 |

ARTICLE VIII CONFIRMATION OF THE PLAN .............................................................. 18

| | | |
|---|---|---|
| **8.1** | Conditions Precedent to Confirmation | 18 |
| **8.2** | Conditions Precedent to the Effective Date | 18 |
| **8.3** | Waiver of Conditions to Confirmation or Effective Date | 19 |
| **8.4** | Cramdown | 19 |
| **8.5** | Effect of Nonoccurrence of Conditions to the Effective Date | 19 |
| **8.6** | Effect of Confirmation of the Plan | 19 |
| **8.6.1** | Limitation of Rights of Holders of Claims | 19 |
| **8.6.2** | Releases | 19 |
| **8.6.3** | Injunction | 20 |
| **8.6.4** | Exculpation | 20 |
| **8.7** | Request for Waiver of Stay of Confirmation Order | 21 |

ARTICLE IX RETENTION OF JURISDICTION ............................................................... 21

ARTICLE X MISCELLANEOUS PROVISIONS ............................................................... 22

| | | |
|---|---|---|
| **10.1** | Modification of the Plan | 22 |
| **10.2** | Revocation of the Plan | 22 |
| **10.3** | Severability of Plan Provisions | 22 |
| **10.4** | Dissolution of Creditors' Committee | 23 |
| **10.5** | Successors and Assigns | 23 |

**TABLE OF EXHIBITS**

Exhibit A — Defined Terms

Exhibit B — Medical Malpractice Election Form

Exhibit C — Notice Parties

# TABLE OF CONFIRMATION EXHIBITS

Exhibit 3.5(a)     —     Not For Profit Debtor Mergers

Exhibit 3.5(b)     —     For Profit Debtor Mergers

Exhibit 3.10.3     —     Causes of Action

Exhibit 4.1        —     Assumed Executory Contracts and Unexpired Leases

Exhibit A.63       —     Insurance

Exhibit A.70       —     Liquidating Trust Agreement

Exhibit A.94       —     List of Relief From Stay Orders

# INTRODUCTION

Forum Health and its affiliated Debtors, Forum Health Diagnostics Co., Forum Health Enterprises Co., Forum Health Outreach Laboratories, Inc., Forum Health Ventures Co., Forum Health Pharmacy Services Co., Forum Health Rehabilitative Services Co., Forum Health Services Co., Western Reserve Care System, Dacas Nursing Support Systems, Inc., Dacas Nursing Systems, Inc., Beeghly Oaks, PrideCare, Inc., Trumbull Memorial Hospital, Comprehensive Psychiatry Specialists, Inc. and Visiting Nurse Association and Hospice of Northeast Ohio, propose the following plan of liquidation for the resolution of the outstanding claims against and interests in their respective bankruptcy estates. Reference is made to the Disclosure Statement for the Debtors' Second Amended Chapter 11 Plan of Liquidation for a discussion of the history, business, properties and operations of the Debtors, a summary and analysis of this Plan, risk factors related to this Plan and certain related matters including, among other things, the proposed substantive consolidation of the Chapter 11 Cases. This Plan follows the closing of a sale of most of the Debtors' operating assets to Youngstown Ohio Hospital Company, LLC and contemplates the liquidation of the unsold assets and distribution of the proceeds of such sale and liquidation pursuant to this Plan. Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

### 1.1    Defined Terms

As used in this Plan, capitalized terms have the meanings set forth in Exhibit A. Any term that is not otherwise defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as each term is defined in Exhibit A), will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

### 1.2    Rules of Interpretation and Computation of Time

#### 1.2.1    Rules of Interpretation

For purposes of this Plan, unless otherwise provided in this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (f) the words "in this Plan," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of formation, limited liability operating agreement, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

### 1.2.2   Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

# ARTICLE II
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Claims, statutory fees payable pursuant to 28 U.S.C. § 1930 and Priority Tax Claims, are placed in the following Classes. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, statutory fees and Priority Tax Claims, as described in Section 2.1, have not been classified and thus are excluded from the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim qualifies within the description of such other Classes.

## 2.1   Unclassified Claims

### 2.1.1   Payment of Administrative Claims

a.   Administrative Claims in General

Except as otherwise specified in this Section 2.1, and subject to the Bar Date provisions in this Plan, unless an order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Claim will receive, in full satisfaction of its Administrative Claim, Cash equal to the amount of such Allowed Administrative Claim on the later of (i) the Effective Date or (ii) the date on which such Administrative Claim becomes an Allowed Administrative Claim.

b.   Statutory Fees

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 will be paid in Cash equal to the amount of such Allowed Administrative Claims.  With respect to any Chapter 11 Case not converted, closed or dismissed in accordance with the provisions of Sections 2.2.6 and 3.4 of this Plan, all fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date will be paid by the Liquidating Trustee until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

c.   Bar Dates for Administrative Claims

(i)   General Administrative Claim Bar Date Provisions

Except as otherwise provided in this Plan or an order of the Bankruptcy Court, requests for payment of Administrative Claims must have been Filed pursuant to the procedures specified in the Administrative Bar Date Order. Holders of Administrative Claims that did not File and serve such a request by the Administrative Bar Date are forever barred from asserting such Administrative Claims against the Debtors, the Liquidating Trust or their respective property, and any such alleged Administrative Claims will be deemed discharged as of the Effective Date. Objections to such requests must be Filed by the Claims Objection Bar Date.

(ii)   Bar Dates for Professional Compensation

All unpaid Fee Claims incurred by Professionals prior to the Effective Date shall be subject to final allowance or disallowance upon application to the Bankruptcy Court pursuant to

sections 328, 330 or 503(b)(4) of the Bankruptcy Code. Final applications for allowance of Fee Claims for services rendered in connection with the Chapter 11 Cases shall be Filed with the Bankruptcy Court no later than 30 days after the Effective Date, provided, however, that any professional receiving compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further review or approval of the Bankruptcy Court (except as provided in the Ordinary Course Professionals Order). Objections to any Fee Claims must be filed and served on the Notice Parties and the requesting party by the later of: (a) 60 days after the Effective Date; (b) 30 days after the filing of the applicable request for payment of the Fee Claim; and (c) such other period of limitation as may be specifically fixed by a Final Order for objecting to such Fee Claim. To the extent necessary, the Confirmation Order will amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.

### 2.1.2 Payment of Priority Tax Claims

a. Priority Tax Claims

Each holder of an Allowed Priority Tax Claim will receive, in full satisfaction of its Priority Tax Claim, Cash equal to the amount of such Allowed Priority Tax Claim, on the later of (a) the Effective Date or (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim. With respect to any Allowed Priority Tax Claim held by the Ohio Bureau of Workers' Compensation, the Ohio Bureau of Workers' Compensation shall be entitled to draw on the Workers' Compensation Fund, which shall be deemed to constitute the Debtors' timely Cash payment pursuant to this Section 2.1.2.a.

b. Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding the provisions of Section 2.1.2.a, the holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty will be subject to treatment in Class 3 (General Unsecured Claims), as applicable, if not subordinated to Class 3 Claims pursuant to an order of the Bankruptcy Court. The holder of an Allowed Priority Tax Claim will not assess or attempt to collect such penalty from the Debtors, the Liquidating Trust or their respective property (other than as a holder of a Class 3 Claim).

### 2.2 Classified Claims

### 2.2.1 Other Priority Claims (Class 1 Claims) – Unimpaired.

Each Holder of an Allowed Other Priority Claim will receive, in full satisfaction of its Other Priority Claim, Cash equal to the amount of such Allowed Other Priority Claim on the later of (a) the Effective Date or (b) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim.

### 2.2.2 Secured Claims (Class 2 Claims) – Unimpaired.

Unless the Holder of such Claim and the applicable Debtor agree to a different treatment, 30 days after the later of (a) the Effective Date and (b) the date on which the Claim is Allowed, in full satisfaction of its Allowed Claim, each Holder of an Allowed Secured Claim shall receive, at the option of the Debtors: (a) the net proceeds of the sale of the property securing such claim, up to the Allowed amount of such claim; (b) the return of property securing such claim; or (c) Cash equal to the value of the property securing such claim, up to the value of the Allowed Secured Claim.

### 2.2.3 General Unsecured Claims (Class 3 Claims) – Impaired.

On one or more Distribution Dates, each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata share of the net proceeds of the Liquidating Trust Assets after the payment of all Allowed Fee Claims, Administrative Claims, Priority Tax Claims, Other Priority Claims, and Secured Claims, and the payment of all costs and expenses of the Liquidating Trust.

The obligations to holders of Allowed General Unsecured Claims shall be governed by the Liquidating Trust Agreement.

### 2.2.4 PBGC Claims (Class 4 Claims) – Impaired.

In full satisfaction of the PBGC Claims, the PBGC shall receive: (i) the PBGC Administrative Claim, to be treated in accordance with Section 2.1.1 of this Plan; (ii) the Beneficial Interests in FHIL, which will be delivered to the PBGC in accordance with the agreement between the PBGC and the Debtors; and (iii) the PBGC Remaining Claim, to be treated in accordance with Section 2.2.3 of this Plan. The PBGC shall be entitled to vote the PBGC Remaining Claim as a part of Class 3 (General Unsecured Claims).

### 2.2.5 Medical Malpractice Claims (Class 5 Claims) – Impaired.

On the Effective Date, each holder of a Medical Malpractice Claim shall (i) affirmatively elect, by submission of an executed copy of the Election Form attached to this Plan as Plan Exhibit B to counsel for the Debtors, to be granted relief from the automatic stay to liquidate the amount of such holder's Medical Malpractice Claim in an appropriate legal forum or (ii) in the absence of an affirmative election of the type specified in subsection (i) have such Medical Malpractice Claim estimated by the Bankruptcy Court. If the holder of a Medical Malpractice Claim elects relief from the stay to liquidate the amount of its Claim, and the Claim has not been liquidated within one year of the Effective Date, the Liquidating Trustee may seek estimation of the Claim by the Bankruptcy Court for purposes of determining the amount of any Class 3 deficiency Claim. In each instance, any recovery by such holder on account of an Estimated Medical Malpractice Claim or an Adjudicated Medical Malpractice Claim shall be limited to Insurance. To the extent Insurance is insufficient to pay any Estimated Medical Malpractice Claims and/or any Adjudicated Medical Malpractice Claims, the holder of such claim shall be entitled to a Class 3 Allowed General Unsecured Claim for any deficiency. Nothing in this Section 2.2.5. shall alter, modify, void, limit or impair the provisions of any Relief From Stay Order previously entered in these Chapter 11 Cases.

### 2.2.6 Debtor Interests (Class 6 Claims) – Impaired.

On the Effective Date, except as provided in Section 3.4 with respect to Interests in Forum Health and Forum Health Ventures Co., all Interests will be cancelled. All Interests are not entitled to any distributions under the Plan.

### 2.3 Special Provisions Relating to the Rights of Setoff of Creditors

Nothing in this Plan shall expand or enhance a creditor's right of setoff, which shall be determined as of the Petition Date. Nothing in this Plan is intended to, or shall be interpreted to, approve any creditor's effectuation of a postpetition setoff without the consent of the Debtors unless prior Bankruptcy Court approval has been obtained.

# ARTICLE III
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 3.1    Confirmation Exhibits

All Confirmation Exhibits to this Plan will be filed with the Bankruptcy Court no later than 10 days before the Confirmation Hearing.

### 3.2    Winddown of Debtors

As soon as practicable subsequent to the Effective Date and except as provided in Sections 3.4 and 3.5, each of the Debtors shall take all necessary steps to effect their winddown and dissolution.

### 3.3    Western Reserve Health Foundation and Trumbull Memorial Health Foundation

On March 17, 2011, the chapter 11 cases pending with respect to Western Reserve Health Foundation and Trumbull Memorial Hospital Foundation (together, the "Foundations") were dismissed. The Committee had objected to dismissal of the Foundations, seeking access to the Foundations' unrestricted charitable funds to pay the creditors of all Debtors. The Bankruptcy Court overruled the Committee's objection and dismissed the Foundations' cases. The Committee appealed the Bankruptcy Court's order and moved the Bankruptcy Court for a stay of the effectiveness of the dismissal orders pending appeal, which stay motion was denied. During the hearing on the Foundations' motions to dismiss, the Foundations had noted that they were solvent and intended to pay their own creditors in full. In addition, the Foundations agreed to pay their own bankruptcy expenses, such as the costs of litigating the motions to dismiss, the motion of the Committee for stay pending appeal, and other similar matters.

The Foundations consulted with the Committee regarding the appropriate share of bankruptcy expenses that should be paid by the Foundations. After discussion, the Foundations agreed to pay $1 million (the "Foundations Payment") in the aggregate into the Debtors' estates for distribution to creditors. The Debtors believe that this is an appropriate resolution of the Foundations' obligations, and this Plan constitutes a motion under Bankruptcy Rule 9019 to resolve all obligations of the Foundations for expenses related to their chapter 11 cases and any other claims or causes of action of the Debtors against the Foundations. In addition, the Foundations Payment shall be considered additional consideration for the releases granted to the Foundations pursuant to Section 8.6.2 hereof.

As of the date of filing of this Plan, the PBGC (the Debtors' largest unsecured creditor) has voiced its support for the resolution of the claims and causes of actions of the Debtors' estates against the Foundations as resolved by this Plan. The Committee, however, has not. Accordingly, there is a possibility that there will be continued litigation over approval of this provision of the Plan, the Committee's appeal of the dismissal orders, and other issues impacting the Foundations. The Foundations' agreement to make the Foundations Payment is explicitly conditioned upon entry of a Final Order fully and finally resolving all claims against the Foundations and releasing them in full without any further risk of litigation. As a result, the Debtors have agreed to indemnify the Foundations for the costs of further litigation related to these matters. The practical effect of this agreement (which is a critical term of the Foundations' agreement to make the Foundations Payment) is that the value of the $1 million to the Debtors' creditors will be reduced dollar for dollar with any further costs of litigation to the Foundations.

### 3.4    Restricted Charitable Funds

No later than 10 days before the Confirmation Hearing, the Debtors shall affirmatively indicate their intentions with respect to disposition of Restricted Charitable Funds. The Debtors shall affirmatively elect to dispose of the Restricted Charitable Funds by either:

A.    continuing the corporate existence of each of Debtor Trumbull Memorial Hospital and Debtor Western Reserve Care System, for the sole purpose of holding the Restricted Charitable Funds so that such funds may be directed to the fulfillment of an Appropriate Purpose pursuant to applicable laws;

B.    delivering all Restricted Charitable Funds held by Debtor Trumbull Memorial Hospital to non-debtor Trumbull Memorial Hospital Foundation and all Restricted Charitable Funds held by Debtor Western Reserve Care System to non-debtor Western Reserve Health Foundation so that such funds may be directed to the fulfillment of an Appropriate Purpose pursuant to applicable laws; or

C.    delivering the Restricted Charitable Funds to a local or community foundation capable of utilizing the Restricted Charitable Funds in accordance with an Appropriate Purpose.

In no event shall the Restricted Charitable Funds be disposed of in such a way as to violate any charitable or other restriction placed on the use or disposition of such Restricted Charitable Funds or any applicable state law.

### 3.5    FHIL and Merger of Certain Debtors

On the Effective Date, the Board of Trustees of Forum Health shall be replaced by the Liquidating Trust.  To complete the winddown of FHIL, disburse the Beneficial Interests of FHIL as described in Section 2.2.4 and ensure continued insurance coverage, (a) all not-for-profit Debtors necessary for continued insurance coverage as identified on Confirmation Exhibit 3.5(a) shall be merged into Debtor Forum Health; (b) all for-profit Debtors necessary for continued insurance coverage as identified on Confirmation Exhibit 3.5(b) shall be merged into Debtor Forum Health Ventures Co.; (c) Debtor Forum Health shall retain the Interests of Debtor Forum Health Ventures Co. and non-debtor FHIL; and (d) non-debtor Forum Health Holding Company shall retain the Interests of Debtor Forum Health.

### 3.6    Pension Plan

On January 26, 2011, the PBGC and the Debtors executed a Trusteeship Agreement by which the Pension Plan was terminated, the PBGC became statutory trustee of the Pension Plan, and September 30, 2009, was established as the Pension Plan termination date.

### 3.7    Retiree Benefits

Certain consensual modifications to various retiree benefits reached with the authorized representatives of such retirees have been approved by the Bankruptcy Court, which modifications have resulted in the termination of any continuing liability or obligation of the Debtors for retiree benefits (as such term is used and defined in section 1114 of the Bankruptcy Code) under any of the Debtors' Collective Bargaining Agreements.

### 3.8    Termination of Collective Bargaining Agreements

Prior to the Effective Date, the Debtors will have entered into consensual terminations of the Debtors' Collective Bargaining Agreements with each applicable Union, and such consensual terminations will have been approved by the Bankruptcy Court.  In the absence of such Union consent or in the absence of Bankruptcy Court approval, the applicable Debtors shall seek termination in accordance with section 1113 of the Bankruptcy Code.

09-40795-kw    Doc 1630    FILED 05/24/11    ENTERED 05/24/11 16:26:05    Page 36 of 72

### 3.9 Liquidating Trust

#### 3.9.1 Liquidating Trust Generally

On or prior to the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of liquidating remaining Assets (other than FHIL) and distributing the proceeds thereof to creditors in accordance with the terms of the Plan. Subject to and to the extent set forth in the Plan, the Confirmation Order, the Liquidating Trust Agreement or other agreement (or any other order of the Bankruptcy Court entered pursuant to or in furtherance hereof), the Liquidating Trust (and the Liquidating Trustee) shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the Liquidating Trust provisions of the Plan; (b) accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the Liquidating Trust Assets (directly or through its professionals, in accordance with the Plan); (c) sell, liquidate, transfer, distribute or otherwise dispose of the Liquidating Trust Assets (directly or through its professionals) or any part thereof or any interest in this Plan upon such terms as the Liquidating Trustee determines to be necessary, appropriate or desirable; (d) calculate and make distributions to holders of Allowed Claims pursuant to the procedures for allowing Claims and making distributions prescribed in the Plan; (e) comply with the Plan and exercise the Liquidating Trustee's rights and fulfill its obligations thereunder; (f) review, reconcile or object to Claims and resolve such objections as set forth in the Plan; (g) pursue Avoidance Actions that may be transferred to the Liquidating Trust, if any, to the extent that their pursuit would likely result in an economic benefit to holders of Claims; (h) retain and compensate professionals to represent the Liquidating Trustee with respect to his responsibilities; (i) establish and maintain a Disputed Claims Reserve; (j) file appropriate Tax returns and other reports on behalf of the Liquidating Trust and pay Taxes or other obligations owed by the Liquidating Trust; (k) exercise such other powers as may be vested in the Liquidating Trustee under the Liquidating Trust Agreement or the Plan, or as deemed by the Liquidating Trustee to be necessary and proper to implement the provisions of the Plan and the Liquidating Trust Agreement; (l) object to the amount of any Claim on any Schedule if the Liquidating Trustee determines in good faith that the Claim is invalid or has previously been paid or satisfied; (m) pay any and all residual statutory fees of any Debtors as provided in Section 2.1.1.b of this Plan; and (n) dissolve the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement. Notwithstanding anything to the contrary in this Section, the Liquidating Trust's primary purpose is liquidating the assets transferred to it by the Debtors and making distributions of the assets of the Liquidating Trust to holders of Allowed Claims.

#### 3.9.2 Funding of and Transfer of Assets into the Liquidating Trust

a. On the Effective Date, the Debtors shall transfer the Liquidating Trust Assets to the Liquidating Trust. The Liquidating Trust Assets will be transferred to and vest in the Liquidating Trust on the Effective Date, free and clear of all liens, claims and other encumbrances.

b. The Liquidating Trustee shall have the authority to create sub-accounts or sub-trusts within the Liquidating Trust, and into which the Liquidating Trustee may deposit any non-Cash property, including real or personal property pending its liquidation. The Liquidating Trustee, as trustee of such sub-accounts or sub-trusts may hold legal title to such property. Once liquidated, any Cash proceeds of such sub-accounts or sub-trusts shall be deposited directly into the primary trust account.

c. The act of transferring assets and rights to the Liquidating Trustee of the Liquidating Trust, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of

09-40795-kw    Doc 1530    FILED 05/24/11    ENTERED 05/24/11 16:26:05    Page 37 of 72

any right, and such rights may be asserted by the Liquidating Trust as if the asset or right was still held by the applicable Debtor.

### 3.9.3 Liquidating Trustee

a.    The initial Liquidating Trustee shall be Dalton T. Edgecomb.

b.    The powers, rights and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to fulfill the items identified in this Plan. Other rights and duties of the Liquidating Trustee and the beneficiaries of the Liquidating Trust shall be as set forth in the Liquidating Trust Agreement.

### 3.9.4 Liquidating Trust Agreement

The Liquidating Trust Agreement generally will provide for, among other things: (a) the payment of reasonable compensation to the Liquidating Trustee; (b) the payment of other expenses of the Liquidating Trust, including the cost of pursuing the claims, rights and causes of action assigned to the Liquidating Trust; (c) the retention of counsel, accountants, financial advisors or other professionals and the payment of their compensation; (d) the investment of Cash by the Liquidating Trustee within certain limitations; (e) the preparation and filing of appropriate Tax returns and other reports on behalf of the Liquidating Trust and the payment of Taxes or other obligations owed by the Liquidating Trust; (f) the orderly liquidation of the Liquidating Trust's assets; and (g) the litigation, settlement, abandonment or dismissal of any claims, rights or causes of action assigned to the Liquidating Trust.

### 3.9.5 Reports to be Filed by the Liquidating Trustee

The Liquidating Trustee, on behalf of the Liquidating Trust, shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Liquidating Trust Agreement), no later than 31 days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it, and other matters relating to the implementation of the Plan.

### 3.9.6 Fees and Expenses of the Liquidating Trust

Except as otherwise ordered by the Bankruptcy Court, the reasonable and necessary fees and expenses of the Liquidating Trust (including the reasonable and necessary fees and expenses of any professionals assisting the Liquidating Trustee in carrying out its duties under the Plan) will be funded by the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement without further order from the Bankruptcy Court.

### 3.9.7 Indemnification

The Liquidating Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Liquidating Trustee and/or other parties. Any such indemnification shall be the sole responsibility of the Liquidating Trust and payable solely from the Liquidating Trust Assets.

### 3.9.8 Tax Treatment

The Liquidating Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation § 301.7701-4(d) and in part as one or more Disputed Claims reserves treated either as discrete trusts taxed pursuant to Section 641 et seq. of the Internal Revenue Code or as disputed ownership funds described in Treasury Regulation § 1.468B-9. For federal

income tax purposes, the transfer of assets by the Debtors to the Liquidating Trust will be treated in part as the transfer of assets by the Debtors to the holders of Allowed Claims, subject to any liabilities of the Debtors or the Liquidating Trust payable from the proceeds of such assets, followed by the transfer of such assets (subject to such liabilities) by such holders to the Liquidating Trust in exchange for interests in the trust, and in part as the transfer of assets by the Debtors to one or more Disputed Claims reserves. The holders of Allowed Claims will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the assets in the Liquidating Trust (subject to such liabilities), depending on their rights to distributions under the Plan. As grantors and deemed owners of such assets, the holders of Allowed Claims will be required to include in income their respective shares of the income, deductions, gains, losses and credits attributable to such assets. The holders of Allowed Claims will be required to use the values assigned to such assets by the Liquidating Trustee for all federal tax purposes, including the recognition of income, deduction, gain or loss with respect to their Allowed Claims and any gain or loss recognized on the subsequent disposition of an asset in which the holder holds an interest. The Liquidating Trust Agreement will contain certain provisions to comply with IRS guidance for trusts treated as liquidating trusts. Among other things, the agreement will (a) require that the Liquidating Trust terminate no later than five years after the Effective Date, subject to extension with Bankruptcy Court approval, (b) limit the Liquidating Trustee's investment powers, (c) limit the business operations carried on by the Liquidating Trust to activities reasonably necessary to and consistent with the trust's liquidating purpose, (d) prohibit the Liquidating Trust from receiving or retaining Cash or Cash equivalents in excess of an amount reasonably necessary to meet Claims and contingent liabilities or to maintain the value of the trust assets during liquidation and (e) distribute at least annually to the holders of Allowed General Unsecured Claims the Liquidating Trust's net income and the net proceeds from the sale of Liquidating Trust Assets in excess of an amount reasonably necessary to meet senior Claims and contingent liabilities (including Disputed Claims) and to maintain the value of the Liquidating Trust assets. Liquidating Trust Assets reserved for holders of Disputed Claims will be treated as one or more Disputed Claims reserves for tax purposes, which will be subject to an entity-level Tax on some or all of their net income or gain. No holder of a Claim will be treated as the grantor or deemed owner of an asset reserved for Disputed Claims until such holder receives or is allocated an interest in such asset. The Liquidating Trustee will file all Tax returns on a basis consistent with the treatment of the Liquidating Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation § 1.671-1(a)) and in part as one or more Disputed Claims reserves taxed as discrete trusts or disputed ownership funds, and will pay all Taxes owed from Liquidating Trust assets, provided that income taxes of the Disputed Claims reserves shall only be paid from the Liquidating Trust assets allocable to the Disputed Claims reserves.

### 3.9.9    Disposition of Assets by Liquidating Trust

The Liquidating Trustee may conduct any sales or liquidations of non-Cash Liquidating Trust Assets from the Liquidating Trust on any terms he deems reasonable, without further order of the Bankruptcy Court, unless either the book value or proposed sale price of the relevant Liquidating Trust Asset(s) is greater than $100,000, in which case approval of the Bankruptcy Court will be required. Notwithstanding anything herein to the contrary, the Restricted Charitable Funds are not Liquidating Trust Assets and there will be no "net proceeds" from the Restricted Charitable Funds available for distribution to creditors under Section 2.2.3 hereof or otherwise.

### 3.9.10   Settlement of Causes of Actions and Disputed Claims

The Liquidating Trustee may settle, compromise, abandon or withdraw any Cause of Action, including any Avoidance Action, on any grounds or terms he deems reasonable, without further order of the Bankruptcy Court, unless the face value of such Cause of Action is greater than $50,000, in which case approval of the Bankruptcy Court will be required.  The Liquidating Trustee may settle or compromise any Disputed Claims on any terms he deems reasonable, without further order of the Bankruptcy Court, unless the face value of such Disputed Claim is greater than: (a) $50,000 for an

Administrative Claim, Priority Tax Claim, Other Priority Claim, or Secured Claim; or (b) $250,000 for a General Unsecured Claim.

### 3.10    Special Provisions

#### 3.10.1    Limitations on Amounts to Be Distributed to Holders of Allowed Insured Claims

Distributions under the Plan to each holder of an Allowed Insured Claim will be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from proceeds payable to the holder thereof under any pertinent insurance policies and applicable law.  Nothing in this Section 3.9.1 constitutes a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that any entity may hold against any other entity, including the Debtors' insurance carriers.

#### 3.10.2    Liquidation of Tort Claims and Medical Malpractice Claims

All Tort Claims (other than Adjudicated Medical Malpractice Claims) including all Estimated Medical Malpractice Claims will be liquidated, determined or otherwise resolved in accordance with the provisions of section 502(c) of the Bankruptcy Code and will be subject to the Claims allowance process set forth in the Plan.  To the extent any Holder of a Medical Malpractice Claim has affirmatively elected to have such Claim adjudicated by a court other than the Bankruptcy Court in accordance with the provisions of Section 2.2.5 or such Medical Malpractice Claim is the subject of a Relief From Stay Order, to the extent such Medical Malpractice Claim has not been the subject of final adjudication on or before the date that is 12 months after the Effective Date, the Liquidating Trustee shall have the authority to seek estimation of the Claim by the Bankruptcy Court for purposes of determining the amount of any Class 3 Claim as a result of an estimated Insurance deficiency.

#### 3.10.3    Preservation of Causes of Action; Avoidance Actions

On the Effective Date, the Debtors will transfer to the Liquidating Trustee, as the representative of the Estates under section 1123(b) of the Bankruptcy Code, all Causes of Action, including Avoidance Actions, and the Liquidating Trustee may enforce any Causes of Action that the Debtors or the Estates may hold against any entity to the extent not expressly released under the Plan or by any Final Order of the Bankruptcy Court, including but not limited to those items identified at Confirmation Exhibit 3.10.3. The Liquidating Trust shall also control any privilege rights of the Debtors, including but not limited to the attorney/client privilege, related to the Causes of Action.

#### 3.10.4    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes

The Chief Restructuring Officer of each Debtor and the Liquidating Trustee will be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.  Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp Tax, real estate transfer Tax, mortgage recording Tax, sales or use Tax or similar Tax: (a) the creation of any mortgage, deed of trust, lien or other security interest; (b) the making or assignment of any lease or sublease; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing or pursuant to the Plan.

#### 3.10.5    Comprehensive Settlement of Claims and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases set forth in Article VIII, will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and their respective property and Claim and Interest holders and is fair, equitable and reasonable.

## ARTICLE IV
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 4.1      Assumption and Assignment

Each Executory Contract, Unexpired Lease or other agreement listed on Confirmation Exhibit 4.1 will be or has been assumed and assigned to the Purchaser as of the Effective Date.  All other Executory Contracts, Unexpired Leases or other agreements will be deemed rejected as of the Closing Date.

### 4.2      Cure of Defaults

Upon information and belief, all Cure Amount Claims have been satisfied by the Purchaser in accordance with the terms and procedures of the Sale and related process.

### 4.3      Bar Date for Rejection Damage Claims

To the extent not previously rejected in accordance with an Order of the Bankruptcy Court, claims arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to Section 4.1 must be Filed with the Bankruptcy Court and served on the Debtors or, on and after the Effective Date, the Liquidating Trustee, by no later than 30 days after the later of (a) notice of entry of an order approving the rejection of such Executory Contract or Unexpired Lease, (b) notice of the entry of Confirmation Order or (c) notice of an amendment to Confirmation Exhibit 4.1, and upon allowance, shall be an Allowed General Unsecured Claim.  Any Claims not Filed within such applicable time periods will be forever barred from receiving a distribution from the Debtors, the Estates, the Liquidating Trust, or the Purchaser.

### 4.4      Approval of Rejection

Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all Executory Contracts and Unexpired Leases pursuant to Section 4.1 to the extent not previously assumed or rejected by order of the Bankruptcy Court.

## ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS

### 5.1      Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in this Article V, distributions of Cash to be made on the Effective Date to holders of Claims as provided by Article II that are Allowed as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than 30 days after the Effective Date; or, with respect to undeliverable distributions, when the provisions of Section 5.4.2 are satisfied. Distributions on account of Claims that become Allowed after the Effective Date will be made pursuant to Section 6.3.

### 5.2 Method of Distributions to Holders of Claims

The Liquidating Trustee, or such Third Party Disbursing Agent as the Liquidating Trustee may employ in his sole discretion, will make all distributions of Cash and other instruments or documents required under the Plan. Each Disbursing Agent will serve without bond.

### 5.3 Delivery of Distributions and Undeliverable or Unclaimed Distributions

#### 5.3.1 Delivery of Distributions

Distributions to holders of Allowed Claims will be made: (i) at the addresses set forth on the respective proofs of Claim or request for payment of Administrative Claim Filed by holders of such Claims, as applicable; (ii) at the address for a Claim transferee set forth in a valid and timely notice of transfer of Claim Filed with the Bankruptcy Court; (iii) at the addresses set forth in any written notice of address change Filed with the Bankruptcy Court or delivered to the Claims and Noticing Agent after the date of Filing of any related proof of Claim; (iv) at the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and the Claims and Noticing Agent has not received a written notice of a change of address; or (v) if clauses (i) through (iv) are not applicable, at the last address known or directed by such holder after such Claim becomes an Allowed Claim.

#### 5.3.2 Undeliverable Distributions Held by Disbursing Agents

##### a. Holding of Undeliverable Distributions

Subject to Section 5.3.2.c, distributions returned to a Disbursing Agent, or otherwise undeliverable will remain in the possession of the Disbursing Agent, pursuant to this Section 5.3.2.a, until such time as a distribution becomes deliverable. The Liquidating Trustee, or such Third Party Disbursing Agent as may be employed by the Liquidating Trustee, holding undeliverable Cash will invest such Cash in a manner consistent with the Liquidating Trust Agreement.

##### b. After Distributions Become Deliverable

On each Distribution Date, the applicable Disbursing Agent will make all distributions that became deliverable to holders of Allowed Claims at the next Distribution Date; *provided, however*, that the applicable Disbursing Agent may, in its sole discretion, establish a record date prior to each periodic Distribution Date, such that only Allowed Claims as of the record date will participate in such periodic distribution. Notwithstanding the foregoing, the applicable Disbursing Agent reserves the right, to the extent it determines a distribution on any periodic Distribution Date is uneconomical or unfeasible, or is otherwise unadvisable, to postpone a Distribution Date.

##### c. Failure to Claim Undeliverable Distributions

Any holder of an Allowed Claim that does not assert its right to an undeliverable distribution within the earlier of one year of such distribution and the date that is 90 days prior to the Final Distribution Date will be forever barred from asserting any such Claim against the Debtors, a Disbursing Agent and their respective property or accounts. In such cases, unclaimed distributions held by a Disbursing Agent will be returned to the Liquidating Trust for distribution to other creditors, and the Liquidating Trustee shall have no responsibility to make further distributions to such creditor. Any unclaimed distributions or any distributions that are returned as undeliverable and unclaimed under this Section 5.3.2.c, will become property of the Liquidating Trust free of any restrictions thereon. Any distributions that are made on the Final Distribution Date and that are undeliverable or (in the event of a distribution made by check ) remain uncashed for 180 days after the Final Distribution Date shall be remitted to the Bankruptcy Court as unclaimed funds. Upon such remittance, the Liquidating Trustee shall be deemed to have satisfied his obligations to make distributions under the Plan and shall not be

required to make additional distributions. Nothing contained in the Plan will require a Debtor, the Liquidating Trustee or a Disbursing Agent to attempt to locate any holder of an Allowed Claim.

### 5.4 Timing and Calculation of Amounts to be Distributed

#### 5.4.1 Distributions on Account of Allowed Claims in Class 1 and Class 2

Distributions to be made to holders of Allowed Claims classified in Class 1 or Class 2 under the Plan shall be made within 30 days of such Claim becoming an Allowed Claim or the Effective Date, whichever is later.

#### 5.4.2 Distributions on Account of Allowed Claims in Class 3

a.      Selection of Distribution Dates for Class 3 Claims

Except where this Plan requires the making of a distribution on account of a particular Allowed Claim within a particular time, the Liquidating Trustee shall have the authority to select Distribution Dates that, in the judgment of the Liquidating Trustee, provide holders of Allowed Claims with payments as quickly as reasonably practicable while limiting the costs incurred by the distribution process; *provided, however*, that the first Distribution Date after the Effective Date must occur prior to 180 days after the Effective Date and a Distribution Date must occur at least once every twelve months thereafter, if any amounts are available for distribution on such date.

b.      Calculation of Amounts to Be Distributed to Holders of Class 3 Claims

Prior to any distribution to holders of Allowed General Unsecured Claims, the Liquidating Trustee shall estimate the amount of Cash on hand that will remain after payment of all senior Claims and all Liquidating Trust Expenses. Such estimations shall utilize assumptions that litigation with claimants with respect to any issue that is being reasonably contested will be unsuccessful. Such estimations shall also assume that any unresolved Causes of Action shall result in no recovery for the Liquidating Trust and that remaining non-Cash assets shall produce no recovery for the Liquidating Trust. Only if, after applying such assumptions, the estimated Cash is greater than zero shall the Liquidating Trustee be permitted to make any distributions to holders of Allowed General Unsecured Claims.

c.      Distributions to Holders of Allowed Claims in Class 3

On each Distribution Date, each holder of an Allowed General Unsecured Claim will receive a distribution of any Cash that has been determined to be available for distribution in accordance with Section 5.5.4 such that each holder of an Allowed General Unsecured Claim has received, in the aggregate, its Pro Rata share of the amounts of Cash that are made available for distribution to such Claim holders. All distributions shall be made pursuant to the terms and conditions of the Plan and the Liquidating Trust Agreement, and shall be subject to the Debtors' or the Liquidating Trustee's rights of setoff or deduction.

d.      De Minimis Distributions

On each Distribution Date prior to the Final Distribution Date, the Liquidating Trustee shall not distribute Cash to the holder of an Allowed General Unsecured Claim if the amount of Cash to be distributed on account of such Claim is less than $25 in the aggregate. Any Cash not distributed pursuant to this Section 5.4.2.d will be retained in the Liquidating Trust until the next Distribution Date. On the Final Distribution Date, if the aggregate amount of distributions to be made to such claimant is $25 or greater, such distribution shall be made. Otherwise, the amount shall be redistributed to other holders of Allowed Claims in such Class and such holder of an Allowed Claim will be forever barred from asserting its Claim for such distribution against the Liquidating Trust or its property.

e.    Provisions for Excess Funds

After the Final Distribution Date and the remittance to the Bankruptcy Court of unclaimed funds, if the Liquidating Trust receives any funds and, in good faith, does not believe that an additional distribution will be cost effective or materially beneficial to creditors, the Liquidating Trustee may donate such excess funds half to WRHF and half to TMHF.

f.    Provisions Governing Disputed Claims Reserve

(i)    Funding

On the Effective Date or otherwise prior to the initial distributions under Section 5.4.2, the Disputed Claims Reserve will be established by the Liquidating Trustee for the benefit of holders of Disputed Claims that become Allowed Claims. For the purpose of calculating the Assets to be contributed to the Disputed Claims Reserve, all Disputed Claims will be treated (solely for purposes of establishing the Disputed Claims Reserve) as Allowed Claims in the Face Amount of such Claims as of the Effective Date. In addition, Disputed Claims rendered duplicative as a result of the limited consolidation of the Debtors pursuant to Article VII will only be counted once for purposes of establishing the Disputed Claims Reserve. In making and establishing the Disputed Claims Reserve, the Liquidating Trustee may rely on the Debtors' estimates as to Disputed Claims and will have no liability therefore in the absence of bad faith or gross negligence, and the Debtors shall have no liability for their estimation of Disputed Claims in the absence of bad faith or gross negligence. As Disputed Claims are resolved, the Liquidating Trustee or Third Party Disbursing Agent shall make adjustments to the reserves for Disputed Claims, but neither the Debtors nor the Liquidating Trustee shall be required to increase such reserves from and after the Effective Date. The Liquidating Trustee may File a motion seeking an order of the Bankruptcy Court approving additional procedures for the establishment of the Disputed Claims Reserve.

(ii)    Distributions

The distributions received by the Liquidating Trustee or Third Party Disbursing Agent on account of the Disputed Claims Reserve from the Liquidating Trust, along with any Cash Investment Yield held in the Disputed Claims Reserve, will (a) be deposited in a segregated bank account in the name of the Disbursing Agent for the benefit of holders of Allowed Claims and Disputed Claims that become Allowed Claims, (b) be accounted for separately and (c) not constitute property of the Debtors. The Disbursing Agent will invest any Cash held in the Disputed Claims Reserve in a manner consistent with the Liquidating Trust Agreement.

(iii)    Recourse

Each holder of an Allowed Claim and each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only against the Disputed Claims Reserve and not to any other assets held by the Liquidating Trust, its property or any assets previously distributed on account of any Allowed Claim.

(iv)    No Transfer of Rights

The rights of holders of Allowed Claims to receive distributions from the Disputed Claims Reserve in accordance with the Plan will be non-transferable, except with respect to a transfer by will, the laws of descent and distribution or operation of law.

### 5.4.3 Distributions on Account of Allowed Claims in Class 4

Distributions to be made to the PBGC shall be made as soon as reasonably practical in accordance with the provisions of Section 3.5 and the winddown of FHIL, except as may otherwise be provided in accordance with Sections 2.1.1 and 5.4.2 of this Plan and any subsequent order of the Bankruptcy Court.

### 5.4.4 Distributions on Account of Allowed Claims in Class 5

Holders of Class 5 Claims shall be entitled to distributions in accordance with the terms of any applicable Insurance on account of any Estimated Medical Malpractice Claim or any Adjudicated Medical Malpractice Claim. Any such holder with a deficiency claim as described in Section 2.2.5 of this Plan shall be entitled to distributions in accordance with Section 5.4.2 of this Plan.

### 5.5 Other Provisions Applicable to Distributions in All Classes

### 5.5.1 Postpetition Interest

No interest shall have accrued on any Claim that is not an Allowed Secured Claim that is oversecured on and after the Petition Date.

### 5.5.2 Allocation of Distributions

All distributions to a holder of an Allowed Claim that has components of principal and interest will be deemed to apply first to the principal amount of such Claim until such principal amount is paid in full, and then the remaining portion of such distributions, if any, will be deemed to apply to any applicable accrued interest included in such Claim to the extent interest is payable under this Plan.

### 5.6 Holders of Record

Transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 for which a notice of transfer has been Filed on or prior to the close of business on the Confirmation Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Confirmation Date. No transfers Filed with the Bankruptcy Court after the Confirmation Date shall be recognized by the Liquidating Trustee.

### 5.7 Means of Cash Payments

Except as otherwise specified in this Plan, Cash payments made pursuant to the Plan will be in U.S. currency by checks drawn on a domestic bank selected by the Debtors, the Liquidating Trustee or any Disbursing Agent, as applicable, by wire transfer, electronic funds or ACH from a domestic bank; *provided, however*, that Cash payments to foreign holders of Allowed Claims may be made, at the option of the Liquidating Trustee or any Disbursing Agent in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### 5.8 Withholding Requirements

### 5.8.1 Withholding

In connection with the Plan, to the extent applicable, each Disbursing Agent will comply with all applicable Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to applicable withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, each Disbursing Agent will be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting

requirements, including, without limitation, liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding Taxes or establishing any other mechanisms the Disbursing Agent believes are reasonable and appropriate, including requiring Claim holders to submit appropriate Tax and withholding certifications. To the extent any Claim holder fails to submit appropriate Tax and withholding certifications as required by the Disbursing Agent, such Claim holder's distribution will be deemed undeliverable and subject to Section 5.4.2.

### 5.8.2 Distributions

Notwithstanding any other provision of the Plan, each entity receiving a distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of the distribution, including income, withholding and other Tax obligations.

### 5.8.3 Allocations

The Debtors reserve the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and similar encumbrances.

### 5.9 Setoffs

Except with respect to claims of a Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, each Debtor or the Liquidating Trustee on behalf of a Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights and causes of action of any nature that the applicable Debtor or Liquidating Trust may hold against the holder of such Allowed Claim; *provided, however*, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the applicable Debtor or the Liquidating Trustee of any claims, rights and causes of action that the Debtors or Liquidating Trustee may possess against a Claim holder, which are expressly preserved under Section 3.9.3.

## ARTICLE VI
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### 6.1 Treatment of Certain Disputed Claims

#### 6.1.1 Tort Claims

Each Tort Claim, including Medical Malpractice Claims, will be resolved in accordance with Section 3.10.2 of this Plan.

#### 6.1.2 Disputed Insured Claims

The resolution of Disputed Insured Claims, including Tort Claims shall be subject to the provisions of Sections 3.10.1 and 3.10.2 of the Plan.

#### 6.1.3 No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim, if ever.

### 6.2 Prosecution of Objections to Claims

#### 6.2.1 Objections to Claims

All objections to Claims must be Filed and served on the holders of such Claims, and any amendment to the Schedules to reduce the scheduled Claim of such holder, must be made by the Debtors or the Liquidating Trustee by the Claims Objection Bar Date. If an objection has not been Filed to a Claim or an amendment has not been made to the Schedules with respect to a scheduled Claim by the Claims Objection Bar Date, the particular Claim will be treated as an Allowed Claim if such Claim has not been allowed earlier.

#### 6.2.2 Authority to Prosecute Objections

On or after the Effective Date, the Liquidating Trustee will have the sole authority, to File, settle, compromise, withdraw or litigate to judgment objections to Claims, subject to the requirements to obtain Bankruptcy Court authority for certain actions in accordance with Section 3.9 of this Plan.

#### 6.2.3 Authority to Amend Schedules

The Debtors or the Liquidating Trustee, as applicable, will have the authority to amend the Schedules with respect to any Claim, and to make distributions based on such amended Schedules without approval of the Bankruptcy Court, *provided, however*, that the Liquidating Trustee will seek prior approval from the Bankruptcy Court prior to increasing by more than $50,000 the proposed Allowed amount of any Claim on the Schedules. In addition, if any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtors or the Liquidating Trustee, as applicable, will provide the holder of such Claim with notice of such amendment and such holder will have 30 days to File an objection to such amendment with the Bankruptcy Court. The notice will contain the same specificity to affected creditors that would be required if the Schedules amendment was a Claim objection. If no such objection is Filed, the Liquidating Trustee may proceed with distributions based on such amended Schedules without approval of the Bankruptcy Court. Notwithstanding anything contained in this Section 6.2.3 or this Plan to the contrary, the Liquidating Trustee shall have the authority to object to the amount of any Claim indicated on the Schedules if the Liquidating Trustee determines in good faith that the Claim is invalid or has previously been paid or satisfied.

#### 6.2.4 Request for Extension of Claims Objection Bar Date

Upon motion to the Bankruptcy Court, the Liquidating Trustee may request, and the Bankruptcy Court may grant, an extension to the Claims Objection Bar Date generally or with respect to a specific list of Claims. Any extension granted by the Bankruptcy Court shall not be considered to be a Plan modification under section 1127 of the Bankruptcy Code.

### 6.3 Distributions on Account of Disputed Claims Once Allowed

Distributions on account of Disputed Claims that become Allowed Claims after the Effective Date shall be made in accordance with Article V of the Plan.

## ARTICLE VII
## CONSOLIDATION OF CERTAIN DEBTORS

### 7.1 Limited Consolidation for Certain Purposes

Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the Debtors' election to treat the Estates (who do not include WRHF and TMHF, whose cases have been dismissed) as if they were consolidated. Accordingly, for purposes of implementing the Plan, pursuant to such order: (a) all Assets and Liabilities of the Debtors shall be treated as if they are pooled; and (b) with respect to any guarantees by one Debtor of the obligations of any Debtor, and with respect to any joint or several liability of any Debtor, the holder of any Claims for such obligations will receive a single recovery on account of any such joint obligations of the Debtors, in each case except to the extent otherwise provided in the Plan.

Such election to treat the Estates as if they were consolidated solely for the purpose of implementing the Plan shall not affect: (a) the legal and corporate structures of the Debtors; and (b) distributions from any insurance policies or proceeds of such policies. In addition, such election to treat the Estates as consolidated for the purpose of implementing the Plan will not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code, except to the extent otherwise expressly waived by the Debtors.

### 7.2    Order Granting Consolidation for Certain Purposes

This Plan serves as a motion seeking entry of an order consolidating the Debtors (who do not include WRHF and TMHF, whose cases have been dismissed) as described and to the limited extent set forth in Section 7.1 above. Unless an objection to such consolidation is made in writing by any creditor affected by the Plan, Filed with the Bankruptcy Court and served on the parties listed on Plan Exhibit C on or before the date fixed by the Bankruptcy Court for objecting to Confirmation of this Plan, the consolidation order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at or before the Confirmation Hearing.

In the event that the Bankruptcy Court does not approve the Debtors' election to treat the Estates as if they are consolidated, (a) the Plan shall be treated as a separate plan of liquidation for each Debtor, and (b) the Debtors shall not be required to re-solicit votes with respect to the Plan.

## ARTICLE VIII
## CONFIRMATION OF THE PLAN

### 8.1    Conditions Precedent to Confirmation

The following conditions are conditions to the entry of the Confirmation Order unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section 8.3:

A.    The Confirmation Order will be reasonably acceptable in form and substance to the Debtors.

B.    The Plan shall not have been materially amended, altered or modified from the Second Amended Plan as Filed on May 24, 2011, unless such material amendment, alteration or modification has been made in accordance with Section 10.1 of the Plan.

C.    All Confirmation Exhibits to the Plan are in form and substance reasonably satisfactory to the Debtors.

D.    The dismissal of the chapter 11 cases of TMHF and WRHF shall not have been overturned on appeal.

### 8.2    Conditions Precedent to the Effective Date

The Effective Date will not occur, and the Plan will not be consummated, unless and until each of the following conditions have been satisfied or duly waived pursuant to Section 8.3:

A. The Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall be a Final Order.

B. No stay of the Confirmation Order shall then be in effect.

C. The Liquidating Trust Agreement shall be executed, the Liquidating Trust shall be created and the Liquidating Trustee shall have been appointed and accepted such appointment.

D. The Plan and all Confirmation Exhibits to the Plan shall not have been materially amended, altered or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Section 10.1 of the Plan.

E. The Collective Bargaining Agreements shall have been terminated.

## 8.3    Waiver of Conditions to Confirmation or Effective Date

The conditions to Confirmation and the conditions to the Effective Date may be waived in whole or in part at any time by the Debtors without an order of the Bankruptcy Court.

## 8.4    Cramdown

The Debtors request Confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that has not accepted or is deemed not to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

## 8.5    Effect of Nonoccurrence of Conditions to the Effective Date

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section 8.3, then upon motion by the Debtors made before the time that each of such conditions has been satisfied and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; *provided, however*, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is satisfied or waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this Section 8.5: (1) the Plan will be null and void in all respects, including with respect to the releases described in Section 8.6.2; (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against any Debtor or (b) prejudice in any manner the rights of the Debtors or any other party in interest; and (3) the Liquidating Trust, if already created, shall be promptly dissolved.

## 8.6    Effect of Confirmation of the Plan

### 8.6.1    Limitation of Rights of Holders of Claims

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtors; provided, however, that no holder of a Claim against the Debtors may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Debtors, the Liquidating Trustee, or property of the Estates, except as expressly provided in the Plan.

### 8.6.2    Releases

Each and every entity receiving a distribution pursuant to the Plan on account of its Allowed Claim or Interest will be deemed to forever release and waive all claims, demands, debts, rights, causes of action, and liabilities in connection with or related to any of the Debtors, the Chapter 11 Cases, or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, that are based in whole or in part on any act, omission, or other occurrence taking place on or prior to the Effective Date, against the Released Parties to the fullest extent permitted under applicable law. In addition, the Debtors will be deemed to release any and all such claims, demands, debts, rights, causes of action, and liabilities against the Released Parties other than themselves. Notwithstanding anything in the Plan or in the releases set forth above to the contrary, nothing herein shall be construed to release, and the Debtors do not hereby release, any rights of the respective Debtors: (a) to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder; (b) to litigate Disputed Claims, including without limitation to make any claim, or demand or allege and prosecute any cause of action against any holder of any Disputed Claims; and (c) to litigate claims and causes of action not specifically released herein, including claims and Causes of Action contained in any adversary complaint filed during the pendency of the Chapter 11 Cases that have not been withdrawn or dismissed prior to the Confirmation Date.

Except as set forth in the last sentence of this paragraph, no provision contained in this Plan, the Confirmation Order, or section 1141 of the Bankruptcy Code shall be construed as discharging, releasing or relieving any party other than the Debtors in any capacity, from any liability with respect to the Pension Plan under any law, government policy or regulatory provision. Except as set forth in the last sentence of this paragraph, the PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability against any such party as a result of this Plan's provisions for satisfaction, release and discharge of claims. Nothing herein, however, shall in any way limit or modify the release or discharge of any party as set forth in the agreement dated January 31, 2011, between the PBGC, the Debtors, and certain other parties, attached as Exhibit A to the Debtors' Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 9019(A) Approving the Terms of the Settlement with the Pension Benefit Guaranty Corporation, Docket No. 1344, and approved by an Order of the Bankruptcy Court dated April 27, 2011, Docket No. 1593.

### 8.6.3   Injunction

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability against the Debtors or an Interest or other right of an equity security holder are permanently enjoined from taking any of the following actions on account of any such Claims, debts, liabilities, Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Released Parties or their property; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Released Parties or their property; (c) creating, perfecting, or enforcing any lien or encumbrance against the Released Parties or their property; (d) asserting a right of subordination of any kind against any debt, liability, or obligation due to the Released Parties or their property; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

### 8.6.4   Exculpation

Subject to the occurrence of the Effective Date, none of the Exculpated Parties shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases and the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, that the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall

be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan.

**8.7** **Request for Waiver of Stay of Confirmation Order**

This Plan will serve as a motion seeking a waiver of the stay of the Confirmation Order imposed by Bankruptcy Rule 3020(e). Any objection to this request for waiver shall be Filed with the Bankruptcy Court and served on the parties listed in Section 10.6 on or before the Voting Deadline, or such other date as may be fixed by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto will occur at the Confirmation Hearing.

**ARTICLE IX**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible, including jurisdiction to:

A.      Allow, disallow, determine, liquidate, reduce, classify, re-classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the amount, allowance, priority or classification of Claims;

B.      Resolve any issues arising under the Asset Purchase Agreement or the Sale Order;

C.      Either grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

D.      Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

E.      Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

F.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and either grant or deny any applications involving any Debtor that may be pending on the Effective Date or brought thereafter;

G.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Liquidating Trust Agreement, the Disclosure Statement or the Confirmation Order;

H.      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Liquidating Trust Agreement or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan, the Liquidating Trust Agreement or any entity's rights arising from or obligations incurred in connection with the Plan, the Liquidating Trust Agreement or such documents;

I.      Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument,

release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

J. Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

K. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

L. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

M. Enforce or clarify any orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

N. Enter a final decree or decrees closing the Chapter 11 Cases;

O. Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes;

P. Hear all matters arising out of the consummation of the Sale;

Q. Recover all assets of the Debtors and their Estates, wherever located; and

R. Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

### 10.1    Modification of the Plan

Subject to the restrictions on alteration, amendment and modification set forth in section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify the Plan before the Effective Date.

### 10.2    Revocation of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will: (a) constitute a waiver or release of any Claims by or against any Debtor; (b) prejudice in any manner the rights of the Debtors (or any of them), any Debtor or any other party in interest; or (c) constitute an admission of any sort by the Debtors (or any of them), any Debtor or any other party in interest.

### 10.3    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.4    Dissolution of Creditors' Committee

On the Effective Date, the Creditors' Committee and any other official committees appointed in the Chapter 11 Cases will dissolve, and the members of the Creditors' Committee and their respective Professionals will cease to have any duty, obligation or role arising from or related to the Chapter 11 Cases. The Professionals retained by the Creditors' Committee and the respective members thereof will not be entitled to assert any Fee Claim whatsoever for any services rendered or expenses incurred after the Effective Date in their capacity as professionals for the Creditors' Committee, except to the extent necessary to File, prepare and defend any fee application.

### 10.5    Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

Dated:  May 24, 2011

Respectfully Submitted,

Forum Health (for itself and on behalf of its Affiliated Debtors)

By:        /s/    Dalton Edgecomb
Name:     Dalton Edgecomb
Title:       Chief Restructuring Officer

McDONALD HOPKINS LLC

Shawn M. Riley (0037235)
Sean D. Malloy (0073157)
Matthew A. Salerno (0070847)
Melissa S. Giberson (0082413)
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114-2653
Telephone:  (216) 348-5400
Facsimile:   (216) 348-5474
E-mail:      sriley@mcdonaldhopkins.com
              smalloy@mcdonaldhopkins.com
              msalerno@mcdonaldhopkins.com
              mgiberson@mcdonaldhopkins.com

Counsel to the Debtors and Debtors in Possession

- and -

NADLER NADLER & BURDMAN CO., L.P.A.

Michael A. Gallo

20 West Federal Street, Suite 60
Youngstown, OH  44503-1423
Telephone:  (330) 744-0247
Facsimile:   (330) 744-8690
Email:      gallo@nnblaw.com

Co-Counsel to the Debtors and Debtors in Possession

**EXHIBIT A**

**DEFINED TERMS**

As used in the Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as each such term is defined below), will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.      "Adjudicated Medical Malpractice Claim" means a Medical Malpractice Claim for which a Holder has affirmatively elected, by submission of the Ballot attached to the Plan as Exhibit B, to liquidate the amount of such Claim in an appropriate legal forum, in accordance with the terms of the Plan and/or the terms of any applicable Relief From Stay Order.

2.      "Administrative Bar Date" means December 22, 2010, for most Administrative Claims, except as otherwise set forth in the Plan.

3.      "Administrative Bar Date Order" means the Order Granting Debtors' Motion to Establish Bar Date for Filing Requests for Payment of Administrative Expense Claims and Approving Form and Notice Thereof, entered on November 15, 2010 (Docket No. 1234).

4.      "Administrative Claim" means a Claim against a Debtor or its Estate arising on or after the Petition Date and prior to the Effective Date for a cost or expense of administration in the Chapter 11 Cases that is entitled to priority or superpriority under sections 333, 364(c)(1), 503(b), 503(c), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (b) compensation for legal, financial advisory, accounting, patient care ombudsman and other services and reimbursement of expenses awarded or allowed under sections 328, 330(a), 331 or 333 of the Bankruptcy Code, including Fee Claims; (c) any Allowed Claims for reclamation under section 546(c)(1) of the Bankruptcy Code; (d) Claims, pursuant to section 503(b)(9) of the Bankruptcy Code, for the value of goods received by the Debtors in the 20 days immediately prior to the Petition Date and sold to the Debtors in the ordinary course of the Debtors' businesses and (e) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

5.      "AFSCME" means, collectively, Ohio Council 8 of the American Federation of State, County and Municipal Employees, AFL-CIO and its Local Number 2026, Local Number 2288 and Local Number 2804.

6.      "Allowed… Claim" or "Allowed… Interest" means an Allowed Claim or Allowed Interest, as the case may be, in the particular Class or category specified.

7.      "Allowed Claim" when used:

(a)      a Claim that (i) has been listed by a particular Debtor on its Schedules as other than disputed, contingent or unliquidated and (ii) is not a Disputed Claim;

(b)      a Claim (i) for which a proof of Claim or request for payment of Administrative Claim (or similar request) has been Filed by the applicable Bar Date or otherwise has been deemed timely Filed under applicable law and (ii) that is not a Disputed Claim;

(c)    a Claim that is expressly allowed: (i) in any stipulation or agreed order of the Bankruptcy Court executed by the Debtors or the Liquidating Trust and the Claim holder; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan; or

(d)    a Claim that the Debtors or the Liquidating Trustee, as the case may be, determine prior to the Claims Objection Bar Date (i) will not be subject to an objection or to an amendment to the Schedules and (ii) will be satisfied in accordance with the terms of the Plan.

8.      "Allowed Interest" means any Interest expressly deemed allowed by the Plan.

9.      "Appropriate Purpose" means, with respect to any particular Restricted Charitable Funds, the use thereof in accordance with the relevant charitable restrictions for such particular Restricted Charitable Funds, or such other charitable use as provided for by order of a court of competent jurisdiction under Ohio law modifying such restrictions.

10.     "Assets" means all of a Debtor's property, rights and interests that are property of a Debtor's Estate pursuant to section 541 of the Bankruptcy Code.

11.     "Asset Purchase Agreement" means that certain asset purchase agreement attached to the Sale Order as Exhibit A.

12.     "Avoidance Actions" means, collectively and individually, preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 542, 544, 547, 548, 549, 550, 551, 553 and other applicable provisions of the Bankruptcy Code and other similar state law claims and causes of action, whether or not such action was commenced prior to the Effective Date.

13.     "Ballot" means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates, among other things, either acceptance or rejection of the Plan.

14.     "Bankruptcy Code" means title 11 of the United States Code, as now in effect or hereafter amended, as applicable to these Chapter 11 Cases.

15.     "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Ohio.

16.     "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to these Chapter 11 Cases.

17.     "Bar Date" means a bar date established by a Bar Date Order or other applicable order of the Bankruptcy Court, which is August 3, 2009 for most General Unsecured Claims.

18.     "Bar Date Order" means Order Approving Debtors' Motion Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Notice Thereof, entered on June 23, 2009 (Docket No. 301), as the same may be amended, modified or supplemented.

19.  "Beneficial Interests" means, after satisfaction of FHIL's obligations under relevant law, including the reasonable and necessary costs of winddown, all of the Debtors' interest in any excess cash or excess cash flow in FHIL.

20.  "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

21.  "Cash" means legal tender of the United States of America and equivalents thereof.

22.  "Cash Collateral Order" means that certain Agreed Final Order Authorizing Debtors' Use of Cash Collateral, Pursuant to 11 U.S.C. §§ 101, 361 and 363, and Granting Replacement Liens, Adequate Protection and Administrative Expense Priority to the Master Trustee, Bond Trustees and Prepetition Secured Creditors entered April 16, 2009 (Docket No. 165), as modified by the stipulation and agreed orders entered by the Bankruptcy Court on October 22, 2009 (Docket No. 526), December 4, 2009 (Docket No. 583), December 7, 2010 (Docket No. 584), December 16, 2009 (Docket No. 601), January 13, 2010 (Docket No. 627), February 22, 2010 (Docket No. 671), April 1, 2010 (Docket No. 728), April 22, 2010 (Docket No. 762), April 30, 2010 (Docket No. 766) and May 10, 2010 (Docket No. 774).

23.  "Cash Investment Yield" means the net yield earned by the applicable Disbursing Agent from the investment of Cash held pending distribution pursuant to the Plan (including any Cash received by the Disbursing Agent on account), which investment will be in a manner consistent with the Liquidating Trust Agreement.

24.  "Cause of Action" or "Causes of Action" means, individually or collectively and without limitation, any action, cause of action, liability, obligation, right to legal or equitable remedies, suit, debt, sumo f money, damage, judgment, claim and demand whatsoever, whether known or unknown, matured or unmatured, disputed or undisputed and whether asserted or assertable directly or derivatively in law, equity or otherwise, including, without limitation, all Avoidance Actions.

25.  "Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code by the Debtors in the Bankruptcy Court that are being jointly administered under Case No. 09-40795, expect for those chapter 11 cases pending against debtors Western Reserve Health Foundation and Trumbull Memorial Hospital Foundation, which shall be dismissed.

26.  "Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against a Debtor.

27.  "Claims and Noticing Agent" means Kurtzman Carson Consultants LLC.

28.  "Claims Objection Bar Date" means, for all Claims (other than Fee Claims, which are treated in Section 2.1.1.c(ii) of the Plan), the latest of: (a) 150 days after the Effective Date, subject to extension by order of the Bankruptcy Court; (b) 90 days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objecting to such a Claim.

29.  "Class" means a class of Claims, as described in Article II.

30.  "Closing Date" means October 1, 2010.

31.  "Collective Bargaining Agreements" means, collectively, and together with all exhibits, supplements, schedules, appendices, modifications, amendments and ancillary documents thereto: (a) the

"Agreement between Western Reserve Care System a subsidiary of Forum Health and the Ohio Nurses Association," dated July 20, 2008 to July 19, 2011, as amended, modified and supplemented; (b) the "Agreement between AFSCME, Ohio Council 8 United Nurses of America Local 2026 and Trumbull Memorial Hospital a wholly Owned Subsidiary of Forum Health," dated October 1, 2004 to September 30, 2007, as amended, modified and supplemented; (c) the "Agreement between Forum Health Trumbull Memorial Hospital and Ohio Council 8, and Local 2804 of the American Federation of State, County and Municipal Employees, AFL-CIO," dated May 1, 2008 to March 31, 2010, as amended, modified and supplemented; (d) the "Agreement Between Forum/Hillside Hospital and Local Union No. 2288 and Ohio Council 8 American Federation of State, County and Municipal Employees, AFL-CIO," dated April 1, 2008 to March 31, 2009, as amended, modified and supplemented; (e) the "Agreement Between Forum Health and District 1199, Service Employees International Union," dated October 1, 2008 to March 31, 2012, as amended, modified and supplemented; (f) the "Labor Agreement between Service Employees International Union, District 1199, AFL-CIO/CLC and Forum Health Outreach Laboratories (FHOL)," dated November 1, 2008 to October 31, 2011, as amended, modified and supplemented; and (g) the "Agreement between Forum Health Hillside Rehabilitation Hospital and the Ohio Nurses Association," dated July 20, 2008 to July 19, 2011, as amended, modified and supplemented.

32.     "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

33.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket within the meaning of Bankruptcy Rules 5003 and 9021.

34.     "Confirmation Exhibits" means, collectively, the documents identified on the "Table of Confirmation Exhibits," which documents will be Filed no later than 10 days before the Confirmation Hearing, to the extent not Filed earlier.

35.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

36.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

37.     "Creditors' Committee" means the statutory official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as such appointment has been subsequently modified at Docket No. 172.

38.     "Cure Amount Claim" means a Claim based upon a Debtor's monetary defaults under an Executory Contract or Unexpired Lease that is to be paid in connection with the assumption of such contract or lease under section 365 of the Bankruptcy Code by one of the Debtors in connection with this Plan.

39.     "Debtors" or "Debtor" means, individually or collectively as the case may be, (a) Forum Health, (b) Forum Health Diagnostics Co., (c) Forum Health Enterprises Co., (d) Forum Health Rehabilitative Services Co., (e) Forum Health Services Co., (f) Western Reserve Care System, (g) Dascas Nursing Support Systems, Inc. (h) Dascas Nursing Systems, Inc., (i) Beeghly Oaks, (j) PrideCare, Inc., (k) Trumbull Memorial Hospital, (l) Comprehensive Psychiatry Specialists, Inc., and (m) Visiting Nurse Association and Hospice of Northeast Ohio. For clarity, the term "Debtors" or "Debtor" as used in the Plan or Disclosure Statement does not include WRHF or TMHF.

40.     "Disbursing Agent" means a Debtor, the Liquidating Trustee or any Third Party Disbursing Agent employed by a Debtor or the Liquidating Trustee, in its capacity as disbursing agent pursuant to Article V.

41.     "Disclosure Statement" means the disclosure statement (including all exhibits and schedules thereto or referenced in this Plan) that relates to this Plan and has been prepared and distributed by the Debtors, as Plan proponents, pursuant to section 1125(g) of the Bankruptcy Code, as the same may be amended, modified or supplemented.

42.     "Disputed Claim" means, for any Claim:

(e)     if no proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, (i) a Claim that is listed on a Debtor's Schedules as disputed, contingent or unliquidated or (ii) a Claim that is not listed on a Debtor's Schedules;

(f)     prior to and on the Claims Objection Bar Date, if a proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, all Claims that have not been expressly Allowed (i) in any stipulation or agreed order entered by the Bankruptcy Court executed by the Debtors and Claim holder; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan; or

(g)     after the Claims Objection Bar Date, if a proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, such Claims for which the Debtors or the Liquidating Trustee have Filed an objection in the Bankruptcy Court, and such objection has not been resolved in its entirety by a Final Order or withdrawn (and for which there is no agreement with the Claim holder to treat the Claim as a Disputed Claim for a period of time after the Claim Objection Bar Date). Notwithstanding the above, if a Claim is an Allowed Claim under the definition set forth in this Plan, it shall not also be considered to be a Disputed Claim.

43.     "Disputed Claims Reserve" means the reserve of Liquidating Trust Assets to be maintained as part of the Liquidating Trust, which reserve (a) will maintain such assets in trust for (i) Pro Rata distributions to holders of Disputed Claims that become Allowed General Unsecured Claims and (ii) periodic Pro Rata distributions to holders of Allowed General Unsecured Claims, pursuant to the terms of the Plan, and (b) will not constitute property of the Purchaser.

44.     "Disputed Insured Claim" means an Insured Claim that is also a Disputed Claim.

45.     "Distribution Date" means a date selected by the any Disbursing Agent in accordance with the terms of the Plan, the Liquidating Trust Agreement or other applicable documents to make distributions on account of Allowed Claims.

46.     "Effective Date" means a day, as determined by the Debtors, that is the Business Day as soon as reasonably practicable after all conditions to the Effective Date in Section 8.2 have been met or waived in accordance with Section 8.3.

47.     "Election Form" means that certain form, attached to this Plan as Exhibit B, wherein the holder of a Medical Malpractice Claim may elect to seek relief from stay to prosecute its Claim in an appropriate legal forum.

09-40795-lkw    Doc 1642-1 FEED 07/2/4/11 ENTERRED 07/2/4/11 12:36:54 Page 59 of 72

48.     "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461.

49.     "Estate" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case, pursuant to section 541 of the Bankruptcy Code.

50.     "Estimated Medical Malpractice Claim" means a Medical Malpractice Claim which will be estimated by the Bankruptcy Court in accordance with the provisions of the Plan.

51.     "Exculpated Parties" means the Debtors, WRHF, TMHF, the Liquidating Trustee, the Creditors' Committee, or any of their respective members, officers, directors, trustees, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives, acting in such capacity.

52.     "Executory Contract or Unexpired Lease" means a contract or lease to which a Debtor is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code and includes any modifications, amendments, addenda or supplements thereto or restatements thereof.

53.     "Face Amount" means either: (a) the full stated amount claimed by the holder of such Claim in any proof of claim Filed by the Bar Date or otherwise deemed timely Filed under applicable law, if the proof of Claim specifies only a liquidated amount; (b) if no proof of claim is Filed by the Bar Date or otherwise deemed timely Filed under applicable law, the full amount of the Claim listed on the Debtors' Schedules, *provided that* such amount is not listed as disputed, contingent or unliquidated; or (c) the amount of the Claim (i) acknowledged by the applicable Debtor in any objection Filed to such Claim, (ii) estimated by the Bankruptcy Court for such purpose pursuant to section 502(c) of the Bankruptcy Code or (iii) proposed by the Debtors or the Liquidating Trustee, as the case may be, if (A) no proof of claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law and such amount is not listed in the Debtors' Schedules or is listed in the Debtors' Schedules as disputed, contingent or unliquidated or (B) the proof of claim specifies an unliquidated amount (in whole or in part).

54.     "Fee Claim" means a Claim under sections 328, 330(a), 331, 333, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases.

55.     "Fee Order" means the Order Upon the Debtors' Motion for an Order Pursuant to 11 U.S.C. § 105(A) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 164), entered by the Bankruptcy Court on April 15, 2009.

56.     "FHIL" means Forum Health Insurance Limited, a non-debtor off-shore Bermudan captive insurance company that is wholly owned by Forum Health Services Co.

57.     "File," "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

58.     "Final Distribution Date" for a particular Class of Claims means the Distribution Date upon which a final distribution to holders of Allowed Claims in the Class are to be made.

59.     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in these Chapter 11 Cases, or the docket of any other

09-40795-kw    Doc 1742-1    FILED 05/24/11    ENTERED 05/24/11 10:36:54    Page 60 of 72

court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or petition for certiorari or move, under Bankruptcy Rule 9023 and/or Rule 59 of the Federal Rules of Civil Procedure, for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceeding for a new trial, reargument or rehearing has been timely taken or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

60.     "Foundations" means, collectively, non-debtors TMHF and WRHF.

61.     "General Unsecured Claim" means any Claim that is not an Administrative Claim, Secured Claim, Cure Amount Claim, Priority Claim, or Priority Tax Claim.

62.     "Holder" means a party that holds or is deemed to hold a Claim or Interest, as the case may be.

63.     "Insurance" means the applicable claims made insurance coverage provided to the Debtors in the form of the policies described at Confirmation Exhibit A.63.

64.     "Insurance Contract" means any policy of third party liability insurance under which any of the Debtors could have asserted or did assert, or may in the future assert, a right to coverage for any claim, together with any other contracts that pertain or relate to such policy.

65.     "Insured Claim" means that portion of any Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date: (a) as to which any Insurer is obligated pursuant to the terms, conditions, limitations and exclusions of its Insurance Contract(s), to pay any judgment, settlement or contractual obligation with respect to the Debtors; or (b) that any Insurer otherwise agrees to pay as part of a settlement or compromise of a claim made under the applicable Insurance Contract(s).

66.     "Insurer" means any company or other entity that issued, or is responsible for, a policy of third-party liability insurance under which any of the Debtors could have asserted or did assert, or may in the future assert, a right to coverage for any claim under an Insurance Contract.

67.     "Interest" means the rights and interest of the holder of any instrument evidencing an ownership interest in a Debtor.

68.     "Liabilities" means any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise, that are based in whole or in part on any act, event, injury, omission, transaction, agreement, employment, exposure or other occurrence taking place on or prior to the Effective Date.

69.     "Liquidating Trust" means the trust established pursuant to Section 3.9 of the Plan to administer the Liquidating Trust Assets and to make distributions to holders of Allowed General Unsecured Claims.

70.     "Liquidating Trust Agreement" means the trust agreement governing the Liquidating Trust, to be dated on or prior to the Effective Date, which will be substantially in the form of Confirmation Exhibit A.70.

71.     "Liquidating Trust Assets" means, collectively, all of the Debtors' Assets as of the Effective Date, including but not limited to (a) Causes of Action, including the Avoidance Actions and (b) the funds of the Segregated Proceeds Account, but not including any rights in FHIL, the stock of FHIL, the Beneficial Interests, or the Restricted Charitable Funds. After the funding of the Liquidating Trust, the Liquidating Trust Assets shall also include any fiduciary accounting income and appreciation in trust principal.

72.     "Liquidating Trust Expenses" means any and all reasonable fees, costs and expenses incurred by the Liquidating Trust or the Liquidating Trustee (or any agent, Person, entity or professional engaged by the Liquidating Trust or the Liquidating Trustee) in connection with any of their duties under the Plan and the Liquidating Trust Agreement, including any reasonable administrative fees, attorneys' fees and expenses, insurance fees, Taxes and escrow expenses.

73.     "Liquidating Trustee" means Dalton T. Edgecomb (or any successor trustee in his or her capacity as the trustee of the Liquidating Trust).

74.     "Medical Malpractice Claim" means any claim arising from hospital or medical malpractice.

75.     "Notice Parties" means: (a) prior to the Effective Date, the Debtors, the Creditors' Committee, the United States Trustee, counsel for U.S. Bank and the Office of the Attorney General for the State of Ohio; and (b) on or after the Effective Date, the United States Trustee and counsel to the Liquidating Trustee.

76.     "ONA" means the Ohio Nurses Association and, with respect to Western Reserve Care System, its affiliate the Youngstown General Duty Nurses Association.

77.     "Ordinary Course Professionals Order" means the Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Businesses (Docket No. 270), entered by the Bankruptcy Court on June 9, 2009.

78.     "Other Priority Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code and that is not an Administrative Claim or a Priority Tax Claim.

79.     "PBGC" means the Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation and an agency of the United States that administers the defined benefit pension plan termination insurance program under Title IV of ERISA.

80.     "PBGC Administrative Claim" means an Allowed Administrative Claim in the amount of $878,827.

81.     "PBGC Claim" means, collectively, all Claims of the PBGC.

82.     "PBGC Remaining Claim" means $140,000,000 less the amount of Beneficial Interests (deemed, for these purposes only, to constitute $10,000,000 in value) and less the amount of the PBGC Administrative Claim for a net PBGC Remaining Claim amount of $129,121,173, which shall be treated as a Class 3 General Unsecured Claim for voting and distribution purposes.

83.     "Pension Plan" means the Forum Health Pension Plan.

84.     "Person" means any individual, firm, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization or other entity.

85.     "Petition Date" means March 16, 2009, the date on which the Debtors Filed their petitions for relief and commenced the Chapter 11 Cases.

86.     "Plan" means this second amended plan of liquidation of the Debtors, and all Plan Schedules and Confirmation Exhibits attached hereto or referenced in this Plan, as the same may be amended, modified or supplemented.

87.     "Priority Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim, an Administrative Superpriority Claim or a Priority Tax Claim.

88.     "Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

89.     "Pro Rata" means, when used with reference to a distribution of property to holders of Allowed Claims in a particular Class or other specified group of Claims pursuant to Article II, proportionately so that with respect to a particular Allowed Claim in such Class or in such group, the ratio of (a) the amount of property to be distributed on account of such Claim to the amount of such Claim, is the same as the ratio of (b) the amount of property to be distributed on account of all Allowed Claims in such Class or group of Claims to the amount of all Allowed Claims, as the case may be, in such Class or group of Claims. Until all Disputed Claims in a Class are resolved, Disputed Claims shall be treated as Allowed Claims in their Face Amount for purposes of calculating the Pro Rata distribution of property to holders of Allowed Claims in such Class.

90.     "Professional" means any professional employed in the Chapter 11 Cases pursuant to sections 327, 328, 333, 363 or 1103 of the Bankruptcy Code, or any professional or other entity seeking compensation or reimbursement of expenses in connection with these Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

91.     "Purchaser" means Youngstown Ohio Hospital Company, LLC, as purchaser in accordance with the terms of the Asset Purchase Agreement.

92.     "Record Date" means the date of the order approving the Disclosure Statement.

93.     "Released Parties" means, collectively and individually, the Debtors, WRHF, TMHF, the Liquidating Trustee, the current and former officers of the Debtors, the current and former officers of WRHF, the current and former officers of TMHF, the current and former Trustees of the Debtors, the current and former Trustees of WRHF, and the current and former Trustees of TMHF.

94.     "Relief From Stay Order" means those certain Stipulated Orders entered by this Court resolving certain Medical Malpractice Claimant's motion(s) for relief from the automatic stay imposed by 11 U.S.C. § 362 identified on Confirmation Exhibit A.94.

95.     "Representatives" means, with respect to any entity, such entity's successor, predecessor, officer, director, trustee, partner, employee, agent, attorney, advisor, investment banker, financial advisor, accountant or other Professional of such entity, and committee of which such entity is a member, in each case in such capacity.

96.     "Restricted Charitable Funds" means any charitable funds (held by any of the Debtors) that are subject to restrictions on use for a particular charitable purpose under Ohio law.

97.     "Sale" means the sale of substantially all the assets of the Debtors to the Purchaser, pursuant to the Asset Purchase Agreement.

98.     "Sale Order" means that certain Order Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006:  (A) Approving Asset Purchase Agreement; (B) Authorizing the Sale of Certain Assets of the Debtors Free and Clear of All Liens, Claims and Encumbrances to Youngstown Ohio Hospital Company, LLC; and (C) Granting Related Relief (Docket No. 1072), entered August 11, 2010.

99.     "Schedules" means the schedules of Assets and Liabilities and the Statements of Financial Affairs Filed by a Debtor on May 1, 2009, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

100.     "Secured Claim" means a Claim that is secured by a lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) of the Bankruptcy Code and, if applicable, section 1129(b) of the Bankruptcy Code.

101.     "Segregated Proceeds Account" means that certain account into which the net proceeds of certain settlements have been deposited in accordance with the Cash Collateral Order.

102.     "SEIU" means the Service Employees International Union, District 1199.

103.     "Tax" means: (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental, excise or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other entity.

104.     "Third Party Disbursing Agent" means an entity designated by any of the Debtors or the Liquidating Trustee (as applicable) to act as a Disbursing Agent pursuant to Article V.

105.     "TMHF" means Trumbull Memorial Hospital Foundation, an Ohio nonprofit 501(c)(3) corporation.

106.     "Tort Claim" means any Claim that has not been settled, compromised or otherwise resolved that: (a) arises out of allegations of personal injury, wrongful death, property damage, products liability, medical malpractice or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to health, safety, hazardous substances or the environment.

107.     "Trumbull" means Trumbull Memorial Hospital, an Ohio nonprofit 501(c)(3) corporation and a Debtor in these Chapter 11 Cases.

108.    "Unions" means, collectively, AFSCME, ONA and SEIU.

109.    "United States Trustee" means the Office of the United States Trustee for the Northern District of Ohio.

110.    "U.S. Bank" means U.S. Bank National Association, as Master Trustee and as the Bond Trustee.

111.    "Voting Deadline" means the deadline for submitting Ballots to either accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code that is specified in the Disclosure Statement, the Ballots or related solicitation documents approved by the Bankruptcy Court.

112.    "Workers' Compensation Fund" means approximately $4.1 million in cash held by the Ohio Bureau of Workers' Compensation, which funds represent monies drawn by the Ohio Bureau of Workers' Compensation from a letter of credit posted by the Debtors as security for workers' compensation obligations, plus any interest accrued thereon.

113.    "WRHF" means Western Reserve Health Foundation, an Ohio nonprofit 501(c)(3) corporation.

09-44507-rk    Doc 1431    FILED 07/22/11    ENTERED 07/22/11 06:36:54    Page 65 of 72

**MEDICAL MALPRACTICE ELECTION FORM**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 09-40795 |
| FORUM HEALTH, et. al.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) Chapter 11 |
| | ) |
| | ) Judge Kay Woods |
| | ) |

## CLASS 5: MEDICAL MALPRACTICE CLAIMS
## ELECTION FORM FOR LIQUIDATION OF MEDICAL MALPRACTICE CLAIM

On May 24, 2011, the Debtors filed their Second Amended Chapter 11 Plan of Liquidation (the "Plan"). The Plan provides that each holder of a Medical Malpractice Claim[2] may affirmatively elect to have the automatic stay lifted and have such holder's Medical Malpractice Claim liquidated in an appropriate legal forum other than the Bankruptcy Court. In the absence of such affirmative election, the holder of a Medical Malpractice Claim will have its Claim estimated by the Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court").

### ELECTION FORM INFORMATION AND INSTRUCTIONS

- If you wish to be granted relief from the automatic stay to liquidate your Class 5: Medical Malpractice Claim in an appropriate legal forum, please complete this Election Form by providing all the information requested and sign, date and return this Election Form by mail, hand delivery, or overnight courier delivery to Kurtzman Carson Consultants LLC (the "Noticing Agent") at the following address:

Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

You must return this form by no later than **4:00 p.m. prevailing Pacific Time on the Effective Date, as defined in the Plan, which could be as early as July 19, 2011**, or your election will be invalid.

- Any holders of Medical Malpractice Claims that do not return this form timely will have their Claim estimated by the Bankruptcy Court.

---

[1] The Debtors include: Forum Health (31-1560189), Forum Health Diagnostics Co. (34-1773672), Forum Health Enterprises Co. (34-1368151), Forum Health Outreach Laboratories, Inc. (34-1437294), Forum Health Ventures Co. (34-1489491), Forum Health Pharmacy Services Co. (34-1754092), Forum Health Rehabilitative Services Co. (31-1581767), Forum Health Services Co. (34-1461044), Western Reserve Care System (34-1454933), Dacas Nursing Support Systems, Inc. (34-1482591), Dacas Nursing Systems, Inc. (34-1456983), Beeghly Oaks (31-1196072), PrideCare, Inc. (34-1490425), Trumbull Memorial Hospital (34-1461049), Comprehensive Psychiatry Specialists, Inc. (34-1697739) and Visiting Nurse Association and Hospice of Northeast Ohio (34-0714388).

[2] All capitalized terms used, but not otherwise defined herein, shall have the meanings given to them in the Plan.

{2591332:2}

- Regardless of which court liquidates your Claim, any recovery with respect to any Medical Malpractice Claim will be limited to the Debtors' Insurance.

- To the extent Insurance is insufficient to pay the full amount of any Medical Malpractice Claim (whether liquidated in court or estimated by the Bankruptcy Court), the holder of such Claim will be entitled to a General Unsecured Claim for the deficiency.

- To the extent the holder of a Medical Malpractice Claim elects relief from stay to liquidate the amount of its Claim, and the Claim has not been liquidated within one year of the Effective Date of the Plan, the Liquidating Trustee may seek estimation of the Claim by the Bankruptcy Court for purposes of determining the amount of any deficiency Claim entitled to treatment as a General Unsecured Claim.

- <u>You are not required to return this Election Form.  Please return this Election Form **only** if you request relief from the automatic stay to liquidate your claim in an appropriate legal forum.</u>

- Please note that this Election Form is entirely separate from and has no impact on your vote to accept or reject the Plan.

The undersigned holder hereby acknowledges that by returning this Election Form, the holder is affirmatively electing to be granted relief from the automatic stay to liquidate such holder's Medical Malpractice Claim in an appropriate legal forum.  The undersigned holder further acknowledges that this election is subject to all the terms and conditions set forth in the Disclosure Statement and the Plan.

An authorized signatory of a Holder may execute this Election Form, but must provide the name and address of such Holder on whose behalf this Election Form is completed and may further be required to submit evidence to the Bankruptcy Court showing such signatory's authorization to make this election on behalf of the Holder.

The undersigned certifies that it affirmatively elects to be granted relief from the automatic stay to liquidate its Class 5: Medical Malpractice Claim in an appropriate legal forum in accordance with the terms of the Plan:

Name of Holder: _____
                    (Print or Type)

                    _____
                    Last Four Digits of Social Security or Complete Federal
                    Tax I.D. No. (Optional)

Signature: _____
By: _____
                    (If Appropriate)
Title: _____
                    (If Appropriate)
Address: _____
Telephone Number:  (_____)_____
Date Completed: _____

{2591332:2}

**EXHIBIT C**

**NOTICE PARTIES**

Any pleading, notice or other document required by the Plan or the Confirmation Order to be served on or delivered to the counsel of the parties identified below and must be sent by overnight delivery service, facsimile transmission, courier service or messenger to:

**The Debtors**

Shawn M. Riley
Sean D. Malloy
Matthew A. Salerno
Melissa S. Giberson
MCDONALD HOPKINS, LLC
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
Email:     sriley@mcdonaldhopkins.com
           smalloy@mcdonaldhopkins.com
           msalerno@mcdonaldhopkins.com
           mgiberson@mcdonaldhopkins.com

Counsel to the Debtors

-and-

Michael A. Gallo
20 West Federal Street, Suite 60
Youngstown, Ohio 44503-1423
Telephone: (330) 744-0247
Facsimile: (330) 744-8690
Email:     gallo@nnblaw.com

Co-Counsel to the Debtors

**The Creditors' Committee**

Martin G. Bunin
Craig E. Freeman
ALSTON & BIRD, LLP
90 Park Avenue
New York, New York 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email:     marty.bunin@alston.com
           craig.freeman@alston.com

Counsel to the Creditors' Committee

{2606617:}

**The United States Trustee**

Ronna Jackson
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue., East – Suite 441
Cleveland, Ohio 44114
Telephone: (216) 522-7800
Facsimile: (216) 522-7193

**The Liquidating Trustee**

Dalton T. Edgecomb
Huron Consulting Group
1120 Avenue of the Americas, 8th Floor
New York, New York 10036
Telephone: (646) 529-0150
Email:      dedgecomb@huronconsultinggroup.com

# EXHIBIT B

| | | |
|---|---|---|
| In re: | ) | Case No. 09-40795 |
| | ) | Jointly Administered |
| FORUM HEALTH, et. al.,[1] | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | Judge Kay Woods |

## NOTICE OF CONFIRMATION

**PLEASE TAKE NOTICE:**

As of July __, 2011, the conditions precedent to Confirmation occurred pursuant to the terms of the Debtors' Second Amended Chapter 11 Plan of Liquidation, Docket No. 1642 (the "Plan"). Accordingly, on July __, 2011, the United States Bankruptcy Court for the Northern District of Ohio entered the Order Confirming the Debtors' Second Amended Chapter 11 Plan of Liquidation, Docket No. ___ (the "Confirmation Order"), in the above-captioned chapter 11 cases. The Confirmation Order approves the Plan.

July __, 2011

Respectfully submitted,

_____
Shawn M. Riley (0037235)
Sean D. Malloy (0073157)
Matthew A. Salerno (0070847)
McDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114-2653
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
E-mail: sriley@mcdonaldhopkins.com
smalloy@mcdonaldhopkins.com
msalerno@mcdonadlhopkins.com

COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

---

[1] The Debtors include: Forum Health (31-1560189), Forum Health Diagnostics Co. (34-1773672), Forum Health Enterprises Co. (34-1368151), Forum Health Outreach Laboratories, Inc. (34-1437294), Forum Health Ventures Co. (34-1489491), Forum Health Pharmacy Services Co. (34-1754092), Forum Health Rehabilitative Services Co. (31-1581767), Forum Health Services Co. (34-1461044), Western Reserve Care System (34-1454933), Dacas Nursing Support Systems, Inc. (34-1482591), Dacas Nursing Systems, Inc. (34-1456983), Beeghly Oaks (31-1196072), PrideCare, Inc. (34-1490425), Trumbull Memorial Hospital (34-1461049), Comprehensive Psychiatry Specialists, Inc. (34-1697739) and Visiting Nurse Association and Hospice of Northeast Ohio (34-0714388). The chapter 11 cases of debtors Western Reserve Health Foundation and Trumbull Memorial Hospital Foundation were dismissed prior to the filing of the Second Amended Plan and, accordingly, these debtors and their assets are not treated under the Plan (defined herein) or included in the defined term "Debtors" as used in the Plan.

{2779731:}